UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DRESSER-RAND COMPANY, DRESSER-RAND
CANADA, INC., AND DRESSER-RAND GROUP INC.,

Plaintiffs,

-versus-

INGERSOLL RAND COMPANY AND INGERSOLL
RAND COMPANY LIMITED,

Defendants.

14 CV 7222



CIVIL NO.:

**JUDGE FAILLA**

RECEIVED
MAR 0 8 2014
U.S.D.C. S.D. N.Y.

**COMPLAINT**

Dresser-Rand Company, Dresser-Rand Canada, Inc., and Dresser-Rand Group Inc., ("Dresser-Rand" or "Plaintiffs"), by their attorneys, Hodgson Russ LLP, file this Complaint against Ingersoll Rand Company and Ingersoll Rand Company Limited ("Ingersoll Rand" or "Defendants").

**Nature of The Action**

1.      This is an action for breach of contract and declaratory judgment under 28 U.S.C. §2201, which arises from Ingersoll Rand's failure to comply with its contractual obligation to defend, indemnify, and hold Dresser-Rand harmless from the lawsuit entitled *Yara Belle Plaine, Inc. v. Ingersoll-Rand Company; Dresser-Rand Company, a New York Partnership; Dresser Rand Group Inc. and Dresser-Rand Canada Inc.*, Action No. QBG1561/13 pending in the Court of Queen's Bench for Saskatchewan, Judicial Centre of Regina (the "Canadian Lawsuit"). **Exhibit A.**

2.      Dresser-Rand Company was formed in 1987 by Ingersoll Rand Corporation and Dresser Industries, Inc., as a New York general partnership.  The original partnership agreement required Ingersoll Rand to defend, indemnify and hold Dresser-Rand harmless for any claims, losses or lawsuits resulting from products distributed into the marketplace before Dresser-Rand's formation.  On August 25, 2004, Ingersoll Rand Company Limited entered into an Equity Purchase Agreement, which further requires Ingersoll Rand to defend, indemnify, and hold Dresser-Rand harmless from all liabilities relating to products placed into the stream of commerce prior to October 31, 2004 (The "Equity Purchase Agreement").  **Exhibit B.**

3.      In 2002, Yara Belle Plaine Inc. ("Yara Belle") acquired an expander that was originally manufactured by Ingersoll Rand and placed into the stream of commerce by Ingersoll Rand in the 1970s.  Ten years later, a fire occurred at Yara Belle's nitrogen fertilizer plant in Saskatchewan, Canada, allegedly causing extensive damage to Yara Belle's facility.  Yara Belle alleges that the fire was caused by a failure in the Ingersoll Rand expander – that the expander's rotor failed because it was manufactured from steel which Ingersoll Rand knew to be defective. *See* **Exhibit A**.

4.      The Equity Purchase Agreement specifically requires Ingersoll Rand to defend, indemnify, and hold Dresser-Rand harmless from any and all claims "arising out of, or relating to…" products placed into the stream of commerce by Ingersoll Rand.  *See* **Exhibits A** and **B**.

5.      Dresser-Rand made timely demands upon Ingersoll Rand to defend and indemnify it in the Canadian lawsuit, but Ingersoll Rand has refused to do so.

6.      As a result of Ingersoll Rand's wrongful actions, inactions, and misrepresentations, Dresser-Rand is entitled to declaratory judgment, an order holding Ingersoll Rand in breach of contract, equitable relief, damages, and attorneys' fees.  Dresser-Rand is also

entitled to an order requiring Ingersoll Rand to immediately assume Dresser-Rand's defense, indemnify and hold Dresser-Rand harmless from the Canadian Lawsuit.

## The Parties

7.      The Plaintiff Dresser-Rand Company is a New York State General Partnership, with major manufacturing facilities located in Painted Post, New York, Wellsville, New York, and Olean, New York.

8.      The Plaintiff Dresser-Rand Group Inc., is a public corporation, incorporated in the State of Delaware, with a principal place of business in the State of Texas.

9.      The Plaintiff Dresser-Rand Canada, Inc., is a body corporate incorporated pursuant to the provisions of the *Canada Business Corporations Act*, with offices in Calgary and Edmonton, in the Province of Alberta.

10.     The Defendant Ingersoll-Rand Company is a corporation incorporated in the State of New Jersey, with a principal place of business in the State of North Carolina.

11.     The Defendant Ingersoll-Rand Company Limited is a corporation incorporated under the laws of Bermuda, with a principal place of business in the State of North Carolina.

## Jurisdiction and Venue

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the $75,000.00 jurisdictional threshold, exclusive of interest and costs, and there is complete diversity between the parties.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

14.     Venue is also proper pursuant to the contractual forum selection clause in Section 9.14 of the Equity Purchase Agreement.  **Exhibit B**.

**Facts Relevant to the Claims**

I.   The History of the Expander

15.   In the 1970s Ingersoll Rand was in the business of manufacturing and distributing expanders to the chemical, petrochemical, oil and gas, and fertilizer manufacturing industries, among others.

16.   An expander is a turbine through which high pressure gas is expanded to produce power that is often used to drive a compressor.

17.   Most expanders contain rotors (turning blades), which are integral to the functioning of the expander.

18.   Upon information and belief, in the early 1970s Ingersoll Rand manufactured and distributed a Nitric Acid Expander bearing serial number 2956 (the "Expander"). The Expander included two rotors: one which was in use in the Expander, and one to be stored as a back-up. The rotors were manufactured from single heat treated steel (technically referred to as "A286").

19.   Upon information and belief, during the early 1970s, the gas turbine industry (which included Ingersoll-Rand) suffered a number of Alloy A-286 and disc alloy failures.

20.   Upon information and belief, Ingersoll Rand knew or should have known – at the time that it manufactured and distributed the Expander (or in the time period shortly thereafter) – that alloys used for the construction of rotors, including the discs, needed to be double heat treated to lower notch sensitivity in such materials, and that A286 steel was inappropriate for the application. Nonetheless, upon information and belief, Ingersoll Rand continued to use A286 steel for the manufacture of those products through 1986.

21.   Upon information and belief, Yara Belle acquired the Expander in 2002, when it purchased the Louisiana Chemical Equipment Co., LLC, nitric acid plant. **Exhibit A.**

22.     Upon information and belief, Yara Belle retained Dresser-Rand in 2003 to assemble the Expander, and again in February and March of 2004 to service the Expander. **Exhibit A**.  At the time of assembly, Rotor A was in use and Rotor B was stored as a back-up.[1]

23.     Upon information and belief, Yara Belle retained Dresser-Rand in 2009 to perform non-destructive testing on Rotor A, to determine if there were any cracks or surface imperfections.  The rotor was removed and sent by Dresser-Rand to a third-party for testing.  No cracks or surface imperfections were found.

24.     Upon information and belief, Yara Belle placed Rotor A into storage in 2009, and put Rotor B into operation.

25.     Upon information and belief, in July 2012 Yara Belle removed Rotor B and reinserted Rotor A into the Expander.

26.     Upon information and belief, the Expander operated without issue until August 21, 2012, when it allegedly failed causing the fire and resulting damage referred to in Paragraph 3 above.

27.     Yara Belle uniformly cites in its Statement of Claim in the Canadian lawsuit, the use of A286 steel in the Rotors as the sole cause of the Expander's failure.  (*See* **Exhibit A**, Yara Belle's Statement of Claim, at Paragraph 16 ("… the first two discs of the rotors in the Expander were constructed from a steel allow known as 'A286' using single heat treated process. Following a series of failures… Ingersoll Rand-Company… changed its manufacturing process for its expanders to use a double heat treatment."); Paragraph 18 ("… Ingersoll-Rand Company… by reason of the fact that it manufactured the Expander… owed a duty to… warn Yara of the… defects inherent in using single aged A286 steel in the Expander."); Paragraph 19 (breach of duty to warn); Paragraph 21 ("The risk posed… was exacerbated by the fact that the first two discs of

---

[1] The Rotors were not labeled A and B, but are referred to as such in this pleading for purposes of clarity.

Rotor A were constructed of single aged A286 steel…"); Paragraphs 23, 24, and 30 (additional allegations concerning breach of duty to warn and negligence)).

28.     Upon information and belief, Ingersoll Rand never warned its customers, its own personnel, its related companies and entities, or the market that it used A286 steel for the manufacture of rotors during the 1970s, and that parts containing A286 steel should be replaced or considered for replacement.

29.     Dresser-Rand is among the entities that Ingersoll Rand negligently failed to warn.

30.     Upon information and belief, Ingersoll Rand never issued a product recall for the rotors, which it knowingly manufactured from A286 steel and placed into the stream of commerce.

31.     Upon information and belief, Ingersoll Rand knowingly manufactured and distributed a defective product, and there was no reason for Dresser-Rand or the greater market to know of that defect absent a warning from Ingersoll Rand, which was never issued.

II.   Ingersoll Rand's Indemnification Obligation to Dresser-Rand

32.     Ingersoll–Rand is required to defend, indemnify and hold Dresser-Rand harmless from all claims arising out of products placed into the stream of commerce by Ingersoll-Rand, as follows:

> Section 8.1(a) Indemnification by the Sellers.  Subject to the limits set forth in Section 8.1, the Sellers agree, jointly and severally, to indemnify, defend and hold the Buyers and their Affiliates (including, after the Closing Date, the Dresser–Rand Group)… harmless from and in respect of *any and all losses*, claims, liabilities, damages, fines, penalties, costs (in each case including reasonable out-of-pocket expenses (including, without limitation, reasonable fees and expenses of counsel)(collectively, "Losses"), that they may incur *arising out of*, *or relating to*… … (ii) breach or nonperformance of any covenant, undertaking or other agreement of the Sellers set forth in this Agreement… (iv) Products Liability Losses…

\*　　　　\*　　　　\*

> Section 9.10(g) "Products Liability" (and collectively "Products Liabilities") means, to the extent related to Products shipped prior to the Closing Date and except to the extent based on acts or omissions (excluding omissions in respect of an alleged failure to warn based solely on events, activities or occurrences prior to the closing) following the Closing, any claim or Proceeding of a third party against Dresser-Rand Group or any of its Subsidiaries or any of their respective predecessors or against any Person or entity whose liability for any such claim Sellers, Dresser-Rand Group or any of its Subsidiaries or any of their respective predecessors, has or allegedly has retained or assumed either contractually or by operation of Law, to the extent such claim or Proceeding alleges personal injury or property damage (other than damage to the Products) related to or arising from an alleged defect in design, manufacture, materials or workmanship, an alleged failure to exercise reasonable care in repair, service or maintenance, an alleged noncompliance with applicable Laws.

**Exhibit B**, Section 8.1(a) and 9.10(g) (*emphasis supplied*).

33.     The allegations against Dresser-Rand in the Canadian lawsuit - ***arise out of*** Ingersoll Rand's placement of a defective expander into the stream of commerce.  Therefore, the Canadian Lawsuit falls squarely within Ingersoll Rand's defense and indemnification obligations to Dresser-Rand.  *See* **Exhibit A** and **Exhibit B**, Sections 8.1(a) and 9.10(g).

34.     Dresser-Rand is also entitled to recover all costs and attorney's fees associated with defending the Canadian Lawsuit and in prosecuting this action against Ingersoll Rand for indemnification.  **Exhibit B**, Section 8.1(a).

### III.  Dresser-Rand's Attempts to Secure Defense and Indemnification

35.     Dresser-Rand issued demands for defense and indemnification to Ingersoll Rand on February 10, 17, 18, and May 1 of 2014, before Ingersoll Rand finally responded by suggesting that the parties enter a tolling agreement, so that it could have until July 28, 2014 to investigate the cause of the failure.  **Exhibit C**.

36.     Dresser-Rand agreed and drafted a tolling agreement, which equally preserved the parties' rights, but which required Ingersoll Rand to respond to Dresser-Rand's demand for indemnification by July 28, 2014 (the deadline proposed by Ingersoll Rand).

37.     After protracted negotiations, on August 13, 2014, Ingersoll Rand and Dresser-Rand entered into a Tolling Agreement.  The Parties desired to toll any applicable statutes of limitation and any other time-related defenses with respect to any claim or cause of action that they may have against each other relating to the Canadian lawsuit and under the Purchase Agreement.  **Exhibit D** (Tolling Agreement).

38.     The Parties were unable to reach agreement on the defense and indemnity obligations of Ingersoll-Rand, and therefore, this action is now timely brought.

### Conditions Precedent

39.     All conditions precedent to the filing of this lawsuit have been satisfied, and this matter is a ripe and justiciable controversy.

40.     The Equity Purchase Agreement provides that Dresser-Rand be defended, indemnified and held harmless by Ingersoll Rand for the claims alleged in the Canadian Lawsuit. *See* **Exhibits A** and **B**.

41.     Dresser-Rand satisfied the notice requirements of the Equity Purchase Agreement. *See* **Exhibit B**, Sections 8.1(e) and 9.6.  It learned of the Canadian Lawsuit on February 6, 2014. *See* **Exhibit E** (Service of Process Transmittal). Dresser-Rand promptly made demand for indemnification upon Ingersoll Rand. See **Exhibit C** (Dresser-Rand demand for indemnification, dated February 10, 2014).

42.     Ingersoll Rand has repudiated its defense and indemnification obligations, making this a ripe and justiciable controversy.

## FIRST CLAIM: BREACH OF CONTRACT

43.     Dresser-Rand repeats the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

44.     Ingersoll Rand breached the terms of the Equity Purchase Agreement with Dresser-Rand by refusing to defend and indemnify Dresser-Rand from the claims alleged in the Canadian Lawsuit, which arise directly from a defective product placed into the stream of commerce by Ingersoll Rand in the 1970s.

45.     Ingersoll Rand further breached the terms of the Equity Purchase Agreement with Dresser-Rand by refusing to reimburse Dresser-Rand for costs and attorneys' fees that it has and will incur in defending the Canadian Lawsuit and in pursuing this current lawsuit.

46.     Dresser-Rand has suffered direct and consequential damages by reason of Ingersoll Rand's breach, in an amount in excess of all jurisdictional limits and to be determined at trial.

## SECOND CLAIM: ANTICIPATORY BREACH OF CONTRACT

47.     Dresser-Rand repeats the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48.     Ingersoll Rand is liable for anticipatory breach because it has repudiated its Equity Purchase Agreement with Dresser-Rand by disavowing its contractual obligations before performance was due.  More particularly, Ingersoll Rand has repudiated its obligation to defend, indemnify and hold Dresser-Rand harmless from the Canadian Lawsuit.  **Exhibit B**, Section 8.1(a).

49.     Dresser-Rand has, continues to, and will suffer direct and consequential damages by reason of Ingersoll Rand's anticipatory breach, in an amount in excess of all jurisdictional limits and to be determined at trial.

## THIRD CLAIM: DECLARATORY JUDGMENT

50.     Dresser-Rand repeats the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51.     A dispute has arisen between Dresser-Rand and Ingersoll Rand over the parties' respective rights and obligations under the Equity Purchase Agreement. **Exhibit B.**

52.     This case presents a present and continuing justiciable controversy concerning the rights of Dresser-Rand and Ingersoll Rand under the Equity Purchase Agreement.

53.     Dresser-Rand is entitled to judgment declaring that Ingersoll Rand breached the terms of the Equity Purchase Agreement.

54.     Specifically, Dresser-Rand is entitled to judgment declaring that Ingersoll Rand breached its duty to defend, indemnify, and hold Dresser-Rand harmless from the Canadian Lawsuit. **Exhibit A.**

55.     Dresser-Rand is further entitled to a judgment declaring that Ingersoll Rand is obligated to reimburse Dresser-Rand for all damages arising from Ingersoll Rand's breach of the Equity Purchase Agreement.

## REQUEST FOR ATTORNEYS' FEES

56.     Dresser-Rand repeats the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57.     Ingersoll Rand has a contractual obligation to reimburse Dresser-Rand for all attorneys' fees, costs, disbursements, and other expenses associated with Dresser-Rand's defense

of the Canadian Lawsuit and with its prosecution of this action for defense and indemnification against Ingersoll Rand.  The Equity Purchase Agreement States:

> Section 8.1(a) Indemnification by the Sellers.  Subject to the limits set forth in Section 8.1, the Sellers agree, jointly and severally, to indemnify, defend and hold the Buyers and their Affiliates (including, after the Closing Date, the Dresser–Rand Group)... harmless from and in respect of any and all losses, claims, liabilities, damages, fines, penalties, costs (in each case including reasonable out-of-pocket expenses *(including, without limitation, reasonable fees and expenses of counsel)(collectively, "Losses")*, that they may incur arising out of, or relating to... (iv) Products Liability Losses...

**Exhibit B**, Section 8.1(a).

58.    Dresser-Rand has been forced to file this lawsuit against Ingersoll Rand because of Ingersoll Rand's refusal to accept its obligations to defend, indemnify and hold Dresser-Rand harmless in the Canadian Lawsuit.

59.    Accordingly, Dresser-Rand is entitled to an award of its attorneys' fees, costs, disbursements, and other expenses incurred in both this litigation and in the Canadian Lawsuit as provided for by contract and applicable law.

WHEREFORE, the Plaintiffs, Dresser-Rand Company, Dresser-Rand Canada, Inc., and Dresser-Rand Group Inc., request that judgment be entered against the Defendants, Ingersoll Rand Company, and Ingersoll Rand Company Limited,  individually and collectively, as follows:

1.  On Plaintiffs' First Claim for Breach of Contract, damages in excess of $75,000, plus interest, costs, and attorneys' fees;

2.  On Plaintiffs' Second Claim for Anticipatory Breach of Contract, damages in excess of $75,000, plus interest, costs, and attorneys' fees;

3.  On Plaintiffs' Third Claim for Declaratory Judgment, an Order declaring that Defendants are required to defend, indemnify and hold Dresser-Rand harmless in the Canadian lawsuit;

4.  On Plaintiffs' Third Claim for Declaratory Judgment, an Order further declaring that the Defendants breached the Equity Purchase Agreement and are liable to the Plaintiffs for all damages resulting therefrom;

5.  Exemplary damages, to the extent permitted by law;

6.  Pre-judgment and post-judgment interest;

7.  Attorneys' fees and costs;

8.  Together with such other and further relief as this Court deems to be just, proper, and equitable.

Respectfully submitted,

Dated: New York, New York
September 5, 2014

By: _Margaret Cmielewski_

Margaret Cmielewski (MC5339)
Hodgson Russ LLP
Attorneys for Plaintiffs
1540 Broadway, 24th Floor
New York, New York 10036
Direct dial: (646) 218-7546
Main no.: (212) 751-4300
Fax no.: (212) 751-0928
mcmielew@hodgsonruss.com

Of Counsel:
Thomas L. Rosenberg
(Ohio Bar No: 0024898)
Roetzel & Andress LPA
155 East Broad Street
PNC Plaza, 12th Floor

Columbus, OH 43215
Direct dial: (614) 723-2006
Main no: (614) 463-9770
Fax no.: (614) 463-9792
trosenberg@ralaw.com
(Motion for Pro-Hac Vice Admission to be Filed)

000161.00756 Litigation 12141088v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DRESSER-RAND COMPANY, DRESSER-RAND
CANADA, INC., AND DRESSER-RAND GROUP INC.,

*Plaintiffs*,                                    CIVIL NO.:

-versus-

INGERSOLL RAND COMPANY AND INGERSOLL
RAND COMPANY LIMITED,

*Defendants*.

## PLAINTIFFS' CORPORATE DISCLOSURE STATEMENT

Plaintiffs Dresser-Rand Company, Dresser-Rand Canada, Inc., and Dresser-Rand Group

Inc. state as follows:

1.      Is said party a parent, subsidiary or other affiliate of a publically owned corporation?

Yes.  Plaintiff Dresser-Rand Company has two (2) general partners.  They are Dresser-Rand Group Inc. and Dresser-Rand LLC.  Plaintiff Dresser-Rand Canada, Inc. has as its parent corporation, Dresser-Rand Group Inc.  Plaintiff Dresser-Rand Group Inc. is a publicly traded company.  The following entities have a 10% or more ownership interest in Dresser-Rand Group Inc.:

- Janus Capital Management, LLC – 11.3%

- Blackrock, Inc. – 10.5%

- Janus Capital Management, LLC is a subsidiary of Janus Capital Group, Inc., which is a publicly traded corporation.  Blackrock, Inc. is a publicly traded corporation.

2.      Is there a publicly owned corporation, not a party to the case, that has a financial interest in the outcome?

Yes.  See above.

Dated: New York, New York
           September 5, 2014

By:   _Margaret Cmielewski_____
           Margaret Cmielewski (MC5339)
           Hodgson Russ LLP
           Attorneys for Plaintiffs
           1540 Broadway, 24th Floor
           New York, New York 10036
           Direct dial: (646) 218-7546
           Main no.: (212) 751-4300
           Fax no.: (212) 751-0928
           mcmielew@hodgsonruss.com

Of Counsel:
Thomas L. Rosenberg
(Ohio Bar No.: 0024898)
Roetzel & Andress LPA
155 East Broad Street
PNC Plaza, 12th  Floor
Columbus, OH 43215
Direct dial:  (614) 723-2006
Main number: (614) 463-9792
trosenberg@ralaw.com
(Motion for Pro Hac Vice Admission to be Filed)

000161.00756 Litigation 12141621v1

2