# EXHIBIT A

FORM 3-9
(Rule 3-9)

COURT FILE NUMBER  QB G-1561/13

COURT OF QUEEN'S BENCH FOR SASKATCHEWAN

JUDICIAL CENTRE      REGINA

PLAINTIFF(S)         YARA BELLE PLAINE INC.

DEFENDANT(S)         INGERSOLL-RAND COMPANY; DRESSER-RAND
                     COMPANY, A NEW YORK PARTNERSHIP;
                     DRESSER RAND GROUP, INC.; AND DRESSER-
                     RAND CANADA, INC.

### NOTICE TO DEFENDANT

1. The plaintiff may enter judgment in accordance with this Statement of Claim or the judgment that may be granted pursuant to *The Queen's Bench Rules* unless, in accordance with paragraph 2, you:

    (a) serve a Statement of Defence on the plaintiff; and

    (b) file a copy of it in the office of the local registrar of the Court for the judicial centre named above.

2. The Statement of Defence must be served and filed within the following period of days after you are served with the Statement of Claim (excluding the day of service):

    (a) 20 days if you were served in Saskatchewan;

    (b) 30 days if you were served elsewhere in Canada or in the United States of America;

    (c) 40 days if you were served outside Canada and the United States of America.

3. In many cases a defendant may have the trial of the action held at a judicial centre other than the one at which the Statement of Claim is issued. Every defendant should consult a lawyer as to his or her rights.

4. This Statement of Claim is to be served within 6 months from the date on which it is issued.

5. This Statement of Claim is issued at the above-named judicial centre on the 2⁰ day of August, 2013.

W. Seed
Dy Local Registrar

_____
Local Registrar

## STATEMENT OF CLAIM

1. The Plaintiff, Yara Belle Plaine Inc. ("Yara") is a body corporate registered pursuant to the laws of Saskatchewan with an office in the City of Regina, in the Province of Saskatchewan

2. The Defendant Ingersoll-Rand Company is a body corporate incorporated pursuant to the laws of the state of New Jersey in the United States of America. Ingersoll-Rand Company's agent/Service of process is the Corporation Trust Company, located at 820 Bear Tavern Rd, in the City of West Trenton in the State of New Jersey.

3. The Defendant, Dresser Rand Group, Inc. is a body corporate incorporated pursuant to the laws of the state of Delaware, in the United States of America. Dresser Rand Group, Inc.'s agent is the Corporation Trust Company located at 1209 Orange Street in the City of Wilmington in the State of Delaware.

4. The Defendant Dresser-Rand Company, a New York Partnership is a partnership located in the State of New York in the United States of America.

5. The Defendant Dresser-Rand Canada, Inc. is a body corporate incorporated pursuant to the provisions of the *Canada Business Corporations Act*, with an office in the City of Calgary, in the Province of Alberta.

6. Unless named specifically herein, the Defendants are hereafter referred to collectively as "Dresser Rand".

7. Yara owns and operates a nitrogen fertilizer plant located near the Town of Belle Plaine, in the Province of Saskatchewan. Yara was formerly known as Saskferco Products Inc.. Any reference to a Saskferco entity herein may be taken as a reference to Yara.

8. On or about October 4, 2002, Yara purchased a nitric acid plant from Louisiana Chemical Equipment Co., L.L.C. ("LEC") including a model E-516 Nitric Acid Expander bearing serial number 2956 (the "Expander"), which included two rotors hereinafter referred to as Rotor A and Rotor B. The Expander, including the rotors, was originally manufactured by Ingersoll-Rand Company or, alternatively by Dresser Rand.

9. Subsequent to the purchase of the Expander, Yara retained Dresser-Rand Canada, Inc., to disassemble, overhaul and reassemble the Expander as well at its rotor and spare rotor assembly. Dresser-Rand Canada, Inc. subsequently performed work on the Expander and rotors in or about February and March of 2004 and returned the Expander to Yara.

10. Yara subsequently put the Expander with Rotor A into service in the nitric acid plant at its nitrogen fertilizer plant and operated the Expander without issue between 2004 and 2009. In 2009, Rotor A was scheduled for regular maintenance and repair. The spare rotor, Rotor B, was then put into service in the Expander while Rotor A was being inspected and repaired by Dresser-Rand Canada, Inc.

11. Prior to completing any repairs on Rotor A, Dresser-Rand Canada, Inc. prepared an Inspection and Repair Proposal dated December 22, 2009 (the "Rotor A Proposal"). The Rotor A Proposal was prepared following two Inspection reports, each prepared by Dresser Rand Canada, Inc. dated July 27, 2009 and November 2, 2009. The November 2, 2009 report noted specifically that:

   (a) The first stage disk assembly wheel was okay to reuse; and

   (b) The second stage disk assembly wheel was okay to reuse.

12. Yara accepted the Rotor A Proposal and issued a purchase order on or about January 13, 2010 in respect of the work. The work on Rotor A was completed and Rotor A was returned to Yara on or about September 29, 2010 where it was stored as a spare.

13. On January 20, 2012, Dresser-Rand Canada, Inc. issued an Inspection and Repair Proposal to overhaul the Expander in July 2012 as part of a planned Yara shut down, which proposal was accepted by Yara. During the course of the overhaul, Rotor B was switched out and Rotor A was reinstalled in the Expander. The Expander went back into service at the end of July 2012.

14. Following the reinstallation of Rotor A, the Expander functioned without incident until August 21, 2012 at which time it experienced a catastrophic failure which resulted in a fire and extensive damage to Yara's facility.

15. The failure occurred in the second stage disc of Rotor A and was the result of inter granular cracking commonly known as stress relaxation cracking ("SRC").

16. The Expander was manufactured in or about 1971 and the first two discs of the rotors in the Expander were constructed of a steel alloy known as "A286", using a single aged heat treatment process. Following a series of failures of material made of single aged heat treated A286 and similar alloys as a result of SRC in the 1970 and 1980's, Ingersoll-Rand Company, or alternatively Dresser Rand, changed its manufacturing process for its expanders to use a double aged heat treatment.

17. Ingersoll-Rand Company and Dresser Rand therefore knew, from at least the 1980's, that the single aged heat treated A286 material used in the first and second stage discs of the Expander was prone to failure by SRC when operated in the conditions characteristic of many industrial operations, including that of Yara's nitric acid plant.

**Breach of the duty to warn**

18. Yara says that the original manufacturer, Ingersoll-Rand Company, or alternatively, Dresser Rand by reason of the fact that it manufactured the Expander, owed a duty of care to Yara, as the end user, to warn Yara of dangers inherent in the operation of the Expander and of the defects inherent in using single aged A286 steel in the Expander.

19. Yara says that Dresser-Rand Canada., Inc. owed a duty of care to Yara to warn Yara of dangers inherent in the operation of the Expander and of the defects inherent in using single aged A286 steel in the Expander.

20. Yara says that the risk of SRC was a risk which was known or ought to have been known by Dresser Rand and that Dresser Rand failed to provide any, or alternatively any adequate warning of the risk of failure by SRC of the Expander to Yara.

21. The risk posed by SRC was exacerbated by the fact that the first two discs of Rotor A were constructed of single aged A286 steel, a defect known or which ought to have been known to each of the Dresser Rand defendants and that as such, the Dresser Rand defendants were under a heightened duty to warn Yara of the danger posed by the continued use of the Expander.

22. Yara says further that Ingersoll-Rand Company, Dresser-Rand Canada, Inc. and or alternatively Dresser Rand knew or ought to have known of the conditions under which the Expander would be operated and was therefore under a heightened duty to warn Yara of the risks inherent in the operation of the Expander.

23. The fact is that the Dresser Rand defendants failed to give any, or alternatively any adequate warning, of the increased risk posed by the manufacture of the Expander using single aged A286 steel and the failure to disclose or warn of those risks constitutes a breach of the duty of care owed to Yara as the end user of the product.

24. Yara says that if the dangers associated with single aged A268 steel had been disclosed to Yara, it would have taken sufficient steps such that the Expander could be operated without undue risk.

25. Yara says that the breach of the duty to warn specified herein by each of the Dresser Rand defendants caused Yara's injury and that the same was reasonably foreseeable. In particular, it was reasonably foreseeable that the catastrophic failure of the Expander would result in an explosion and/or fire and would result in both physical property damage and business interruption losses.

26. Yara alternatively says that the breach of the duty to warn specified herein by each of the Dresser Rand defendants materially contributed to Yara's loss.

27. Yara says that as a result of the breach of the duty to warn, Yara has suffered significant property damage in an amount to be proven at trial but estimated to be in excess of $13,000,000.

28. Yara says that as a result of the breach of the duty to warn, Yara has suffered business interruption losses in an amount to be proven at trial but which are estimated to be in excess of $19,000,000.

### Negligence of Dresser-Rand Canada, Inc.

29. In the alternative, Yara says that Dresser-Rand Canada, Inc. owed a duty of care to Yara in the course of inspecting, recommending a repair and completing repairs and/or service to the Expander.

30. Yara says that Dresser-Rand Canada., Inc. breached its duty of care in inspecting the Expander and its rotors by failing to recommend the replacement of the rotors with double aged heat treatment A286 or other alloys suitable for the operation of the Expander or to recommend testing that would determine the presence of SRC in the rotors.

31. Yara says further that Dresser-Rand Canada, Inc. negligently repaired or serviced Rotor A of the Expander. Particulars of such negligence include the failure of Dresser-Rand Canada, Inc. to properly test for and to detect the presence of SRC in the rotors.

32. As a result of Dresser Rand Canada, Inc.'s negligence, Yara suffered damage and loss in an amount to be proven in trial but which is estimated at paragraphs 32 and 33 hereof.

### Breach of Contract

33. Alternatively, Yara says that Dresser Rand Canada, Inc., breached its contract with Yara by failing to complete the inspection, recommending a repair, and completing the repairs and/or service to the Expander in a good and workmanlike manner.

34. As a result of Dresser Rand's negligence, Yara suffered damage and loss in an amount to be proven at trial but which is estimated at paragraphs 32 and 33 hereof.

35. The Plaintiff therefore claims the following relief against the Dresser Rand Defendants

   (a) Judgment in an amount to be proven at trial;

   (b) Interest pursuant to the terms of *the Pre-judgment Interest Act;*

   (c) The costs of this action on a solicitor-client basis; and

   (d) Such further and other relief as this Honourable Court may allow;

Dated at the City of Regina, in the Province of Saskatchewan this 20 day of August, 2013

MacPherson Leslie & Tyerman LLP

Per: _____
Counsel for the Plaintiff, Yara Belle Plaine Inc.

**CONTACT INFORMATION AND ADDRESS FOR SERVICE**

**If prepared by a lawyer for the party:**

| | |
|---|---|
| Name of firm: | MacPherson Leslie & Tyerman LLP |
| Name of lawyer in charge of file: | Leonard D. Andrychuk |
| Address of legal firms: | 1500 - 1874 Scarth Street<br>Regina, Saskatchewan  S4P 4E9 |
| Telephone number: | (306) 347-8000 |
| Fax number (*if any*): | (306) 352-5250 |
| E-mail address (*if any*): | LAndrychuk@mlt.com |