SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954
(212) 455-2000

———

FACSIMILE (212) 455-2502

DIRECT DIAL NUMBER                                                                                 E-MAIL ADDRESS
(212) 455-2696                                                                                         lneuner@stblaw.com

<u>BY ECF AND E-MAIL</u>                                  October 3, 2014

Re:   *Dresser-Rand Co., et al. v. Ingersoll Rand Co., et al.*,
        <u>No. 14 CV 7222</u>

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Dear Judge Failla:

       We are counsel for Defendants Ingersoll Rand Company and Ingersoll Rand Company Limited (collectively, "Ingersoll Rand") in the above-captioned litigation. Pursuant to Section 4(A) of Your Honor's Individual Rules of Practice in Civil Cases, we respectfully submit this letter to request a pre-motion conference on Defendants' proposed motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. By way of background, Ingersoll Rand (a manufacturer of large industrial equipment in business since 1906) sold its ownership interest in Dresser-Rand (previously an Ingersoll Rand subsidiary) to First Reserve (a private equity firm) in 2004. The sale was embodied in an Equity Purchase Agreement dated August 25, 2004 (the "EPA"). The EPA contained indemnification provisions running to both the Sellers and the Buyers regarding certain liabilities associated with the other companies' business conduct.

       In the current lawsuit, Plaintiffs Dresser-Rand Company, Dresser-Rand Canada, Inc., and Dresser-Rand Group Inc. (collectively, "Dresser-Rand") ask this Court to declare that Ingersoll Rand has breached a contractual obligation to defend and indemnify Dresser-Rand with respect to a lawsuit pending against Dresser-Rand and Ingersoll Rand Company in Saskatchewan, Canada, styled *Yara Belle Plaine Inc. v. Ingersoll-Rand Company, Dresser-Rand Company, Dresser-Rand Group, and Dresser-Rand Canada, Inc.* ("*Yara Belle*"). Compl. ¶ 1.

       The *Yara Belle* lawsuit asserts various claims against Ingersoll Rand Company and Dresser-Rand related to the alleged failure of a model E-516 Nitric Acid Expander (the "Expander") and a resulting fire and damage to the Yara Belle Plaine Inc. nitrogen fertilizer plant in Saskatchewan. The *Yara Belle* lawsuit alleges that the Expander was originally manufactured by *either* Ingersoll Rand Company *or* by Dresser-Rand, and that Dresser-Rand Canada, Inc. serviced the Expander from 2004 until August 21, 2012, when the Expander allegedly failed. (*See* attached.) The *Yara Belle* lawsuit asserts three claims. Yara Belle asserts two of these claims solely against Dresser-Rand Canada, Inc. for negligence and breach of contract related to

SIMPSON THACHER & BARTLETT LLP

The Honorable Katherine Polk Failla  -2-  October 3, 2014

the servicing of the Expander. The remaining claim, for breach of the duty to warn, is asserted against Ingersoll Rand Company and all three Dresser-Rand entities. The *Yara Belle* suit is in its early stages in the Saskatchewan court and no party's liability has been established or precluded. Ingersoll Rand wants to file a motion to dismiss on the grounds that Plaintiffs have not stated valid claims for either indemnification or a defense under the EPA and relevant New York law.

 A. **The Complaint Should Be Dismissed Because Dresser-Rand Cannot Establish That The *Yara Belle* Lawsuit Is An Indemnifiable Loss Under The EPA At This Time**

  Ingersoll Rand has a limited contractual obligation to indemnify Dresser-Rand for certain defined "Losses" pursuant to Section 8.1(a) of the EPA. Compl. ¶¶ 1–2, 32. These indemnifiable "Losses" include "Products Liabilities Losses," which by definition explicitly exclude Losses "based on acts or omissions . . . following the Closing"—*i.e.*, losses based on the acts or omissions of Dresser-Rand after the EPA closed on October 29, 2004. Compl. ¶ 32; EPA §§ 8.1(a), 9.10(g).

  Dresser-Rand has not established in the Complaint, nor could it, that the *Yara Belle* lawsuit is an indemnifiable loss within the "Products Liabilities Losses" definition. Dresser-Rand cannot demonstrate on the face of its Complaint that any "loss" in the *Yara Belle* lawsuit is *not* based on Dresser-Rand's own acts or omissions between the date the EPA closed and August 21, 2012, the date the Expander allegedly failed. To the contrary, the *Yara Belle* complaint alleges that it was Dresser-Rand Canada, Inc. that undertook the activities closest in time to the alleged failure of the Expander. *E.g.*, Ex. A ¶¶ 13–14. Moreover, the *Yara Belle* complaint asserts *all* three of its claims against Dresser-Rand, including its claim for Dresser-Rand's alleged failure to warn, Dresser-Rand's alleged negligence, and Dresser-Rand's alleged breach of contract. *Id.* ¶ 31. The *Yara Belle* complaint asserts, in addition to its claim against Ingersoll Rand, that Dresser-Rand's acts and omissions also led to the Expander incident and resulting damage. Given these circumstances, Dresser-Rand does not have a valid, ripe claim for indemnification under the EPA. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Katzman v. Helen of Troy Texas Corp.*, No. 12 CIV. 4220 PAE, 2012 WL 3831745, at *3 (S.D.N.Y. Aug. 28, 2012) (dismissing as "entirely premature" indemnification claims where it was a "matter for conjecture" whether the indemnified party would ever suffer an indemnifiable loss).

  New York law on indemnification supports Ingersoll Rand's position. New York law, which governs the EPA (*see* EPA § 9.2), requires a party seeking contractual indemnification to prove itself free from negligence in order to state a valid claim for indemnification. *See Cardona v. Pfizer, Inc.*, 967 N.Y.S.2d 865 (N.Y. Sup. Ct. 2013); *Swissport Puerto Rico, Inc. v. Eagle Global Logistics, Inc.*, No. 05 CV 671 (JG), 2007 WL 496437, at *5 (E.D.N.Y. Feb. 12, 2007). An exception exists where the parties' contract specifically provides for indemnification for the indemnitee's acts of negligence. *Id.* Here, the EPA does just the opposite; it explicitly carves *out* of Ingersoll Rand's indemnification obligation any losses due to Dresser-Rand's own negligence. *See* Section 9.10(g). At this point in time, Yara Belle asserts that Dresser-Rand's conduct was a cause of its injury, and Dresser-Rand cannot preclude the possibility that it will be found liable on this basis. Indeed, any adjudication of Dresser-Rand's fault for Yara Belle's injury would have to occur in the Canadian action, not this Court. The indemnification provided

SIMPSON THACHER & BARTLETT LLP

The Honorable Katherine Polk Failla  -3-  October 3, 2014

under the EPA applies only to loss *imposed by the third party action.* See Section 8.1(a). If there is ultimately a judgment imposed on Dresser-Rand in the *Yara Belle* suit as a result of Dresser-Rand's own acts, then the Canadian determination as to Dresser-Rand's fault is determinative for purposes of the indemnity.[1]

**B.     The Complaint Should Be Dismissed Because The EPA Does Not Require Ingersoll Rand To Assume The Defense Of Dresser-Rand In The *Yara Belle* Lawsuit**

Dresser-Rand wrongly asserts that Ingersoll Rand has an affirmative duty to defend it in the *Yara Belle* lawsuit. However, the EPA does not require Ingersoll Rand to provide an affirmative defense of product liability claims, and the EPA does not require Ingersoll Rand to reimburse defense costs as they are incurred where Dresser-Rand has not established an entitlement to indemnification.

Section 8.1(e) of the EPA provides that for products liability claims tendered for indemnification by Dresser-Rand, Ingersoll Rand has the "*opportunity*" to assume the defense of the case, hire the defense counsel of its choice, and make strategy calls about how the case is litigated and resolved. The EPA makes clear, however, that this is an *option*, not a requirement. If Ingersoll Rand chooses not to assume the defense, Dresser-Rand has the right to assume its own defense and choose its own defense counsel. *See* Section 8.1(e). The elective nature of this right for product liability claims (and several other claims) is highlighted by the contrasting way in which asbestos liability claims are treated in the EPA. For these claims, the EPA states that Ingersoll Rand "*shall assume* the defense of all Asbestos Liabilities." *Id.* Given this unambiguous language in the EPA, Dresser-Rand's claims that Ingersoll Rand has breached the contract "by refusing to defend" Dresser-Rand (Count One), has engaged in anticipatory breach by "repudiating its obligation to defend" (Count Two), and has "breached its duty to defend" (Count Three) are all invalid. Ingersoll Rand has no contractual obligation to assume Dresser-Rand's defense in Canada.

It is possible that Dresser-Rand may counter that what it really wants is to choose its own defense counsel and be paid in real-time for the defense invoices pursuant to Section 8.1(f) of the EPA. While Dresser-Rand does not refer to this provision in its Complaint, this assertion would nonetheless fail as a matter of law. Real-time reimbursement for defense costs is only available under Section 8.1(f) where the requesting party "shall be entitled to indemnification or reimbursement." *Id.* As set forth above, Dresser-Rand is not currently entitled to any indemnification or reimbursement because it cannot establish that it is incurring costs as a result of an "indemnifiable Loss" under the Products Liability Losses definition. EPA §§ 8.1(a), 8.1(f), 9.10(g). Because Yara Belle asserts that Dresser-Rand's own acts or omissions were a cause of its injury, Dresser-Rand cannot establish that the *Yara Belle* lawsuit is imposing a loss that is indemnifiable under the EPA.

---

[1] Further, the claim in the *Yara Belle* lawsuit for "business interruption" damages in excess of $19 million could never qualify as an indemnifiable loss for purposes of Ingersoll Rand's obligations to Dresser-Rand. Specifically, Section 8.1(g) of the EPA explicitly excludes from indemnification "lost profits, diminution in value, consequential, exemplary or special damages." EPA § 8.1(g). New York law treats business interruption damages as "consequential" damages. *World-Link, Inc. v. Citizens Telecom. Co.*, No. 99CIV3054 GEL, 2000 WL 1877065, at *5 (S.D.N.Y. Dec. 26, 2000) (categorizing business interruption damages as "consequential" rather than "general").

SIMPSON THACHER & BARTLETT LLP

The Honorable Katherine Polk Failla     -4-     October 3, 2014

\*   \*   \*   \*   \*

      We have conferred with Plaintiffs' counsel regarding the bases for Defendants' motion and the parties were not able to resolve the dispute consensually. We look forward to discussing this matter further at a pre-motion conference.

Respectfully submitted,

*/s/ Lynn K. Neuner*

Lynn K. Neuner<br>
Noah M. Leibowitz

cc:    Thomas Rosenberg, Esq.<br>
        Margaret Cmielewski, Esq.<br>
        *Counsel for Plaintiffs*

Attachment

FORM 3-9
(Rule 3-9)

COURT FILE NUMBER  Q13C1561/13

COURT OF QUEEN'S BENCH FOR SASKATCHEWAN

JUDICIAL CENTRE       REGINA

PLAINTIFF(S)          YARA BELLE PLAINE INC.

DEFENDANT(S)          INGERSOLL-RAND COMPANY; DRESSER-RAND COMPANY, A NEW YORK PARTNERSHIP; DRESSER RAND GROUP, INC.; AND DRESSER-RAND CANADA, INC.

## NOTICE TO DEFENDANT

1. The plaintiff may enter judgment in accordance with this Statement of Claim or the judgment that may be granted pursuant to *The Queen's Bench Rules* unless, in accordance with paragraph 2, you:

    (a) serve a Statement of Defence on the plaintiff; and

    (b) file a copy of it in the office of the local registrar of the Court for the judicial centre named above.

2. The Statement of Defence must be served and filed within the following period of days after you are served with the Statement of Claim (excluding the day of service):

    (a) 20 days if you were served in Saskatchewan;

    (b) 30 days if you were served elsewhere in Canada or in the United States of America;

    (c) 40 days if you were served outside Canada and the United States of America.

3. In many cases a defendant may have the trial of the action held at a judicial centre other than the one at which the Statement of Claim is issued. Every defendant should consult a lawyer as to his or her rights.

4. This Statement of Claim is to be served within 6 months from the date on which it is issued.

5. This Statement of Claim is issued at the above-named judicial centre on the 20 day of August, 2013.

W. Seed
Dy. Local Registrar
_____
Local Registrar

## STATEMENT OF CLAIM

1. The Plaintiff, Yara Belle Plaine Inc. ("Yara") is a body corporate registered pursuant to the laws of Saskatchewan with an office in the City of Regina, in the Province of Saskatchewan

2. The Defendant Ingersoll-Rand Company is a body corporate incorporated pursuant to the laws of the state of New Jersey in the United States of America. Ingersoll-Rand Company's agent/Service of process is the Corporation Trust Company, located at 820 Bear Tavern Rd, in the City of West Trenton in the State of New Jersey.

3. The Defendant, Dresser Rand Group, Inc. is a body corporate incorporated pursuant to the laws of the state of Delaware, in the United States of America. Dresser Rand Group, Inc.'s agent is the Corporation Trust Company located at 1209 Orange Street in the City of Wilmington in the State of Delaware.

4. The Defendant Dresser-Rand Company, a New York Partnership is a partnership located in the State of New York in the United States of America.

5. The Defendant Dresser-Rand Canada, Inc. is a body corporate incorporated pursuant to the provisions of the *Canada Business Corporations Act*, with an office in the City of Calgary, in the Province of Alberta.

6. Unless named specifically herein, the Defendants are hereafter referred to collectively as "Dresser Rand".

7. Yara owns and operates a nitrogen fertilizer plant located near the Town of Belle Plaine, in the Province of Saskatchewan. Yara was formerly known as Saskferco Products Inc.. Any reference to a Saskferco entity herein may be taken as a reference to Yara.

8. On or about October 4, 2002, Yara purchased a nitric acid plant from Louisiana Chemical Equipment Co., L.L.C. ("LEC") including a model E-516 Nitric Acid Expander bearing serial number 2956 (the "Expander"), which included two rotors hereinafter referred to as Rotor A and Rotor B. The Expander, including the rotors, was originally manufactured by Ingersoll-Rand Company or, alternatively by Dresser Rand.

9. Subsequent to the purchase of the Expander, Yara retained Dresser-Rand Canada, Inc., to disassemble, overhaul and reassemble the Expander as well at its rotor and spare rotor assembly. Dresser-Rand Canada, Inc. subsequently performed work on the Expander and rotors in or about February and March of 2004 and returned the Expander to Yara.

10. Yara subsequently put the Expander with Rotor A into service in the nitric acid plant at its nitrogen fertilizer plant and operated the Expander without issue between 2004 and 2009. In 2009, Rotor A was scheduled for regular maintenance and repair. The spare rotor, Rotor B, was then put into service in the Expander while Rotor A was being inspected and repaired by Dresser-Rand Canada, Inc.

11. Prior to completing any repairs on Rotor A, Dresser-Rand Canada, Inc. prepared an Inspection and Repair Proposal dated December 22, 2009 (the "Rotor A Proposal"). The Rotor A Proposal was prepared following two inspection reports, each prepared by Dresser Rand Canada, Inc. dated July 27, 2009 and November 2, 2009. The November 2, 2009 report noted specifically that:

    (a) The first stage disk assembly wheel was okay to reuse; and

    (b) The second stage disk assembly wheel was okay to reuse.

12. Yara accepted the Rotor A Proposal and issued a purchase order on or about January 13, 2010 in respect of the work. The work on Rotor A was completed and Rotor A was returned to Yara on or about September 29, 2010 where it was stored as a spare.

13. On January 20, 2012, Dresser-Rand Canada, Inc. issued an Inspection and Repair Proposal to overhaul the Expander in July 2012 as part of a planned Yara shut down, which proposal was accepted by Yara. During the course of the overhaul, Rotor B was switched out and Rotor A was reinstalled in the Expander. The Expander went back into service at the end of July 2012.

14. Following the reinstallation of Rotor A, the Expander functioned without incident until August 21, 2012 at which time it experienced a catastrophic failure which resulted in a fire and extensive damage to Yara's facility.

15. The failure occurred in the second stage disc of Rotor A and was the result of inter granular cracking commonly known as stress relaxation cracking ("SRC").

16. The Expander was manufactured in or about 1971 and the first two discs of the rotors in the Expander were constructed of a steel alloy known as "A286", using a single aged heat treatment process. Following a series of failures of material made of single aged heat treated A286 and similar alloys as a result of SRC in the 1970 and 1980's, Ingersoll-Rand Company, or alternatively Dresser Rand, changed its manufacturing process for its expanders to use a double aged heat treatment.

17. Ingersoll-Rand Company and Dresser Rand therefore knew, from at least the 1980's, that the single aged heat treated A286 material used in the first and second stage discs of the Expander was prone to failure by SRC when operated in the conditions characteristic of many industrial operations, including that of Yara's nitric acid plant.

**Breach of the duty to warn**

18. Yara says that the original manufacturer, Ingersoll-Rand Company, or alternatively, Dresser Rand by reason of the fact that it manufactured the Expander, owed a duty of care to Yara, as the end user, to warn Yara of dangers inherent in the operation of the Expander and of the defects inherent in using single aged A286 steel in the Expander.

19. Yara says that Dresser-Rand Canada., Inc. owed a duty of care to Yara to warn Yara of dangers inherent in the operation of the Expander and of the defects inherent in using single aged A286 steel in the Expander.

20. Yara says that the risk of SRC was a risk which was known or ought to have been known by Dresser Rand and that Dresser Rand failed to provide any, or alternatively any adequate warning of the risk of failure by SRC of the Expander to Yara.

21. The risk posed by SRC was exacerbated by the fact that the first two discs of Rotor A were constructed of single aged A286 steel, a defect known or which ought to have been known to each of the Dresser Rand defendants and that as such, the Dresser Rand defendants were under a heightened duty to warn Yara of the danger posed by the continued use of the Expander.

22. Yara says further that Ingersoll-Rand Company, Dresser-Rand Canada, Inc. and or alternatively Dresser Rand knew or ought to have known of the conditions under which the Expander would be operated and was therefore under a heightened duty to warn Yara of the risks inherent in the operation of the Expander.

23. The fact is that the Dresser Rand defendants failed to give any, or alternatively any adequate warning, of the increased risk posed by the manufacture of the Expander using single aged A286 steel and the failure to disclose or warn of those risks constitutes a breach of the duty of care owed to Yara as the end user of the product.

24. Yara says that if the dangers associated with single aged A268 steel had been disclosed to Yara, it would have taken sufficient steps such that the Expander could be operated without undue risk.

25. Yara says that the breach of the duty to warn specified herein by each of the Dresser Rand defendants caused Yara's injury and that the same was reasonably foreseeable. In particular, it was reasonably foreseeable that the catastrophic failure of the Expander would result in an explosion and/or fire and would result in both physical property damage and business interruption losses.

26. Yara alternatively says that the breach of the duty to warn specified herein by each of the Dresser Rand defendants materially contributed to Yara's loss.

27. Yara says that as a result of the breach of the duty to warn, Yara has suffered significant property damage in an amount to be proven at trial but estimated to be in excess of $13,000,000.

28. Yara says that as a result of the breach of the duty to warn, Yara has suffered business interruption losses in an amount to be proven at trial but which are estimated to be in excess of $19,000,000.

**Negligence of Dresser-Rand Canada, Inc.**

29. In the alternative, Yara says that Dresser-Rand Canada, Inc. owed a duty of care to Yara in the course of inspecting, recommending a repair and completing repairs and/or service to the Expander.

30. Yara says that Dresser-Rand Canada., Inc. breached its duty of care in inspecting the Expander and its rotors by failing to recommend the replacement of the rotors with double aged heat treatment A286 or other alloys suitable for the operation of the Expander or to recommend testing that would determine the presence of SRC in the rotors.

31. Yara says further that Dresser-Rand Canada, Inc. negligently repaired or serviced Rotor A of the Expander. Particulars of such negligence include the failure of Dresser-Rand Canada, Inc. to properly test for and to detect the presence of SRC in the rotors.

32. As a result of Dresser Rand Canada, Inc.'s negligence, Yara suffered damage and loss in an amount to be proven in trial but which is estimated at paragraphs 32 and 33 hereof.

**Breach of Contract**

33. Alternatively, Yara says that Dresser Rand Canada, Inc., breached its contract with Yara by failing to complete the inspection, recommending a repair, and completing the repairs and/or service to the Expander in a good and workmanlike manner.

34. As a result of Dresser Rand's negligence, Yara suffered damage and loss in an amount to be proven at trial but which is estimated at paragraphs 32 and 33 hereof.

35. The Plaintiff therefore claims the following relief against the Dresser Rand Defendants

    (a) Judgment in an amount to be proven at trial;

    (b) Interest pursuant to the terms of *the Pre-judgment Interest Act*;

    (c) The costs of this action on a solicitor-client basis; and

    (d) Such further and other relief as this Honourable Court may allow;

Dated at the City of Regina, in the Province of Saskatchewan this 20 day of August, 2013

MacPherson Leslie & Tyerman LLP

Per: _____

Counsel for the Plaintiff, Yara Belle Plaine Inc.

**CONTACT INFORMATION AND ADDRESS FOR SERVICE**

**If prepared by a lawyer for the party:**

| | |
|---|---|
| Name of firm: | MacPherson Leslie & Tyerman LLP |
| Name of lawyer in charge of file: | Leonard D. Andrychuk |
| Address of legal firms: | 1500 - 1874 Scarth Street<br>Regina, Saskatchewan  S4P 4E9 |
| Telephone number: | (306) 347-8000 |
| Fax number (*if any*): | (306) 352-5250 |
| E-mail address (*if any*): | LAndrychuk@mlt.com |