# Exhibit A

# In The Matter Of:

*DRESSER-RAND COMPANY, v.*
*INGERSOLL RAND COMPANY,*

*October 28, 2014*

*Southern District Court Reporters*

Original File EASRDREC.txt
**Min-U-Script® with Word Index**

Page 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   DRESSER-RAND COMPANY,
     DRESSER-RAND CANADA, INC.,
 4   DRESSER-RAND GROUP, INC.
 5                Plaintiffs,
 6         v.                          14 Civ. 7222 (KPF)
 7   INGERSOLL RAND COMPANY,
     INGERSOLL RAND COMPANY LIMITED,
 8                                     Conference
                  Defendants.
 9
     ------------------------------x
10                                     New York, N.Y.
                                       October 28, 2014
11                                     2:00 p.m.
     Before:
12
              HON. KATHERINE POLK FAILLA
13
                                       District Judge
14
15
16         APPEARANCES
17
     ROETZEL & ANDRESS LPA
18        Attorneys for Plaintiffs
     BY:  THOMAS L. ROSENBERG
19
     HODGSON RUSS LLP
20        Attorneys for Plaintiffs
     BY:  MARGARET M. CMIELEWSKI
21
     DAVID J. GRENELL
22        Assistant General Counsel
          Dresser-Rand Company
23
     SIMPSON THACHER & BARTLETT LLP
24        Attorneys for Defendants
     BY:  LYNN K. NEUNER
25        NOAH M. LEIBOWITZ
```

Page 2

1  (Case called)
2  MR. ROSENBERG: Good afternoon, your Honor. For the
3  plaintiffs, Thomas Rosenberg. To my right is Margaret
4  Cmielewski, and to my left is in-house counsel David Grenell.
5  THE COURT: Good afternoon, all of you.
6  MS. NEUNER: Good afternoon, Judge Failla. Lynn
7  Neuner from Simpson Thacher & Bartlett representing the
8  Ingersoll-Rand entities. With me is my partner Noah Leibowitz.
9  We also have with us here from North Carolina Mr. Pete
10 Donnelly, in-house counsel at Ingersoll-Rand.
11 THE COURT: Good afternoon. Did you say North
12 Carolina? At a different time in my life I grew up in northern
13 New Jersey, and I understood that Ingersoll-Rand's headquarters
14 to be up in the Montvale area.
15 MR. DONNELLY: That is true up until the 1970s or so,
16 when it moved down Davidson, North Carolina.
17 THE COURT: Welcome. Thank you all for coming in
18 today. This might otherwise serve as an initial pretrial
19 conference inasmuch as it is our chance to all get together and
20 talk about the issues in this case, but it is also a pre-motion
21 conference based on the submissions that I received, first from
22 the defense and then from the plaintiffs.
23 Mr. Rosenberg, I will start with you nonetheless. I
24 have read the complaint and tried very hard to make my way
25 through the agreement in question. I had with greater success

Page 3

1  made my way through the parties' submissions with respect to
2  their positions. If there are things that you would like to
3  call my attention to at this time, I would like to hear from
4  you.
5  MR. ROSENBERG: Yes, your Honor, I shall. Thank you.
6  The equity purchase agreement is a complicated
7  document that was entered into between the parties, Dresser-
8  Rand's predecessor in interest and Ingersoll-Rand, in
9  connection with various obligations flowing from one to
10 another. We now are challenged with having to apply those
11 obligations to a lawsuit that has been filed up in Saskatchewan
12 where Yara Belle has initiated litigation against Ingersoll-
13 Rand and Dresser-Rand. These two companies, Ingersoll-Rand and
14 Dresser-Rand, decided that their disputes would be determined
15 in the New York courts. That was the decision they made, and
16 that is what we are asking this Court to apply.
17 Having said that, there are really two issues before
18 us. One is the defense obligation, one is the indemnity
19 obligation. We have spent a lot of time looking at this. We
20 have spent a lot of time analyzing both the legal issues and
21 the practical issues of how we proceed. I believe where we are
22 today with this is we are seeking a declaratory judgment action
23 on both the defense obligations and the indemnity obligations.
24 THE COURT: When you say "we"?
25 MR. ROSENBERG: Dresser-Rand, I apologize. Dresser-

Page 4

1  Rand is seeking a determination from this Court on the defense
2  obligation and the indemnity obligation.
3  Briefly on the defense obligation, section 8.1(e) of
4  the equity purchase agreement provides the notice and
5  opportunity to defend. It says opportunity, it doesn't say
6  duty. It says opportunity in that it gives two options to the
7  indemnifying party, Ingersoll-Rand. That is, they can either
8  pick up the defense or, if they don't pick up the defense and
9  there is an indemnity obligation, they owe the defense legal
10 fees.
11 The defense issue is based on the allegations of the
12 complaint, analogous to the insurance world. The complaint
13 that Yara Belle filed creates a defense obligation. It may not
14 create an indemnity obligation, but it clearly creates a
15 defense obligation based on the allegations. That's what we
16 are asking this Court to determine, that there is a defense
17 obligation.
18 If there is a defense obligation based on the
19 allegations that Yara Belle has asserted, then Ingersoll-Rand
20 has elected not to employ its own counsel. But we bring in
21 section 8.1(f) of the agreement that says they are to pay the
22 legal fees periodically as incurred. That would be the legal
23 fees of our defense counsel up in the Canadian action. That is
24 the defense issue before this Court.
25 THE COURT: Following on that, your view is I ought

Easrdrec                                                                                              Page 5

1   not get behind the allegations or determine the veracity or
2   think about how a jury might resolve them. I simply should
3   look at the allegations in the Canadian lawsuit, see that if
4   they are taken as true, they would arguably allege something
5   that is indemnifiable, and therefore that implicates the
6   defense obligation but not the indemnity claims?
7          MR. ROSENBERG: Yes, your Honor, absolutely, very
8   analogous to insurance. If the allegations give rise to the
9   possibility of an indemnity obligation, then Ingersoll-Rand has
10  to pick up the defense.
11         THE COURT: Let me ask you this question, sir. I was
12  going to ask Ms. Neuner this, but I will ask you first, and
13  then she will know it is coming. The concern that I have is
14  wanting to avoid the possibility of, if you will, stepping on
15  the toes of the Canadian court. Similarly, I want to be
16  careful that I am not impermissibly or inappropriately creating
17  a risk of inconsistent judgments. I understand your argument
18  to me to be, sir, that I need not worry about that now, because
19  I must take the allegations as true for purposes of determining
20  the duty to defend.
21         MR. ROSENBERG: Yes, your Honor, only limited to the
22  duty to defend separate from the indemnity obligation.
23         THE COURT: Are you seeking indemnity at this point?
24         MR. ROSENBERG: Yes.
25         THE COURT: OK.

Easrdrec                                                                                              Page 6

1          MR. ROSENBERG: However, however, the Court is a
2   hundred percent correct, that gets us into the troubled area of
3   stepping on the toes of the Canadian case. It gets us into the
4   challenge of inconsistent determinations. It raises a lot of
5   practical issues, which there is a solution to.
6          The problem is that these two parties entered into a
7   contract that said that obligation is going to be decided in
8   New York. I believe the solution to that, though, is that what
9   the contract really says is the New York court determines
10  whether there is an indemnity obligation based on what happens
11  in the Canadian court.
12         THE COURT: Right now not much has happened in the
13  Canadian court.
14         MR. ROSENBERG: It is moving slowly. I can report on
15  the schedule so that the Court is clearly aware of that. We
16  are in constant contact with counsel up in Saskatchewan.
17         What happens in the Canadian court is the Canadian
18  court is going to determine basically who is liable for the
19  fire and resulting damages that occurred at the Yara Belle
20  plant, be it Ingersoll-Rand or Dresser-Rand, and they are also
21  going to determine what we would call cross-claim issues. They
22  call it a little different up in the Canadian system. But they
23  would determine cross-claim issues.
24         Once that determination is made on the indemnity,
25  then, unless one party voluntarily acknowledges the obligation

Easrdrec                                                                                              Page 7

1   and compensates the other, it comes back to this Court for this
2   Court to say, based on what happened in Canada, if you two
3   can't agree on indemnity, it's this Court's role to determine
4   whether there is an indemnity obligation.
5          Therefore, the defense obligation is ripe. The
6   indemnity obligation I think we need to wait and see what
7   happens in Canada.
8          THE COURT: I want to understand how that works out.
9   I'm not sure that there is a practical difference between the
10  two of. You will explain to me where I'm misperceiving the
11  facts.
12         The idea of the duty to defend is that you would reach
13  back to Ingersoll-Rand and say under the agreement you have the
14  right of first refusal, as it were, to defend this. But
15  doesn't that, too -- well, you're telling me it doesn't because
16  I just have to go on the facts.
17         If the duty to indemnify requires more than simply
18  analysis of the pleadings, by allowing the duty to defend or
19  finding a duty to defend in this case, have I not effectively
20  found a duty to indemnify? Because on these facts, on this
21  agreement, the choice is either they can do it themselves or
22  they can pay you back for doing it, correct?
23         MR. ROSENBERG: Yes, your Honor, to your last comment.
24         THE COURT: OK.
25         MR. ROSENBERG: The distinction here is that the duty

Easrdrec                                                                                              Page 8

1   to defend and the duty to indemnify are different. The duty to
2   defend is based on the allegations that have been raised in the
3   Yara Belle complaint. The duty to indemnify is based upon the
4   finding in the Canadian court. An indemnification obligation
5   only exists if in fact --
6          THE COURT: Fair enough. I think I get this. The
7   duty to defend encompasses basically the attorney's fees right
8   now and not necessarily any judgment at some later date,
9   whereas the duty to indemnify includes, if damages are
10  assessed, that plus the costs of defending?
11         MR. ROSENBERG: Correct.
12         THE COURT: I understand, thank you. I needed that
13  clarification.
14         MR. ROSENBERG: As the Yara Belle complaint indicates,
15  the plaintiff's claim is roughly $32 million. The indemnity
16  issue clearly is premature. The defense issue, because of how
17  large that claim is, is ripe, and that is I think what needs to
18  be determined at first.
19         I will say, with all respect to both the Court and
20  opposing counsel, that is a little different from what we pled
21  in the complaint. We clearly pled in the complaint that the
22  duty to indemnify has to be determined now. We spent a lot of
23  time with Ms. Neuner's arguments. We spent a lot of time
24  looking at that. We are in agreement that it is premature to
25  decide the duty to indemnify now.

Easrdrec                                                                                    Page 9

1   THE COURT: While you are in agreement, I want to hear
2   a little bit more about this. My sense from looking at the
3   pleadings and the papers in this case was that, maybe I'm wrong
4   here, the parties were in discussions before your complaint was
5   filed. There was an effort to resolve this dispute short of
6   litigation, correct?
7   MR. ROSENBERG: Yes, absolutely.
8   THE COURT: On what other things are the parties in
9   agreement? Anything? What I would like to know is how many
10  issues do I really need to decide? I guess I'm grateful to you
11  for this. You have come forward and said, I've looked at their
12  arguments, and I now agree with a portion of them, and
13  therefore this is our view on this. Is there anything else as
14  to which the parties are in agreement at this time?
15  MR. ROSENBERG: I don't know.
16  THE COURT: I guess we will find out from the
17  arguments. Fair enough. I appreciate that, sir. That was a
18  very broad question. I think I really want to know, were you
19  close to resolving this case?
20  MR. ROSENBERG: No, never on the indemnity issue.
21  Never on the indemnity issue. The parties entered a tolling
22  agreement. The reason they entered into a tolling agreement,
23  which I also think, in all candor to the Court, is probably not
24  at issue at this point, our Canadian counsel made an argument
25  that the case should have been heard in Alberta, not

Easrdrec                                                                                   Page 10

1   Saskatchewan. I'm not exactly sure why, but he did. There
2   were certain defenses that were running in Alberta that were
3   not running under Saskatchewan law. In order to preserve those
4   defenses, we entered into the tolling agreement.
5   They filed what we would consider a motion either to
6   dismiss or change venue from Saskatchewan to Alberta. The
7   court in Canada denied that. Under the Saskatchewan procedure,
8   I think the tolling agreement really becomes irrelevant. So,
9   the case is in Saskatchewan.
10  I did indicate to the Court I would say a little bit
11  about the schedule as to the Canadian case. They are in the
12  process now of what we would call exchanging documents. They
13  have made a demand for articulation of damages, which is a
14  formal process in that court. Yara Belle has not yet responded
15  to either one of them.
16  The answer is, obviously, a little bit different. You
17  just submit your defenses. I don't think that has been filed
18  yet. They have some time to do so. I think that is going to
19  be filed in November. Whether we assert a cross-claim against
20  Ingersoll-Rand is really dependent upon what happens today, but
21  I expect that will occur.
22  THE COURT: Thank you very much. I might get back to
23  you in a few minutes.
24  Ms. Neuner, will I be hearing from you or from your
25  co-counsel on this?

Easrdrec                                                                                   Page 11

1   MS. NEUNER: Your Honor, I will present for Ingersoll-
2   Rand.
3   THE COURT: Very good. Let me ask you this. It may
4   be that in light of what Mr. Rosenberg has said, some of the
5   things you are going to tell me may have to be modified because
6   you now understand he may be making slightly different
7   arguments. I want to ask you a preliminary question, and then
8   I want to ask you about your argument.
9   What was a little bit surprising to me, but this just
10  may be my own lack of experience in this particular area, is
11  that it sounded like both sides wanted me to decide the issue
12  and neither side wanted me to stay the matter. That was a
13  surprise to me. Do you want me to decide the defense issue?
14  MS. NEUNER: No, your Honor.
15  THE COURT: OK. What I understood from your letter
16  was you want me to find that this is not an indemnifiable
17  event. Correct?
18  MS. NEUNER: Your Honor, think the thrust of our
19  motion to dismiss is that the entire action is premature. We
20  do not yet have a justiciable case or controversy, because the
21  Canadian action has not determined the basis upon which any
22  loss has been imposed. Do you want me to unpack that?
23  THE COURT: Please. As you do so, let me have you
24  keep in mind one case. There is a Second Circuit case known as
25  Associated Indemnity v. Fairchild. It stands for the

Easrdrec                                                                                   Page 12

1   proposition, in a case involving insurance coverage, which I
2   think is slightly different from what we have here, that the
3   determination of coverage and the determination of whether
4   something is indemnifiable under an insurance contract is a
5   determination that can be made while the action as to which the
6   indemnity claim is being sought is ongoing. There is that. I
7   checked, and that actually gets cited with some frequency.
8   The question to you was whether there is something
9   about this contract case, because this is not an insurance
10  case, that renders the analysis different.
11  MS. NEUNER: Your Honor, you are spot-on with all your
12  intuitions. Let me start by saying I think that in today's
13  conference we are making good progress. I, too, am grateful to
14  Mr. Rosenberg for the candor with which he has approached his
15  representations today.
16  As I understand it, what we now have from Dresser-Rand
17  is an admission that any request about an indemnification of a
18  final judgment up in the northern area of Canada, Saskatchewan,
19  is premature. We absolutely agree with that. The reason why
20  is that one cannot know if Dresser-Rand is going to be found
21  liable in Saskatchewan, if Ingersoll-Rand is going to be found
22  liable in Saskatchewan, if both are, if there is going to be an
23  apportionment of fault, or whether there is going to be a
24  defense verdict. So, literally as to any final judgment, there
25  is no determination as to the basis for that loss being imposed

Easrdrec                                                                                                           Page 13

1  at this point in time.
2      Now what I think we need to tackle is the question of
3  this defense.  First let me say this.  There is a very
4  important philosophical and legal distinction between a
5  contractual duty to indemnify and an insurance policy.  I do a
6  lot of insurance coverage work.  I am absolutely certain that
7  New York law has decided no more than 300 times that a duty to
8  defend is broader for an insurance policy than a duty to
9  indemnify.
10     In New York they call it either the four corners rule
11 or the eight corners rule.  You would take, as the judge, the
12 four corners of the underlying complaint, here the six-page
13 Yara Belle claims, complaint, put it side by side with the four
14 corners of that policy, and you would search for, as the fact
15 determiner, is there any possible claim for coverage within
16 this Yara Belle complaint that would fit within the corners of
17 the policy, and if so, the insurer has a duty to defend.
18     Why?  Because it's liability insurance.  Part of those
19 premiums were for the protection that when an insurer receives
20 the third-party claims, they will have the peace of mind that
21 the insurer is going to step forward and pay their defense
22 costs.
23     Let's contrast that with the contractual obligation to
24 indemnify, which is what we have here.  The context is that
25 this was a purchase agreement between a private equity group,

Easrdrec                                                                                                           Page 14

1  First Reserve, and Ingersoll-Rand, a diversified strategic
2  company engaged in heavy industrial machinery manufacturing and
3  distribution.
4      As part of the normal merger and acquisition
5  representations and covenants, you have section 8 indemni-
6  fication obligations.  This is not an insurance policy.  In
7  fact, it is quite clear, and you have already picked up on
8  this, that the defense discussion is about an opportunity to
9  defend a products liability loss.  It is not an obligation.
10 And Mr. Rosenberg characterized this correctly.
11     In this situation where Dresser-Rand is making the
12 request for a indemnity to Ingersoll-Rand, Ingersoll-Rand, if
13 it believes that it is responsible for this alleged loss, can,
14 at its election, you said the right of first refusal, come
15 forward, say I'm going to assert a defense, I'm going to
16 appoint Canadian counsel of my selection, I'm going to control
17 the strategic decision-making, where we are going to fight
18 this, whether we are going to settle it.  Why?  Because
19 Ingersoll-Rand has a determination up front that it is going to
20 be liable for any loss in the end, so it might as well control
21 the picture as it gets down the Canadian litigation track.
22     However, in this particular situation we do not have a
23 determination by Ingersoll-Rand that is in fact on the hook for
24 the indemnity.  Why is that?  Because when you look at this
25 Yara Belle complaint, there are three causes of action.  Two of

Easrdrec                                                                                                           Page 15

1  the three, your Honor, are solely against Dresser-Rand, one for
2  negligence on Dresser-Rand Canada's part and the second for
3  breach of contract by Dresser-Rand Canada.  Why is that?
4  Because Dresser-Rand Canada was the sole entity that was
5  servicing this expander from 2004 to the time of its failure in
6  August of 2012.
7      The third claim in the complaint is asserted against
8  both Ingersoll-Rand and the Dresser-Rand entities, and that is
9  essentially a duty to warn.  You could read this to say that
10 Ingersoll-Rand is being sued solely for Ingersoll-Rand's
11 actions and alleged duty to warn about the expander's
12 components, and Dresser-Rand is being sued for Dresser-Rand's
13 actions and alleged duty to warn about the components in this
14 expander.
15     So, in some ways, because the complaint is six pages
16 and is fairly ambiguous, you could say that both entities are
17 being sued for their own individual acts, not Dresser-Rand
18 being sued for Ingersoll-Rand and vice versa.  It is simply too
19 early to tell the true theories of the liability there.
20     But when you go into the EPA, this merger document
21 that was put together ten years ago by my firm and Skadden, you
22 see that the products liability loss has a very important
23 distinction.  It says that for a products liability loss, there
24 is an exception in the definition -- your Honor, I'm at
25 9.10(g) -- an exception for acts or omissions following the

Easrdrec                                                                                                           Page 16

1  closing.  This means that Ingersoll-Rand was saying that
2  following the closing, if there were acts or omissions by
3  Dresser-Rand with respect to the machinery, Ingersoll-Rand was
4  not making that an indemnified claim.  It literally was
5  excluded in the definition.
6      THE COURT: Your argument is not that Ingersoll-Rand
7  no longer had a duty to warn after the closing.  You're saying
8  that it had its duty to warn and Dresser-Rand had its duty to
9  warn, but Dresser-Rand was not able post-closing to receive
10 indemnity for any violations of the duty to warn?  That's the
11 argument your now making to me?
12     MS. NEUNER: Yes, your Honor.
13     THE COURT: OK.
14     MS. NEUNER: And to the extent Dresser-Rand misper-
15 formed, didn't do a good job in its eight years of servicing of
16 its expander, and if that is the reason for the failure and the
17 fire, that's Dresser-Rand's post-closing acts or omissions for
18 which it is responsible.  It is not even within the definition
19 of an indemnifiable claim.
20     Let me point out to you one other provision, if I
21 could, in the EPA that shores up this thinking.  I wouldn't
22 want there to be any misconception that Ingersoll-Rand's
23 indemnity is so broad that it actually would capture post-
24 closing negligence by Dresser-Rand.  The point I would bring
25 you to, your Honor, is 8.1 subpart (b).  This is the reciprocal

Easrdrec                                                        Page 17

 1  indemnification.
 2      Ingersoll-Rand, when it was selling off Dresser-Rand,
 3  said we are going to give you, First Reserve, a duty to
 4  indemnify for things preclosing, but when there are things
 5  post-closing, if Ingersoll-Rand gets named in that lawsuit,
 6  Ingersoll-Rand wants protection.
 7      The buyers, First Reserve, gave an indemnity back to
 8  Ingersoll-Rand. Here it specifically says that the indemnity
 9  for Ingersoll-Rand, our clients, includes any losses as a
10  result of the conduct of business of any member of the
11  Dresser-Rand group after the closing date. That is Roman (ii)
12  under 8.1.
13      THE COURT: If you had really good distance vision,
14  you would see that I underlined it in mine. I guess the
15  question is, why is Ingersoll-Rand not seeking indemnification?
16  Or are they?
17      MS. NEUNER: Your Honor, great question. The
18  indemnity here that you see is from the seller. The seller is
19  First Reserve. First Reserve acquired Dresser-Rand in 2004 and
20  then spun off Dresser-Rand in 2007 in an IPO. We actually have
21  been trying to track down whether this ongoing indemnification
22  obligation in this EPA was transferred from First Reserve to
23  Dresser-Rand at the time of the spin-off. We have asked Mr.
24  Rosenberg for that information, and it has not yet been
25  forthcoming.

Easrdrec                                                        Page 18

 1      It is very, very, very obvious that what you will have
 2  here at the end of the day are cross-claims for indemni-
 3  fication. In fact, in Canada, Canadian counsel for Ingersoll-
 4  Rand will be putting in its notice of defense and its statement
 5  of cross-claim against Dresser-Rand in the Saskatchewan action
 6  in the next week. So, the Canadian action will in fact have
 7  Ingersoll-Rand's cross-claims against Dresser-Rand before Madam
 8  Justice Pritchard, who is the ultimate decision make there.
 9      I think you have rightly determined the risk of
10  proceeding forward with this case, which is stepping on the
11  toes of Madam Justice Pritchard and coming to an inconsistent
12  determination. It could very well be that the ultimate loss,
13  if any, that is borne by Dresser-Rand will be as a result of
14  its own acts and omissions after the closing of this merger, in
15  which case Ingersoll-Rand never, never, never had an indemnity
16  obligation.
17      The key to this, and I think the barest point of
18  dispute between the parties, is that our contractual
19  indemnification obligation is the same whether the loss that is
20  being sought is defense invoices or resulting judgment. There
21  is no separate duty to defend that is broader than the duty to
22  indemnify.
23      When you said, if I decided a defense obligation,
24  wouldn't I in fact be deciding an indemnity obligation, you are
25  absolutely right. It's a section 8, which is about

Easrdrec                                                        Page 19

 1  indemnities. Yes, there is this provision which Mr. Rosenberg
 2  and I have talked about, which is 8.1(f), which talks about
 3  real-time reimbursement of defense fees as they are incurred.
 4  But, your Honor, I will point you to the language at the very
 5  start that says, "This applies where an indemnified party shall
 6  be entitled to indemnification."
 7      That is our central dispute. We do not believe at
 8  this point that Dresser-Rand is entitled to indemnification.
 9      THE COURT: Let me ask you this, Ms. Neuner, at the
10  risk of seeming like I'm beating a dead horse or at the risk of
11  seeming that I simply don't understand what is going on here.
12  Are you contemplating a motion in which you ask me to stand
13  down and do nothing until the Canadian courts make some
14  determination here, or are you asking me to make a
15  determination on the four corners or the eight corners, however
16  you would like to look at it, that there can be no
17  indemnifiable event in light of the pleadings?
18      Both you and Mr. Rosenberg are telling me I can look
19  at the pleadings. I think that's what you are saying. He is
20  saying I look at them and I must find a duty to defend. You
21  are saying I look at them and I can only come to the conclusion
22  that it is a nonindemnifiable event.
23      MS. NEUNER: Your Honor, I would pull back from there.
24  I'm not going to ask you to actually make a declaratory
25  judgment in our favor. What I would say is this. I think it

Easrdrec                                                        Page 20

 1  is appropriate to dismiss the case at this point because it is
 2  nonjusticiable because there are simply not enough facts
 3  developed in the Canadian action to determine the basis upon
 4  which loss, which is a capitalized term in the EPA, is being
 5  incurred. I could ask you to stay it, but I don't think that
 6  is wise in terms of your own docket, because the Canadian
 7  action could go on for years.
 8      THE COURT: I'll say this. If that is the only thing
 9  you are concerned about, I have the ability to basically just
10  add a number to the docket and it goes into a suspense docket.
11  Don't worry about me. That should not be the issue.
12      MS. NEUNER: OK.
13      THE COURT: And I am genuinely interested in the
14  issues involved in this case. So don't worry that I would be
15  happy to get it off my docket, no.
16      I want to be sure that if I have enough information in
17  front of me and should be deciding the issue, that I do, and I
18  can do that in a way that does not offend or friends to the
19  north. Similarly, if I should not be because of the position
20  of that, that's what I would like to know.
21      We are here today on a pre-motion conference, which to
22  me suggests that a motion is forthcoming. I think it is coming
23  from you.
24      MS. NEUNER: Yes.
25      THE COURT: I would like to know what it is. Let's go

Easrdrec                                                                   Page 21

1 that far.
2        MS. NEUNER: Your Honor, ours is a motion to dismiss
3 for a lack of a justiciable case or controversy.
4        THE COURT: All right.
5        MS. NEUNER: I have said this to Mr. Rosenberg.  If at
6 the end of the Canadian action liability is imposed on Dresser-
7 Rand for the full amount sought of $32 million and Madam
8 Justice Pritchard makes a finding that it is 100 percent the
9 fault of Ingersoll-Rand, at that point we would have a basis to
10 say this fits within an indemnifiable loss.  Then, honestly,
11 you wouldn't be seeing us, because the parties would be able to
12 work that out.
13       You could put it on the suspense calendar for five
14 years, but it may be that at the end of the Canadian action
15 there is again not a justiciable controversy, because the
16 parties have come to their own conclusion.
17       Suppose the converse were true.  Suppose Madam Justice
18 Pritchard said the judgment is imposed a hundred percent on
19 Ingersoll-Rand but the fault happened July 2012, a month before
20 the fire, because Dresser-Rand somehow made a mistake in the
21 final servicing.
22       Then we would have justiciable claim for indemnity and
23 it may turn out that it is Dresser-Rand who owes that.  If they
24 wouldn't agree to pay, then yes, we do agree that New York is
25 the right forum under the EPA, because we have a concrete

Easrdrec                                                                   Page 22

1 dispute at that point for an entitled indemnifiable loss.
2        THE COURT: Let me ask this.  I want to make sure I'm
3 not getting this wrong.  I am looking at the plaintiff's
4 response, and it is on the third page.  There is some
5 discussion about the benefits of having both parties in the
6 Canadian case.  I think it has been clarified for me today that
7 regardless of how this particular dispute is resolved,
8 Ingersoll-Rand is in that Canadian action any way you look at
9 it.  Correct?
10       MS. NEUNER: Absolutely, your Honor, and the cross-
11 claim will be in that Canadian action.
12       THE COURT: To the extent the concern would be that
13 both parties need to be up in Canada to figure out how to
14 resolve this perhaps in a way short of five years of
15 litigation, you are talking about you're both in anyway.
16       MS. NEUNER: Yes, your Honor.
17       THE COURT: I understand that.  Is there anything
18 else?  Then I would like to hear back from Mr. Rosenberg.
19       MS. NEUNER: Your Honor, the only other point that we
20 have that went unaddressed in the opposition letter was the
21 very real argument that we would put into our motion to dismiss
22 that of the amount of loss that Yara Belle seeks, 13 million of
23 it is for property damage for the facility, 19 million, which
24 is roughly two-thirds, is for business interruption losses.
25       You will note in the EPA at 8.1(g) that the parties

Easrdrec                                                                   Page 23

1 specifically contracted that the indemnity would not apply to
2 special damages.  New York law is very clear that business
3 interruption losses are special damages or consequential
4 damages or lost profits.  Canadian law literally defines
5 business interruption losses as lost profits.
6        We have a dispute about 19 million that isn't even
7 within definition of an indemnifiable loss.  I say that to you
8 because it is part of our motion to dismiss, and I want to give
9 Mr. Rosenberg a fair chance to respond.
10       THE COURT: I appreciate that.
11       MS. NEUNER: Thank you.
12       THE COURT: Mr. Rosenberg, anything you would like to
13 respond to Ms. Neuner?
14       MR. ROSENBERG: Yes, your Honor.  I'll take them kind
15 of in reverse order.
16       Starting with the business interruption loss, that is
17 a prime example of something that is decided in the New York
18 court, not the Canadian court, as far as the indemnity
19 obligations of each other.  That is something that whether or
20 not New York law applies, the court and the parties determined
21 we are going to let New York law apply, we are going to let
22 that dispute be decided here.  It gives a basis for why we have
23 this case here today.
24       The resolution issue.  The Court brought up
25 resolution.  I actually think there is nothing we can do about

Easrdrec                                                                   Page 24

1 it, but the issue of resolution up in Canada is going to be
2 extremely difficult under the circumstances, because I think
3 both parties believe they are the smaller payor and the other
4 party is the primary payor.  That is going to make that very
5 difficult when we are talking about so much money.
6        THE COURT: Your argument is not really an argument
7 that I can use, but what you are saying is that as a practical
8 matter, if you were both aligned inasmuch as one of you is
9 covering the costs of the other, you would have perhaps more of
10 an interest to work with each other to see how it can be
11 resolved.
12       MR. ROSENBERG: Exactly.  This is going to be very
13 difficult.  I can imagine the two the gentlemen getting in a
14 room saying I'm the minor party, you're the minor party, etc.
15 It's difficult.
16       Also, why is there a justiciable controversy here?  We
17 all can surmise or speculate as to what the Canadian court can
18 do.  But the Canadian court can also in its determinations
19 leave us in a position of having immense interpretation by this
20 Court to determine the indemnity obligation.
21       Yes, they may say Ingersoll-Rand is entirely at fault,
22 they may say Dresser-Rand is entirely at fault, but they could
23 do a host of other things.  That is why it is this Court that
24 interprets that decision to determine the indemnity obligations
25 and makes this a justiciable controversy.

Easrdrec                                                         Page 25

1     THE COURT: I understand.  But I think Ms. Neuner's
2  point, and I am neither agreeing nor disagreeing with it, is
3  yes, someday we will have to do that if we can't come to an
4  agreement, but for now it is too soon, is what she is saying.
5     MR. ROSENBERG: On the indemnity issue, even though in
6  our letter we have cited numerous cases, including the
7  Associated Indemnity case and the Rosen v. Mega Bloks case,
8  which indicates that contractual indemnity obligations is
9  really not a major distinction from the insurance indemnity
10 obligations, what we are saying is yes, separate the indemnity
11 from the defense.
12    The indemnity this case needs to maintain jurisdiction
13 over and interpret what happens up there whenever it happens.
14 The defense obligation is distinguishable.  The defense
15 obligation is in fact a justiciable matter that needs to be
16 determined now based on, as that case law indicates, the
17 allegations in the complaint right now.  It could not be in,
18 our opinion, clearer.
19    Ms. Neuner indicated the various causes of action.
20 Yes, the Yara Belle complaint is very succinct in that regard.
21 There are three causes of action.  The second and third cause
22 of action are clearly claims limited to the conduct of Dresser-
23 Rand.  We don't believe those claims have merit.
24    But also that is going to get us into an interpret-
25 ation of the arising out of language in that product liability

Easrdrec                                                         Page 26

1  definition that is set forth in the EPA.  It is our contention
2  that that still arises out of Ingersoll-Rand's efforts of
3  putting it into the stream of commerce.
4     THE COURT: I'm just asking you to slow down a little
5  bit, sir, for the reporter.
6     MR. ROSENBERG: I am a New Yorker by heart.
7     Those second and third causes of action do arise out
8  of Ingersoll-Rand's efforts of putting them in the stream of
9  the commerce.  We have a disagreement over the merits of those
10 claims, and I understand that's going to be decided elsewhere.
11    8.1(b), the indemnity due from Dresser-Rand to
12 Ingersoll-Rand, Ms. Neuner and I will have discussions about
13 the notice issue.  That is not before this Court.  That will
14 get resolved.  That is not a problem.  But I don't think that
15 is pertinent to what this Court needs to decide.
16    This Court needs to look at the other provisions of
17 8.1 that create the indemnity obligation.  I believe what this
18 Court needs to do is maintain jurisdiction over that, to
19 determine what happens in Canada.  The defense obligation is
20 ripe, and this Court needs to determine the defense obligation
21 based on the allegations in the complaint at this time.
22    THE COURT: Thank you.
23    Ms. Neuner, one quick follow-up question based on what
24 Mr. Rosenberg was saying.  If this were not the actual
25 situation where there is a contract between the parties, if

Easrdrec                                                         Page 27

1  this were an insurer-insured situation, would you agree that
2  the duty to defend could be determined simply based on the
3  pleadings in the Canadian court?
4     MS. NEUNER: Yes, your Honor, because that is New York
5  law, yes.
6     THE COURT: It seems to me that one difference between
7  the parties is that you see Associated Indemnity Corporation
8  and things of that type and understand it and limit it to the
9  insurance context and not to this contractual context.
10    MS. NEUNER: Absolutely, your Honor, because that is
11 the law.
12    THE COURT: You both have told me what you believe the
13 law is.  I understand.  As much as I thought that we could
14 possibly resolve this short of a motion, I really didn't think
15 that was going to happen.  It doesn't seem that that is the
16 case.  While I appreciate very much the nuances that Mr.
17 Rosenberg has announced today, there are still some things that
18 do need to get resolved.  So, a motion is in the offing.
19    Let me look at the calendar.  I am ware that there are
20 holidays coming up.  My hope is to try and wreck as few of them
21 as possible for people.  Ms. Neuner, would you be able to
22 submit something on the 1st of December?
23    MS. NEUNER: Yes, your Honor.
24    THE COURT: Mr. Rosenberg, would you be able to submit
25 a response on the 5th of January or the 7th of January?

Easrdrec                                                         Page 28

1     MR. ROSENBERG: That's fine, your Honor.
2     THE COURT: 7th of January, all right.  Then, Ms.
3  Neuner, that would make your response due the 21st of January,
4  your reply.
5     MS. NEUNER: Very good, your Honor.
6     THE COURT: I will ask the parties a couple of things.
7  Number one, please get a copy of today's transcript.  I don't
8  need it tomorrow, but I would like to see it in advance of the
9  parties' briefing.  There were a lot of very interesting points
10 made today, and I wish to study up on them before I actually
11 get the papers.
12    Secondly, I don't think on these facts that we need
13 extensions of the page limits.  I think you can get your
14 arguments in as need be.
15    Number three, and this is just perhaps too much to
16 ask, but I'm going to anyway.  If there is out there a more
17 legible copy of the purchase agreement, I would love to see it.
18 I have been able to get things downloaded from ECF, but at this
19 point it's been scanned and it is just not as good.  If it
20 exists, I would like to have it, but it is not urgent.
21    MS. NEUNER: OK.  We can work together.
22    MR. ROSENBERG: We can stipulate to the key language
23 of 8, 9.
24    MS. NEUNER: We will work together to make sure you
25 get one delivered directly to chambers that is a good and

Easrdrec                                                                     Page 29

1  legible copy.
2        THE COURT: Thank you. I appreciate that indulgence.
3        I believe that is all of the issues on my list. Hold
4  on one second, please.
5        I will tell you, although this is a little bit of a
6  formality, I believe our calendar lists an initial pretrial
7  conference for the 19th of November. We will adjourn that.
8  What I will do is issue a scheduling order in the next day or
9  so that has the dates we have just been talking about and also
10 adjourns the pretrial conference for the 19th. Obviously, it
11 is less important now that we have had this conference.
12       Mr. Rosenberg, is there anything else that you want to
13 call to my attention?
14       MR. ROSENBERG: No, your Honor. Thank you.
15       THE COURT: Ms. Cmielewski, you are allowed to speak
16 as well.
17       MS. CMIELEWSKI: I have nothing to add. Mr. Rosenberg
18 here did a wonderful job.
19       THE COURT: Ms. Neuner, same thing, anything else?
20       MS. NEUNER: No, your Honor. Thank you for your time.
21       THE COURT: Mr. Leibowitz, anything from you, sir?
22       MR. LEIBOWITZ: Nothing, thank you.
23       THE COURT: I feel if people are going to sit at
24 counsel table, they ought to have an opportunity to speak. Mr.
25 Grenell?

Easrdrec                                                                     Page 30

1        MR. GRENELL: Nothing. Thank you, your Honor.
2        THE COURT: Thank you all for bringing these issues to
3  light today and thank you for the attention that you have been
4  paying to the documents and the law in this case. I'm serious
5  when I say these are very interesting issues.
6        (Adjourned)

## $

**$32 (2)**
8:15;21:7

## A

**ability (1)**
20:9
**able (5)**
16:9;21:11;27:21,24;
28:18
**absolutely (7)**
5:7;9:7;12:19;13:6;
18:25;22:10;27:10
**acknowledges (1)**
6:25
**acquired (1)**
17:19
**acquisition (1)**
14:4
**action (18)**
3:22;4:23;11:19,21;
12:5;14:25;18:5,6;
20:3,7;21:6,14;22:8,
11;25:19,21,22;26:7
**actions (2)**
15:11,13
**acts (5)**
15:17,25;16:2,17;
18:14
**actual (1)**
26:24
**actually (6)**
12:7;16:23;17:20;
19:24;23:25;28:10
**add (2)**
20:10;29:17
**adjourn (1)**
29:7
**Adjourned (1)**
30:6
**adjourns (1)**
29:10
**admission (1)**
12:17
**advance (1)**
28:8
**afternoon (4)**
2:2,5,6,11
**again (1)**
21:15
**against (6)**
3:12;10:19;15:1,7;
18:5,7
**ago (1)**
15:21
**agree (6)**
7:3;9:12;12:19;
21:24,24;27:1
**agreeing (1)**
25:2

**agreement (17)**
2:25;3:6;4:4,21;7:13,
21;8:24;9:1,9,14,22,22;
10:4,8;13:25;25:4;
28:17
**Alberta (3)**
9:25;10:2,6
**aligned (1)**
24:8
**allegations (10)**
4:11,15,19;5:1,3,8,
19;8:2;25:17;26:21
**allege (1)**
5:4
**alleged (3)**
14:13;15:11,13
**allowed (1)**
29:15
**allowing (1)**
7:18
**although (1)**
29:5
**ambiguous (1)**
15:16
**amount (2)**
21:7;22:22
**analogous (2)**
4:12;5:8
**analysis (2)**
7:18;12:10
**analyzing (1)**
3:20
**announced (1)**
27:17
**apologize (1)**
3:25
**applies (2)**
19:5;23:20
**apply (4)**
3:10,16;23:1,21
**appoint (1)**
14:16
**apportionment (1)**
12:23
**appreciate (4)**
9:17;23:10;27:16;
29:2
**approached (1)**
12:14
**appropriate (1)**
20:1
**area (4)**
2:14;6:2;11:10;
12:18
**arguably (1)**
5:4
**argument (8)**
5:17;9:24;11:8;16:6,
11;22:21;24:6,6
**arguments (5)**
8:23;9:12,17;11:7;
28:14
**arise (1)**

26:7
**arises (1)**
26:2
**arising (1)**
25:25
**articulation (1)**
10:13
**assert (2)**
10:19;14:15
**asserted (2)**
4:19;15:7
**assessed (1)**
8:10
**Associated (3)**
11:25;25:7;27:7
**ation (1)**
25:25
**attention (3)**
3:3;29:13;30:3
**attorney's (1)**
8:7
**August (1)**
15:6
**avoid (1)**
5:14
**aware (1)**
6:15

## B

**back (7)**
7:1,13,22;10:22;
17:7;19:23;22:18
**barest (1)**
18:17
**Bartlett (1)**
2:7
**based (12)**
2:21;4:11,15,18;
6:10;7:2;8:2,3;25:16;
26:21,23;27:2
**basically (3)**
6:18;8:7;20:9
**basis (5)**
11:21;12:25;20:3;
21:9;23:22
**beating (1)**
19:10
**becomes (1)**
10:8
**behind (1)**
5:1
**believes (1)**
14:13
**Belle (12)**
3:12;4:13,19;6:19;
8:3,14;10:14;13:13,16;
14:25;22:22;25:20
**benefits (1)**
22:5
**bit (6)**
9:2;10:10,16;11:9;
26:5;29:5

**Bloks (1)**
25:7
**borne (1)**
18:13
**both (14)**
3:20,23;8:19;11:11;
12:22;15:8,16;19:18;
22:5,13,15;24:3,8;
27:12
**breach (1)**
15:3
**briefing (1)**
28:9
**Briefly (1)**
4:3
**bring (2)**
4:20;16:24
**bringing (1)**
30:2
**broad (2)**
9:18;16:23
**broader (2)**
13:8;18:21
**brought (1)**
23:24
**business (5)**
17:10;22:24;23:2,5,
16
**buyers (1)**
17:7

## C

**calendar (3)**
21:13;27:19;29:6
**call (6)**
3:3;6:21,22;10:12;
13:10;29:13
**called (1)**
2:1
**can (20)**
4:7;6:14;7:21,22;
12:5;14:13;19:16,18,
21;20:18;23:25;24:7,
10,13,17,17,18;28:13,
21,22
**Canada (10)**
7:2,7;10:7;12:18;
15:3,4;18:3;22:13;
24:1;26:19
**Canada's (1)**
15:2
**Canadian (30)**
4:23;5:3,15;6:3,11,
13,17,17,22;8:4;9:24;
10:11;11:21;14:16,21;
18:3,6;19:13;20:3,6;
21:6,14;22:6,8,11;23:4,
18;24:17,18;27:3
**candor (2)**
9:23;12:14
**capitalized (1)**
20:4

**capture (1)**
16:23
**careful (1)**
5:16
**Carolina (3)**
2:9,12,16
**Case (28)**
2:1,20;6:3;7:19;9:3,
19,25;10:9,11;11:20,
24,24;12:1,9,10;18:10,
15;20:1,14;21:3;22:6;
23:23;25:7,7,12,16;
27:16;30:4
**cases (1)**
25:6
**cause (1)**
25:21
**causes (4)**
14:25;25:19,21;26:7
**central (1)**
19:7
**certain (2)**
10:2;13:6
**challenge (1)**
6:4
**challenged (1)**
3:10
**chambers (1)**
28:25
**chance (2)**
2:19;23:9
**change (1)**
10:6
**characterized (1)**
14:10
**checked (1)**
12:7
**choice (1)**
7:21
**Circuit (1)**
11:24
**circumstances (1)**
24:2
**cited (2)**
12:7;25:6
**claim (9)**
8:15,17;12:6;13:15;
15:7;16:4,19;21:22;
22:11
**claims (6)**
5:6;13:13,20;25:22,
23;26:10
**clarification (1)**
8:13
**clarified (1)**
22:6
**clear (2)**
14:7;23:2
**clearer (1)**
25:18
**clearly (5)**
4:14;6:15;8:16,21;
25:22

**clients (1)**
17:9
**close (1)**
9:19
**closing (6)**
16:1,2,7,24;17:11;
18:14
**Cmielewski (3)**
2:4;29:15,17
**co-counsel (1)**
10:25
**coming (5)**
2:17;5:13;18:11;
20:22;27:20
**comment (1)**
7:23
**commerce (2)**
26:3,9
**companies (1)**
3:13
**company (1)**
14:2
**compensates (1)**
7:1
**complaint (17)**
2:24;4:12,12;8:3,14,
21,21;9:4;13:12,13,16;
14:25;15:7,15;25:17,
20;26:21
**complicated (1)**
3:6
**components (2)**
15:12,13
**concern (2)**
5:13;22:12
**concerned (1)**
20:9
**conclusion (2)**
19:21;21:16
**concrete (1)**
21:25
**conduct (2)**
17:10;25:22
**conference (7)**
2:19,21;12:13;20:21;
29:7,10,11
**connection (1)**
3:9
**consequential (1)**
23:3
**consider (1)**
10:5
**constant (1)**
6:16
**contact (1)**
6:16
**contemplating (1)**
19:12
**contention (1)**
26:1
**context (3)**
13:24;27:9,9
**contract (6)**
6:7,9;12:4,9;15:3;
26:25
**contracted (1)**
23:1
**contractual (5)**
13:5,23;18:18;25:8;
27:9
**contrast (1)**
13:23
**control (2)**
14:16,20
**controversy (5)**
11:20;21:3,15;24:16,
25
**converse (1)**
21:17
**copy (3)**
28:7,17;29:1
**corners (7)**
13:10,11,12,14,16;
19:15,15
**Corporation (1)**
27:7
**correctly (1)**
14:10
**costs (3)**
8:10;13:22;24:9
**counsel (10)**
2:4,10;4:20,23;6:16;
8:20;9:24;14:16;18:3;
29:24
**couple (1)**
28:6
**COURT (82)**
2:5,11,17;3:16,24;
4:1,16,24,25;5:11,15,
23,25;6:1,9,11,12,13,
15,17,18;7:1,2,8,24;
8:4,6,12,19;9:1,8,16,
23;10:7,10,14,22;11:3,
15,23;16:6,13;17:13;
19:9;20:8,13,25;21:4;
22:2,12,17;23:10,12,
18,18,20,24;24:6,17,
18,20,23;25:1;26:4,13,
15,16,18,20,22;27:3,6,
12,24;28:2,6;29:2,15,
19,21,23;30:2
**courts (2)**
3:15;19:13
**Court's (1)**
7:3
**covenants (1)**
14:5
**coverage (4)**
12:1,3;13:6,15
**covering (1)**
24:9
**create (2)**
4:14;26:17
**creates (2)**
4:13,14
**creating (1)**
5:16
**cross- (1)**
22:10
**cross-claim (4)**
6:21,23;10:19;18:5
**cross-claims (2)**
18:2,7

**D**

**damage (1)**
22:23
**damages (6)**
6:19;8:9;10:13;23:2,
3,4
**date (2)**
8:8;17:11
**dates (1)**
29:9
**David (1)**
2:4
**Davidson (1)**
2:16
**day (2)**
18:2;29:8
**dead (1)**
19:10
**December (1)**
27:22
**decide (5)**
8:25;9:10;11:11,13;
26:15
**decided (7)**
3:14;6:7;13:7;18:23;
23:17,22;26:10
**deciding (2)**
18:24;20:17
**decision (3)**
3:15;18:8;24:24
**decision-making (1)**
14:17
**declaratory (2)**
3:22;19:24
**defend (16)**
4:5;5:20,22;7:12,14,
18,19;8:1,2,7;13:8,17;
14:9;18:21;19:20;27:2
**defending (1)**
8:10
**defense (34)**
2:22;3:18,23;4:1,3,8,
8,9,11,13,15,16,18,23,
24;5:6,10;7:5;8:16;
11:13;12:24;13:3,21;
14:8,15;18:4,20,23;
19:3;25:11,14,14;
26:19,20
**defenses (3)**
10:2,4,17
**defines (1)**
23:4
**definition (5)**
15:24;16:5;18:23:7;
26:1
**delivered (1)**
28:25
**demand (1)**
10:13
**denied (1)**
10:7
**dependent (1)**
10:20
**determination (11)**
4:1;6:24;12:3,3,5,25;
14:19,23;18:12;19:14,
15
**determinations (2)**
6:4;24:18
**determine (11)**
4:16;5:1;6:18,21,23;
7:3;20:3;24:20,24;
26:19,20
**determined (8)**
3:14;8:18,22;11:21;
18:9;23:20;25:16;27:2
**determiner (1)**
13:15
**determines (1)**
6:9
**determining (1)**
5:19
**developed (1)**
20:3
**difference (2)**
7:9;27:6
**different (8)**
2:12;6:22;8:1,20;
10:16;11:6;12:2,10
**difficult (4)**
24:2,5,13,15
**directly (1)**
28:25
**disagreeing (1)**
25:2
**disagreement (1)**
26:9
**discussion (2)**
14:8;22:5
**discussions (2)**
9:4;26:12
**dismiss (6)**
10:6;11:19;20:1;
21:2;22:21;23:8
**dispute (7)**
9:5;18:18;19:7;22:1,
7;23:6,22
**disputes (1)**
3:14
**distance (1)**
17:13
**distinction (4)**
7:25;13:4;15:23;
25:9
**distinguishable (1)**
25:14
**distribution (1)**
14:3
**diversified (1)**
14:1
**docket (4)**
20:6,10,10,15
**document (2)**
3:7;15:20
**documents (2)**
10:12;30:4
**Donnelly (2)**
2:10,15
**down (5)**
2:16;14:21;17:21;
19:13;26:4
**downloaded (1)**
28:18
**Dresser- (4)**
3:7,25;21:6;25:22
**Dresser-Rand (32)**
3:13,14,25;6:20;
12:16,20;14:11;15:1,2,
3,4,8,12,17;16:3,8,9,14,
24;17:2,11,19,20,23;
18:5,7,13;19:8;21:20,
23;24:22;26:11
**Dresser-Rand's (2)**
15:12;16:17
**due (2)**
26:11;28:3
**duty (32)**
4:6;5:20,22;7:12,17,
18,19,20,25;8:1,1,3,7,9,
22,25;13:5,7,8,17;15:9,
11,13;16:7,8,8,10;17:3;
18:21,21;19:20;27:2

**E**

**early (1)**
15:19
**ECF (1)**
28:18
**effectively (1)**
7:19
**effort (1)**
9:5
**efforts (2)**
26:2,8
**eight (3)**
13:11;16:15;19:15
**either (5)**
4:7;7:21;10:5,15;
13:10
**elected (1)**
4:20
**election (1)**
14:14
**else (4)**
9:13;22:18;29:12,19
**elsewhere (1)**
26:10
**employ (1)**
4:20

DRESSER-RAND COMPANY, v.
INGERSOLL RAND COMPANY,                                                                                   October 28, 2014

**encompasses (1)**
    8:7
**end (4)**
    14:20;18:2;21:6,14
**engaged (1)**
    14:2
**enough (4)**
    8:6;9:17;20:2,16
**entered (5)**
    3:7;6:6;9:21,22;10:4
**entire (1)**
    11:19
**entirely (2)**
    24:21,22
**entities (3)**
    2:8;15:8,16
**entitled (3)**
    19:6,8;22:1
**entity (1)**
    15:4
**EPA (7)**
    15:20;16:21;17:22;
    20:4;21:25;22:25;26:1
**equity (3)**
    3:6;4:4;13:25
**essentially (1)**
    15:9
**etc (1)**
    24:14
**even (3)**
    16:18;23:6;25:5
**event (3)**
    11:17;19:17,22
**exactly (2)**
    10:1;24:12
**example (1)**
    23:17
**exception (2)**
    15:24,25
**exchanging (1)**
    10:12
**excluded (1)**
    16:5
**exists (2)**
    8:5;28:20
**expander (3)**
    15:5,14;16:16
**expander's (1)**
    15:11
**expect (1)**
    10:21
**experience (1)**
    11:10
**explain (1)**
    7:10
**extensions (1)**
    28:13
**extent (2)**
    16:14;22:12
**extremely (1)**
    24:2

                **F**

**facility (1)**
    22:23
**fact (8)**
    8:5;13:14;14:7,23;
    18:3,6,24;25:15
**facts (5)**
    7:11,16,20;20:2;
    28:12
**Failla (1)**
    2:6
**failure (2)**
    15:5;16:16
**Fair (3)**
    8:6;9:17;23:9
**Fairchild (1)**
    11:25
**fairly (1)**
    15:16
**far (2)**
    21:1;23:18
**fault (5)**
    12:23;21:9,19;24:21,
    22
**favor (1)**
    19:25
**feel (1)**
    29:23
**fees (5)**
    4:10,22,23;8:7;19:3
**few (2)**
    10:23;27:20
**fication (2)**
    14:6;18:3
**fight (1)**
    14:17
**figure (1)**
    22:13
**filed (6)**
    3:11;4:13;9:5;10:5,
    17,19
**final (3)**
    12:18,24;21:21
**find (3)**
    9:16;11:16;19:20
**finding (3)**
    7:19;8:4;21:8
**fine (1)**
    28:1
**fire (3)**
    6:19;16:17;21:20
**firm (1)**
    15:21
**first (12)**
    2:21;5:12;7:14;8:18;
    13:3;14:1,14;17:3,7,19,
    19,22
**fit (1)**
    13:16
**fits (1)**
    21:10

**five (2)**
    21:13;22:14
**flowing (1)**
    3:9
**Following (3)**
    4:25;15:25;16:2
**follow-up (1)**
    26:23
**formal (1)**
    10:14
**formality (1)**
    29:6
**formed (1)**
    16:15
**forth (1)**
    26:1
**forthcoming (2)**
    17:25;20:22
**forum (1)**
    21:25
**forward (4)**
    9:11;13:21;14:15;
    18:10
**found (3)**
    7:20;12:20,21
**four (4)**
    13:10,12,13;19:15
**frequency (1)**
    12:7
**friends (1)**
    20:18
**front (2)**
    14:19;20:17
**full (1)**
    21:7

                **G**

**gave (1)**
    17:7
**gentlemen (1)**
    24:13
**genuinely (1)**
    20:13
**gets (5)**
    6:2,3;12:7;14:21;
    17:5
**gives (2)**
    4:6;23:22
**goes (1)**
    20:10
**Good (11)**
    2:2,5,6,11;11:3;
    12:13;16:15;17:13;
    28:5,19,25
**grateful (2)**
    9:10;12:13
**great (1)**
    17:17
**greater (1)**
    2:25
**Grenell (3)**
    2:4;29:25;30:1

**grew (1)**
    2:12
**group (2)**
    13:25;17:11
**guess (3)**
    9:10,16;17:14

                **H**

**happen (1)**
    27:15
**happened (3)**
    6:12;7:2;21:19
**happens (7)**
    6:10,17;7:7;10:20;
    25:13,13;26:19
**happy (1)**
    20:15
**hard (1)**
    2:24
**headquarters (1)**
    2:13
**hear (3)**
    3:3;9:1;22:18
**heard (1)**
    9:25
**hearing (1)**
    10:24
**heart (1)**
    26:6
**heavy (1)**
    14:2
**Hold (1)**
    29:3
**holidays (1)**
    27:20
**honestly (1)**
    21:10
**Honor (29)**
    2:2;3:5;5:7,21;7:23;
    11:1,14,18;12:11;15:1,
    24;16:12,25;17:17;
    19:4,23;21:2;22:10,16,
    19;23:14;27:4,10,23;
    28:1,5;29:14,20;30:1
**hook (1)**
    14:23
**hope (1)**
    27:20
**horse (1)**
    19:10
**host (1)**
    24:23
**hundred (2)**
    6:2;21:18

                **I**

**idea (1)**
    7:12
**ii (1)**
    17:11
**imagine (1)**

    24:13
**immense (1)**
    24:19
**impermissibly (1)**
    5:16
**implicates (1)**
    5:5
**important (3)**
    13:4;15:22;29:11
**imposed (4)**
    11:22;12:25;21:6,18
**inappropriately (1)**
    5:16
**inasmuch (2)**
    2:19;24:8
**includes (2)**
    8:9;17:9
**including (1)**
    25:6
**inconsistent (3)**
    5:17;6:4;18:11
**incurred (3)**
    4:22;19:3;20:5
**indemni- (2)**
    14:5;18:2
**indemnifiable (8)**
    5:5;11:16;12:4;
    16:19;19:17;21:10;
    22:1;23:7
**indemnification (8)**
    8:4;12:17;17:1,15,
    21;18:19;19:6,8
**indemnified (2)**
    16:4;19:5
**indemnify (12)**
    7:17,20;8:1,3,9,22,
    25;13:5,9,24;17:4;
    18:22
**indemnifying (1)**
    4:7
**indemnities (1)**
    19:1
**indemnity (42)**
    3:18,23;4:2,9,14;5:6,
    9,22,23;6:10,24;7:3,4,
    6;8:15;9:20,21;11:25;
    12:6;14:12,24;16:10,
    23;17:7,8,18;18:15,24;
    21:22;23:1,18;24:20,
    24;25:5,7,8,9,10,12;
    26:11,17;27:7
**indicate (1)**
    10:10
**indicated (1)**
    25:19
**indicates (3)**
    8:14;25:8,16
**individual (1)**
    15:17
**indulgence (1)**
    29:2
**industrial (1)**
    14:2

**information (2)**
17:24;20:16
**Ingersoll- (3)**
3:12;11:1;18:3
**Ingersoll-Rand (34)**
2:8,10;3:8,13;4:7,19;
5:9;6:20;7:13;10:20;
12:21;14:1,12,12,19,
23;15:8,10,18;16:1,3,6;
17:2,5,6,8,9,15;18:15;
21:9,19;22:8;24:21;
26:12
**Ingersoll-Rand's (6)**
2:13;15:10;16:22;
18:7;26:2,8
**in-house (2)**
2:4,10
**initial (2)**
2:18;29:6
**initiated (1)**
3:12
**insurance (12)**
4:12;5:8;12:1,4,9;
13:5,6,8,18;14:6;25:9;
27:9
**insurer (3)**
13:17,19,21
**insurer-insured (1)**
27:1
**interest (2)**
3:8;24:10
**interested (1)**
20:13
**interesting (2)**
28:9;30:5
**interpret (1)**
25:13
**interpret- (1)**
25:24
**interpretation (1)**
24:19
**interprets (1)**
24:24
**interruption (4)**
22:24;23:3,5,16
**into (11)**
3:7;6:2,3,6;9:22;
10:4;15:20;20:10;
22:21;25:24;26:3
**intuitions (1)**
12:12
**invoices (1)**
18:20
**involved (1)**
20:14
**involving (1)**
12:1
**IPO (1)**
17:20
**irrelevant (1)**
10:8
**issue (16)**
4:11,24;8:16,16;

9:20,21,24;11:11,13;
20:11,17;23:24;24:1;
25:5;26:13;29:8
**issues (12)**
2:20;3:17,20,21;6:5,
21,23;9:10;20:14;29:3;
30:2,5

**J**

**January (4)**
27:25,25;28:2,3
**Jersey (1)**
2:13
**job (2)**
16:15;29:18
**Judge (2)**
2:6;13:11
**judgment (7)**
3:22;8:8;12:18,24;
18:20;19:25;21:18
**judgments (1)**
5:17
**July (1)**
21:19
**jurisdiction (2)**
25:12;26:18
**jury (1)**
5:2
**Justice (4)**
18:8,11;21:8,17
**justiciable (7)**
11:20;21:3,15,22;
24:16,25;25:15

**K**

**keep (1)**
11:24
**key (2)**
18:17;28:22
**kind (1)**
23:14
**known (1)**
11:24

**L**

**lack (2)**
11:10;21:3
**language (3)**
19:4;25:25;28:22
**large (1)**
8:17
**last (1)**
7:23
**later (1)**
8:8
**law (11)**
10:3;13:7;23:2,4,20,
21;25:16;27:5,11,13;
30:4
**lawsuit (3)**

3:11;5:3;17:5
**leave (1)**
24:19
**left (1)**
2:4
**legal (5)**
3:20;4:9,22,22;13:4
**legible (2)**
28:17;29:1
**Leibowitz (3)**
2:8;29:21,22
**less (1)**
29:11
**letter (3)**
11:15;22:20;25:6
**liability (7)**
13:18;14:9;15:19,22,
23;21:6;25:25
**liable (4)**
6:18;12:21,22;14:20
**life (1)**
2:12
**light (3)**
11:4;19:17;30:3
**limit (1)**
27:8
**limited (2)**
5:21;25:22
**limits (1)**
28:13
**list (1)**
29:3
**lists (1)**
29:6
**literally (3)**
12:24;16:4;23:4
**litigation (4)**
3:12;9:6;14:21;
22:15
**little (8)**
6:22;8:20;9:2;10:10,
16;11:9;26:4;29:5
**longer (1)**
16:7
**look (9)**
5:3;14:24;19:16,18,
20,21;22:8;26:16;
27:19
**looked (1)**
9:11
**looking (4)**
3:19;8:24;9:2;22:3
**loss (15)**
11:22;12:25;14:9,13,
20;15:22,23;18:12,19;
20:4;21:10;22:1,22;
23:7,16
**losses (4)**
17:9;22:24;23:3,5
**lost (2)**
23:4,5
**lot (7)**
3:19,20;6:4;8:22,23;

13:6;28:9
**love (1)**
28:17
**Lynn (1)**
2:6

**M**

**machinery (2)**
14:2;16:3
**Madam (4)**
18:7,11;21:7,17
**maintain (2)**
25:12;26:18
**major (1)**
25:9
**makes (2)**
21:8;24:25
**making (5)**
11:6;12:13;14:11;
16:4,11
**manufacturing (1)**
14:2
**many (1)**
9:9
**Margaret (1)**
2:3
**matter (3)**
11:12;24:8;25:15
**may (9)**
4:13;11:3,5,6,10;
21:14,23;24:21,22
**maybe (1)**
9:3
**means (1)**
16:1
**Mega (1)**
25:7
**member (1)**
17:10
**merger (3)**
14:4;15:20;18:14
**merit (1)**
25:23
**merits (1)**
26:9
**might (4)**
2:18;5:2;10:22;
14:20
**million (5)**
8:15;21:7;22:22,23;
23:6
**mind (2)**
11:24;13:20
**mine (1)**
17:14
**minor (2)**
24:14,14
**minutes (1)**
10:23
**misconception (1)**
16:22
**misper- (1)**

16:14
**misperceiving (1)**
7:10
**mistake (1)**
21:20
**modified (1)**
11:5
**money (1)**
24:5
**month (1)**
21:19
**Montvale (1)**
2:14
**more (5)**
7:17;9:2;13:7;24:9;
28:16
**motion (9)**
10:5;11:19;19:12;
20:22;21:2;22:21;23:8;
27:14,18
**moved (1)**
2:16
**moving (1)**
6:14
**much (6)**
6:12;10:22;24:5;
27:13,16;28:15
**must (2)**
5:19;19:20

**N**

**named (1)**
17:5
**necessarily (1)**
8:8
**need (9)**
5:18;7:6;9:10;13:2;
22:13;27:18;28:8,12,
14
**needed (1)**
8:12
**needs (7)**
8:17;25:12,15;26:15,
16,18,20
**negligence (2)**
15:2;16:24
**neither (2)**
11:12;25:2
**NEUNER (35)**
2:6,7;5:12;10:24;
11:1,14,18;12:11;
16:12,14;17:17;19:9,
23;20:12,24;21:2,5;
22:10,16,19;23:11,13;
25:19;26:12,23;27:4,
10,21,23;28:3,5,21,24;
29:19,20
**Neuner's (2)**
8:23;25:1
**New (13)**
2:13;3:15;6:8,9;13:7,
10;21:24;23:2,17,20,

| | | | | |
|---|---|---|---|---|
| 21;26:6;27:4 | **Once (1)** | 3:1;28:9 | **positions (1)** | 12:1 |
| **next (2)** | 6:24 | **partner (1)** | 3:2 | **protection (2)** |
| 18:6;29:8 | **one (15)** | 2:8 | **possibility (2)** | 13:19;17:6 |
| **Noah (1)** | 3:9,18,18;6:25; | **party (6)** | 5:9,14 | **provides (1)** |
| 2:8 | 10:15;11:24;12:20; | 4:7;6:25;19:5;24:4, | **possible (2)** | 4:4 |
| **nonetheless (1)** | 15:1;16:20;24:8;26:23; | 14,14 | 13:15;27:21 | **provision (2)** |
| 2:23 | 27:6;28:7,25;29:4 | **pay (4)** | **possibly (1)** | 16:20;19:1 |
| **nonindemnifiable (1)** | **ongoing (2)** | 4:21;7:22;13:21; | 27:14 | **provisions (1)** |
| 19:22 | 12:6;17:21 | 21:24 | **post- (1)** | 26:16 |
| **nonjusticiable (1)** | **only (5)** | **paying (1)** | 16:23 | **pull (1)** |
| 20:2 | 5:21;8:5;19:21;20:8; | 30:4 | **post-closing (3)** | 19:23 |
| **nor (1)** | 22:19 | **payor (2)** | 16:9,17;17:5 | **purchase (4)** |
| 25:2 | **opinion (1)** | 24:3,4 | **practical (4)** | 3:6;4:4;13:25;28:17 |
| **normal (1)** | 25:18 | **peace (1)** | 3:21;6:5;7:9;24:7 | **purposes (1)** |
| 14:4 | **opportunity (5)** | 13:20 | **preclosing (1)** | 5:19 |
| **North (4)** | 4:5,5,6;14:8;29:24 | **people (2)** | 17:4 | **put (4)** |
| 2:9,11,16;20:19 | **opposing (1)** | 27:21;29:23 | **predecessor (1)** | 13:13;15:21;21:13; |
| **northern (2)** | 8:20 | **percent (3)** | 3:8 | 22:21 |
| 2:12;12:18 | **opposition (1)** | 6:2;21:8,18 | **preliminary (1)** | **putting (3)** |
| **note (1)** | 22:20 | **perhaps (3)** | 11:7 | 18:4;26:3,8 |
| 22:25 | **options (1)** | 22:14;24:9;28:15 | **premature (4)** | |
| **notice (3)** | 4:6 | **periodically (1)** | 8:16,24;11:19;12:19 | **Q** |
| 4:4;18:4;26:13 | **order (3)** | 4:22 | **premiums (1)** | |
| **November (2)** | 10:3;23:15;29:8 | **pertinent (1)** | 13:19 | **quick (1)** |
| 10:19;29:7 | **otherwise (1)** | 26:15 | **pre-motion (2)** | 26:23 |
| **nuances (1)** | 2:18 | **Pete (1)** | 2:20;20:21 | **quite (1)** |
| 27:16 | **ought (2)** | 2:9 | **present (1)** | 14:7 |
| **number (3)** | 4:25;29:24 | **philosophical (1)** | 11:1 | |
| 20:10;28:7,15 | **ours (1)** | 13:4 | **preserve (1)** | **R** |
| **numerous (1)** | 21:2 | **pick (3)** | 10:3 | |
| 25:6 | **out (10)** | 4:8,8;5:10 | **pretrial (3)** | **raised (1)** |
| | 7:8;9:16;16:20; | **picked (1)** | 2:18;29:6,10 | 8:2 |
| **O** | 21:12,23;22:13;25:25; | 14:7 | **primary (1)** | **raises (1)** |
| | 26:2,7;28:16 | **picture (1)** | 24:4 | 6:4 |
| **obligation (34)** | **over (3)** | 14:21 | **prime (1)** | **Rand (6)** |
| 3:18,19;4:2,2,3,9,13, | 25:13;26:9,18 | **plaintiffs (2)** | 23:17 | 3:13;4:1;11:2;18:4; |
| 14,15,17,18;5:6,9,22; | **owe (1)** | 2:3,22 | **Pritchard (4)** | 21:7;25:23 |
| 6:7,10,25;7:4,5,6;8:4; | 4:9 | **plaintiff's (2)** | 18:8,11;21:8,18 | **Rand's (1)** |
| 13:23;14:9;17:22; | **owes (1)** | 8:15;22:3 | **private (1)** | 3:8 |
| 18:16,19,23,24;24:20; | 21:23 | **plant (1)** | 13:25 | **reach (1)** |
| 25:14,15;26:17,19,20 | **own (6)** | 6:20 | **probably (1)** | 7:12 |
| **obligations (9)** | 4:20;11:10;15:17; | **pleadings (5)** | 9:23 | **read (2)** |
| 3:9,11,23,23;14:6; | 18:14;20:6;21:16 | 7:18;9:3;19:17,19; | **problem (2)** | 2:24;15:9 |
| 23:19;24:24;25:8,10 | | 27:3 | 6:6;26:14 | **real (1)** |
| **obvious (1)** | **P** | **Please (3)** | **procedure (1)** | 22:21 |
| 18:1 | | 11:23;28:7;29:4 | 10:7 | **really (10)** |
| **obviously (2)** | **page (2)** | **pled (2)** | **proceed (1)** | 3:17;6:9;9:10,18; |
| 10:16;29:10 | 22:4;28:13 | 8:20,21 | 3:21 | 10:8,20;17:13;24:6; |
| **occur (1)** | **pages (1)** | **plus (1)** | **proceeding (1)** | 25:9;27:14 |
| 10:21 | 15:15 | 8:10 | 18:10 | **real-time (1)** |
| **occurred (1)** | **papers (2)** | **point (14)** | **process (2)** | 19:3 |
| 6:19 | 9:3;28:11 | 5:23;9:24;13:1; | 10:12,14 | **reason (3)** |
| **off (3)** | **Part (4)** | 16:20,24;18:17;19:4,8; | **product (1)** | 9:22;12:19;16:16 |
| 17:2,20;20:15 | 13:18;14:4;15:2; | 20:1;21:9;22:1,19; | 25:25 | **receive (1)** |
| **offend (1)** | 23:8 | 25:2;28:19 | **products (3)** | 16:9 |
| 20:18 | **particular (3)** | **points (1)** | 14:9;15:22,23 | **received (1)** |
| **offing (1)** | 11:10;14:22;22:7 | 28:9 | **profits (2)** | 2:21 |
| 27:18 | **parties (17)** | **policy (5)** | 23:4,5 | **receives (1)** |
| **OK (6)** | 3:7;6:6;9:4,8,14,21; | 13:5,8,14,17;14:6 | **progress (1)** | 13:19 |
| 5:25;7:24;11:15; | 18:18;21:11,16;22:5, | **portion (1)** | 12:13 | **reciprocal (1)** |
| 16:13;20:12;28:21 | 13,25;23:20;24:3; | 9:12 | **property (1)** | 16:25 |
| **omissions (4)** | 26:25;27:7;28:6 | **position (2)** | 22:23 | **refusal (2)** |
| 15:25;16:2,17;18:14 | **parties' (2)** | 20:19;24:19 | **proposition (1)** | 7:14;14:14 |

**regard (1)**
  25:20
**regardless (1)**
  22:7
**reimbursement (1)**
  19:3
**renders (1)**
  12:10
**reply (1)**
  28:4
**report (1)**
  6:14
**reporter (1)**
  26:5
**representations (2)**
  12:15;14:5
**representing (1)**
  2:7
**request (2)**
  12:17;14:12
**requires (1)**
  7:17
**Reserve (6)**
  14:1;17:3,7,19,19,22
**resolution (3)**
  23:24,25;24:1
**resolve (4)**
  5:2;9:5;22:14;27:14
**resolved (4)**
  22:7;24:11;26:14;
  27:18
**resolving (1)**
  9:19
**respect (3)**
  3:1;8:19;16:3
**respond (2)**
  23:9,13
**responded (1)**
  10:14
**response (3)**
  22:4;27:25;28:3
**responsible (2)**
  14:13;16:18
**result (2)**
  17:10;18:13
**resulting (2)**
  6:19;18:20
**reverse (1)**
  23:15
**right (10)**
  2:3;6:12;7:14;8:7;
  14:14;18:25;21:4,25;
  25:17;28:2
**rightly (1)**
  18:9
**ripe (3)**
  7:5;8:17;26:20
**rise (1)**
  5:8
**risk (4)**
  5:17;18:9;19:10,10
**role (1)**
  7:3

**Roman (1)**
  17:11
**room (1)**
  24:14
**Rosen (1)**
  25:7
**ROSENBERG (39)**
  2:2,3,23;3:5,25;5:7,
  21,24;6:1,14;7:23,25;
  8:11,14;9:7,15,20;
  11:4;12:14;14:10;
  17:24;19:1,18;21:5;
  22:18;23:9,12,14;
  24:12;25:5;26:6,24;
  27:17,24;28:1,22;
  29:12,14,17
**roughly (2)**
  8:15;22:24
**rule (2)**
  13:10,11
**running (2)**
  10:2,3

**S**

**same (2)**
  18:19;29:19
**Saskatchewan (11)**
  3:11;6:16;10:1,3,6,7,
  9;12:18,21,22;18:5
**saying (11)**
  12:12;16:1,7;19:19,
  20,21;24:7,14;25:4,10;
  26:24
**scanned (1)**
  28:19
**schedule (2)**
  6:15;10:11
**scheduling (1)**
  29:8
**search (1)**
  13:14
**Second (5)**
  11:24;15:2;25:21;
  26:7;29:4
**Secondly (1)**
  28:12
**section (4)**
  4:3,21;14:5;18:25
**seeing (1)**
  21:11
**seeking (4)**
  3:22;4:1;5:23;17:15
**seeks (1)**
  22:22
**seem (1)**
  27:15
**seeming (2)**
  19:10,11
**seems (1)**
  27:6
**selection (1)**
  14:16

**seller (2)**
  17:18,18
**selling (1)**
  17:2
**sense (1)**
  9:2
**separate (3)**
  5:22;18:21;25:10
**serious (1)**
  30:4
**serve (1)**
  2:18
**servicing (3)**
  15:5;16:15;21:21
**set (1)**
  26:1
**settle (1)**
  14:18
**shall (2)**
  3:5;19:5
**shores (1)**
  16:21
**short (3)**
  9:5;22:14;27:14
**side (3)**
  11:12;13:13,13
**sides (1)**
  11:11
**Similarly (2)**
  5:15;20:19
**simply (6)**
  5:2;7:17;15:18;
  19:11;20:2;27:2
**Simpson (1)**
  2:7
**sit (1)**
  29:23
**situation (4)**
  14:11,22;26:25;27:1
**six (1)**
  15:15
**six-page (1)**
  13:12
**Skadden (1)**
  15:21
**slightly (2)**
  11:6;12:2
**slow (1)**
  26:4
**slowly (1)**
  6:14
**smaller (1)**
  24:3
**sole (1)**
  15:4
**solely (2)**
  15:1,10
**solution (2)**
  6:5,8
**someday (1)**
  25:3
**somehow (1)**
  21:20

**soon (1)**
  25:4
**sought (3)**
  12:6;18:20;21:7
**sounded (1)**
  11:11
**speak (2)**
  29:15,24
**special (2)**
  23:2,3
**specifically (2)**
  17:8;23:1
**speculate (1)**
  24:17
**spent (4)**
  3:19,20;8:22,23
**spin-off (1)**
  17:23
**spot-on (1)**
  12:11
**spun (1)**
  17:20
**stand (1)**
  19:12
**stands (1)**
  11:25
**start (3)**
  2:23;12:12;19:5
**Starting (1)**
  23:16
**statement (1)**
  18:4
**stay (2)**
  11:12;20:5
**step (1)**
  13:21
**stepping (3)**
  5:14;6:3;18:10
**still (2)**
  26:2;27:17
**stipulate (1)**
  28:22
**strategic (2)**
  14:1,17
**stream (2)**
  26:3,8
**study (1)**
  28:10
**submissions (2)**
  2:21;3:1
**submit (3)**
  10:17;27:22,24
**subpart (1)**
  16:25
**success (1)**
  2:25
**succinct (1)**
  25:20
**sued (4)**
  15:10,12,17,18
**suggests (1)**
  20:22
**Suppose (2)**

  21:17,17
**sure (5)**
  7:9;10:1;20:16;22:2;
  28:24
**surmise (1)**
  24:17
**surprise (1)**
  11:13
**surprising (1)**
  11:9
**suspense (2)**
  20:10;21:13
**system (1)**
  6:22

**T**

**table (1)**
  29:24
**tackle (1)**
  13:2
**talk (1)**
  2:20
**talked (1)**
  19:2
**talking (3)**
  22:15;24:5;29:9
**talks (1)**
  19:2
**telling (2)**
  7:15;19:18
**ten (1)**
  15:21
**term (1)**
  20:4
**terms (1)**
  20:6
**Thacher (1)**
  2:7
**theories (1)**
  15:19
**therefore (3)**
  5:5;7:5;9:13
**thinking (1)**
  16:21
**third (4)**
  15:7;22:4;25:21;
  26:7
**third-party (1)**
  13:20
**Thomas (1)**
  2:3
**though (2)**
  6:8;25:5
**thought (1)**
  27:13
**three (4)**
  14:25;15:1;25:21;
  28:15
**thrust (1)**
  11:18
**times (1)**
  13:7

**today (10)**
   2:18;3:22;10:20;
   12:15;20:21;22:6;
   23:23;27:17;28:10;
   30:3
**today's (2)**
   12:12;28:7
**toes (3)**
   5:15;6:3;18:11
**together (4)**
   2:19;15:21;28:21,24
**told (1)**
   27:12
**tolling (4)**
   9:21,22;10:4,8
**tomorrow (1)**
   28:8
**track (2)**
   14:21;17:21
**transcript (1)**
   28:7
**transferred (1)**
   17:22
**tried (1)**
   2:24
**troubled (1)**
   6:2
**true (5)**
   2:15;5:4,19;15:19;
   21:17
**try (1)**
   27:20
**trying (1)**
   17:21
**turn (1)**
   21:23
**two (8)**
   3:13,17;4:6;6:6;7:2,
   10;14:25;24:13
**two-thirds (1)**
   22:24
**type (1)**
   27:8

**U**

**ultimate (2)**
   18:8,12
**unaddressed (1)**
   22:20
**under (7)**
   7:13;10:3,7;12:4;
   17:12;21:25;24:2
**underlined (1)**
   17:14
**underlying (1)**
   13:12
**understood (2)**
   2:13;11:15
**unless (1)**
   6:25
**unpack (1)**
   11:22

**up (20)**
   2:12,14,15;3:11;4:8,
   8,23;5:10;6:16,22;
   12:18;14:7,19;16:21;
   22:13;23:24;24:1;
   25:13;27:20;28:10
**upon (4)**
   8:3;10:20;11:21;
   20:3
**urgent (1)**
   28:20
**use (1)**
   24:7

**V**

**various (2)**
   3:9;25:19
**venue (1)**
   10:6
**veracity (1)**
   5:1
**verdict (1)**
   12:24
**versa (1)**
   15:18
**vice (1)**
   15:18
**view (2)**
   4:25;9:13
**violations (1)**
   16:10
**vision (1)**
   17:13
**voluntarily (1)**
   6:25

**W**

**wait (1)**
   7:6
**wants (1)**
   17:6
**ware (1)**
   27:19
**warn (7)**
   15:9,11,13;16:7,8,9,
   10
**way (5)**
   2:24;3:1;20:18;22:8,
   14
**ways (1)**
   15:15
**week (1)**
   18:6
**Welcome (1)**
   2:17
**whenever (1)**
   25:13
**whereas (1)**
   8:9
**wise (1)**
   20:6

**wish (1)**
   28:10
**within (5)**
   13:15,16;16:18;
   21:10;23:7
**wonderful (1)**
   29:18
**work (5)**
   13:6;21:12;24:10;
   28:21,24
**works (1)**
   7:8
**world (1)**
   4:12
**worry (3)**
   5:18;20:11,14
**wreck (1)**
   27:20
**wrong (2)**
   9:3;22:3

**Y**

**Yara (12)**
   3:12;4:13,19;6:19;
   8:3,14;10:14;13:13,16;
   14:25;22:22;25:20
**years (5)**
   15:21;16:15;20:7;
   21:14;22:14
**York (11)**
   3:15;6:8,9;13:7,10;
   21:24;23:2,17,20,21;
   27:4
**Yorker (1)**
   26:6

**1**

**100 (1)**
   21:8
**13 (1)**
   22:22
**19 (2)**
   22:23;23:6
**1970s (1)**
   2:15
**19th (2)**
   29:7,10
**1st (1)**
   27:22

**2**

**2004 (2)**
   15:5;17:19
**2007 (1)**
   17:20
**2012 (2)**
   15:6;21:19
**21st (1)**
   28:3

**3**

**300 (1)**
   13:7

**5**

**5th (1)**
   27:25

**7**

**7th (2)**
   27:25;28:2

**8**

**8 (3)**
   14:5;18:25;28:23
**8.1 (3)**
   16:25;17:12;26:17
**8.1b (1)**
   26:11
**8.1e (1)**
   4:3
**8.1f (2)**
   4:21;19:2
**8.1g (1)**
   22:25

**9**

**9 (1)**
   28:23
**9.10g (1)**
   15:25