```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DRESSER-RAND COMPANY,
     DRESSER-RAND CANADA, INC.,
 4   DRESSER-RAND GROUP, INC.

 5                  Plaintiffs,

 6           v.                          14 Civ. 7222 (KPF)

 7   INGERSOLL RAND COMPANY,
     INGERSOLL RAND COMPANY LIMITED,
 8                                       Conference
                 Defendants.
 9
     ------------------------------x
10                                       New York, N.Y.
                                         October 28, 2014
11                                       2:00 p.m.
     Before:
12
                HON. KATHERINE POLK FAILLA
13
                                         District Judge
14

15

16           APPEARANCES

17

18   ROETZEL & ANDRESS LPA
         Attorneys for Plaintiffs
19   BY:  THOMAS L. ROSENBERG

20   HODGSON RUSS LLP
         Attorneys for Plaintiffs
21   BY:  MARGARET M. CMIELEWSKI

22   DAVID J. GRENELL
         Assistant General Counsel
23       Dresser-Rand Company

24   SIMPSON THACHER & BARTLETT LLP
         Attorneys for Defendants
25   BY:  LYNN K. NEUNER
         NOAH M. LEIBOWITZ
```

1                    (Case called)

2                    MR. ROSENBERG:  Good afternoon, your Honor.  For the

3          plaintiffs, Thomas Rosenberg.  To my right is Margaret

4          Cmielewski, and to my left is in-house counsel David Grenell.

5                    THE COURT:  Good afternoon, all of you.

6                    MS. NEUNER:  Good afternoon, Judge Failla.  Lynn

7          Neuner from Simpson Thacher & Bartlett representing the

8          Ingersoll-Rand entities.  With me is my partner Noah Leibowitz.

9          We also have with us here from North Carolina Mr. Pete

10         Donnelly, in-house counsel at Ingersoll-Rand.

11                   THE COURT:  Good afternoon.  Did you say North

12         Carolina?  At a different time in my life I grew up in northern

13         New Jersey, and I understood that Ingersoll-Rand's headquarters

14         to be up in the Montvale area.

15                   MR. DONNELLY:  That is true up until the 1970s or so,

16         when it moved down Davidson, North Carolina.

17                   THE COURT:  Welcome.  Thank you all for coming in

18         today.  This might otherwise serve as an initial pretrial

19         conference inasmuch as it is our chance to all get together and

20         talk about the issues in this case, but it is also a pre-motion

21         conference based on the submissions that I received, first from

22         the defense and then from the plaintiffs.

23                   Mr. Rosenberg, I will start with you nonetheless.  I

24         have read the complaint and tried very hard to make my way

25         through the agreement in question.  I had with greater success

1    made my way through the parties' submissions with respect to

2    their positions.  If there are things that you would like to

3    call my attention to at this time, I would like to hear from

4    you.

5              MR. ROSENBERG:  Yes, your Honor, I shall.  Thank you.

6              The equity purchase agreement is a complicated

7    document that was entered into between the parties, Dresser-

8    Rand's predecessor in interest and Ingersoll-Rand, in

9    connection with various obligations flowing from one to

10   another.  We now are challenged with having to apply those

11   obligations to a lawsuit that has been filed up in Saskatchewan

12   where Yara Belle has initiated litigation against Ingersoll-

13   Rand and Dresser-Rand.  These two companies, Ingersoll-Rand and

14   Dresser-Rand, decided that their disputes would be determined

15   in the New York courts.  That was the decision they made, and

16   that is what we are asking this Court to apply.

17             Having said that, there are really two issues before

18   us.  One is the defense obligation, one is the indemnity

19   obligation.  We have spent a lot of time looking at this.  We

20   have spent a lot of time analyzing both the legal issues and

21   the practical issues of how we proceed.  I believe where we are

22   today with this is we are seeking a declaratory judgment action

23   on both the defense obligations and the indemnity obligations.

24             THE COURT:  When you say "we"?

25             MR. ROSENBERG:  Dresser-Rand, I apologize.  Dresser-

1    Rand is seeking a determination from this Court on the defense

2    obligation and the indemnity obligation.

3            Briefly on the defense obligation, section 8.1(e) of

4    the equity purchase agreement provides the notice and

5    opportunity to defend.  It says opportunity, it doesn't say

6    duty.  It says opportunity in that it gives two options to the

7    indemnifying party, Ingersoll-Rand.  That is, they can either

8    pick up the defense or, if they don't pick up the defense and

9    there is an indemnity obligation, they owe the defense legal

10   fees.

11           The defense issue is based on the allegations of the

12   complaint, analogous to the insurance world.  The complaint

13   that Yara Belle filed creates a defense obligation.  It may not

14   create an indemnity obligation, but it clearly creates a

15   defense obligation based on the allegations.  That's what we

16   are asking this Court to determine, that there is a defense

17   obligation.

18           If there is a defense obligation based on the

19   allegations that Yara Belle has asserted, then Ingersoll-Rand

20   has elected not to employ its own counsel.  But we bring in

21   section 8.1(f) of the agreement that says they are to pay the

22   legal fees periodically as incurred.  That would be the legal

23   fees of our defense counsel up in the Canadian action.  That is

24   the defense issue before this Court.

25           THE COURT:  Following on that, your view is I ought

1    not get behind the allegations or determine the veracity or

2    think about how a jury might resolve them.  I simply should

3    look at the allegations in the Canadian lawsuit, see that if

4    they are taken as true, they would arguably allege something

5    that is indemnifiable, and therefore that implicates the

6    defense obligation but not the indemnity claims?

7            MR. ROSENBERG:  Yes, your Honor, absolutely, very

8    analogous to insurance.  If the allegations give rise to the

9    possibility of an indemnity obligation, then Ingersoll-Rand has

10   to pick up the defense.

11           THE COURT:  Let me ask you this question, sir.  I was

12   going to ask Ms. Neuner this, but I will ask you first, and

13   then she will know it is coming.  The concern that I have is

14   wanting to avoid the possibility of, if you will, stepping on

15   the toes of the Canadian court.  Similarly, I want to be

16   careful that I am not impermissibly or inappropriately creating

17   a risk of inconsistent judgments.  I understand your argument

18   to me to be, sir, that I need not worry about that now, because

19   I must take the allegations as true for purposes of determining

20   the duty to defend.

21           MR. ROSENBERG:  Yes, your Honor, only limited to the

22   duty to defend separate from the indemnity obligation.

23           THE COURT:  Are you seeking indemnity at this point?

24           MR. ROSENBERG:  Yes.

25           THE COURT:  OK.

1          MR. ROSENBERG:  However, however, the Court is a

2     hundred percent correct, that gets us into the troubled area of

3     stepping on the toes of the Canadian case.  It gets us into the

4     challenge of inconsistent determinations.  It raises a lot of

5     practical issues, which there is a solution to.

6          The problem is that these two parties entered into a

7     contract that said that obligation is going to be decided in

8     New York.  I believe the solution to that, though, is that what

9     the contract really says is the New York court determines

10    whether there is an indemnity obligation based on what happens

11    in the Canadian court.

12          THE COURT:  Right now not much has happened in the

13    Canadian court.

14          MR. ROSENBERG:  It is moving slowly.  I can report on

15    the schedule so that the Court is clearly aware of that.  We

16    are in constant contact with counsel up in Saskatchewan.

17          What happens in the Canadian court is the Canadian

18    court is going to determine basically who is liable for the

19    fire and resulting damages that occurred at the Yara Belle

20    plant, be it Ingersoll-Rand or Dresser-Rand, and they are also

21    going to determine what we would call cross-claim issues.  They

22    call it a little different up in the Canadian system.  But they

23    would determine cross-claim issues.

24          Once that determination is made on the indemnity,

25    then, unless one party voluntarily acknowledges the obligation

1   and compensates the other, it comes back to this Court for this

2   Court to say, based on what happened in Canada, if you two

3   can't agree on indemnity, it's this Court's role to determine

4   whether there is an indemnity obligation.

5           Therefore, the defense obligation is ripe.  The

6   indemnity obligation I think we need to wait and see what

7   happens in Canada.

8           THE COURT:  I want to understand how that works out.

9   I'm not sure that there is a practical difference between the

10  two of.  You will explain to me where I'm misperceiving the

11  facts.

12          The idea of the duty to defend is that you would reach

13  back to Ingersoll-Rand and say under the agreement you have the

14  right of first refusal, as it were, to defend this.  But

15  doesn't that, too -- well, you're telling me it doesn't because

16  I just have to go on the facts.

17          If the duty to indemnify requires more than simply

18  analysis of the pleadings, by allowing the duty to defend or

19  finding a duty to defend in this case, have I not effectively

20  found a duty to indemnify?  Because on these facts, on this

21  agreement, the choice is either they can do it themselves or

22  they can pay you back for doing it, correct?

23          MR. ROSENBERG:  Yes, your Honor, to your last comment.

24          THE COURT:  OK.

25          MR. ROSENBERG:  The distinction here is that the duty

1    to defend and the duty to indemnify are different.  The duty to

2    defend is based on the allegations that have been raised in the

3    Yara Belle complaint.  The duty to indemnify is based upon the

4    finding in the Canadian court.  An indemnification obligation

5    only exists if in fact --

6           THE COURT:  Fair enough.  I think I get this.  The

7    duty to defend encompasses basically the attorney's fees right

8    now and not necessarily any judgment at some later date,

9    whereas the duty to indemnify includes, if damages are

10   assessed, that plus the costs of defending?

11          MR. ROSENBERG:  Correct.

12          THE COURT:  I understand, thank you.  I needed that

13   clarification.

14          MR. ROSENBERG:  As the Yara Belle complaint indicates,

15   the plaintiff's claim is roughly $32 million.  The indemnity

16   issue clearly is premature.  The defense issue, because of how

17   large that claim is, is ripe, and that is I think what needs to

18   be determined at first.

19          I will say, with all respect to both the Court and

20   opposing counsel, that is a little different from what we pled

21   in the complaint.  We clearly pled in the complaint that the

22   duty to indemnify has to be determined now.  We spent a lot of

23   time with Ms. Neuner's arguments.  We spent a lot of time

24   looking at that.  We are in agreement that it is premature to

25   decide the duty to indemnify now.

 1          THE COURT:  While you are in agreement, I want to hear

 2     a little bit more about this.  My sense from looking at the

 3     pleadings and the papers in this case was that, maybe I'm wrong

 4     here, the parties were in discussions before your complaint was

 5     filed.  There was an effort to resolve this dispute short of

 6     litigation, correct?

 7          MR. ROSENBERG:  Yes, absolutely.

 8          THE COURT:  On what other things are the parties in

 9     agreement?  Anything?  What I would like to know is how many

10     issues do I really need to decide?  I guess I'm grateful to you

11     for this.  You have come forward and said, I've looked at their

12     arguments, and I now agree with a portion of them, and

13     therefore this is our view on this.  Is there anything else as

14     to which the parties are in agreement at this time?

15          MR. ROSENBERG:  I don't know.

16          THE COURT:  I guess we will find out from the

17     arguments.  Fair enough.  I appreciate that, sir.  That was a

18     very broad question.  I think I really want to know, were you

19     close to resolving this case?

20          MR. ROSENBERG:  No, never on the indemnity issue.

21     Never on the indemnity issue.  The parties entered a tolling

22     agreement.  The reason they entered into a tolling agreement,

23     which I also think, in all candor to the Court, is probably not

24     at issue at this point, our Canadian counsel made an argument

25     that the case should have been heard in Alberta, not

1    Saskatchewan.  I'm not exactly sure why, but he did.  There

2    were certain defenses that were running in Alberta that were

3    not running under Saskatchewan law.  In order to preserve those

4    defenses, we entered into the tolling agreement.

5            They filed what we would consider a motion either to

6    dismiss or change venue from Saskatchewan to Alberta.  The

7    court in Canada denied that.  Under the Saskatchewan procedure,

8    I think the tolling agreement really becomes irrelevant.  So,

9    the case is in Saskatchewan.

10            I did indicate to the Court I would say a little bit

11    about the schedule as to the Canadian case.  They are in the

12    process now of what we would call exchanging documents.  They

13    have made a demand for articulation of damages, which is a

14    formal process in that court.  Yara Belle has not yet responded

15    to either one of them.

16            The answer is, obviously, a little bit different.  You

17    just submit your defenses.  I don't think that has been filed

18    yet.  They have some time to do so.  I think that is going to

19    be filed in November.  Whether we assert a cross-claim against

20    Ingersoll-Rand is really dependent upon what happens today, but

21    I expect that will occur.

22            THE COURT:  Thank you very much.  I might get back to

23    you in a few minutes.

24            Ms. Neuner, will I be hearing from you or from your

25    co-counsel on this?

1          MS. NEUNER:  Your Honor, I will present for Ingersoll-

2     Rand.

3          THE COURT:  Very good.  Let me ask you this.  It may

4     be that in light of what Mr. Rosenberg has said, some of the

5     things you are going to tell me may have to be modified because

6     you now understand he may be making slightly different

7     arguments.  I want to ask you a preliminary question, and then

8     I want to ask you about your argument.

9          What was a little bit surprising to me, but this just

10     may be my own lack of experience in this particular area, is

11     that it sounded like both sides wanted me to decide the issue

12     and neither side wanted me to stay the matter.  That was a

13     surprise to me.  Do you want me to decide the defense issue?

14          MS. NEUNER:  No, your Honor.

15          THE COURT:  OK.  What I understood from your letter

16     was you want me to find that this is not an indemnifiable

17     event.  Correct?

18          MS. NEUNER:  Your Honor, think the thrust of our

19     motion to dismiss is that the entire action is premature.  We

20     do not yet have a justiciable case or controversy, because the

21     Canadian action has not determined the basis upon which any

22     loss has been imposed.  Do you want me to unpack that?

23          THE COURT:  Please.  As you do so, let me have you

24     keep in mind one case.  There is a Second Circuit case known as

25     Associated Indemnity v. Fairchild.  It stands for the

1    proposition, in a case involving insurance coverage, which I

2    think is slightly different from what we have here, that the

3    determination of coverage and the determination of whether

4    something is indemnifiable under an insurance contract is a

5    determination that can be made while the action as to which the

6    indemnity claim is being sought is ongoing.  There is that.  I

7    checked, and that actually gets cited with some frequency.

8         The question to you was whether there is something

9    about this contract case, because this is not an insurance

10   case, that renders the analysis different.

11        MS. NEUNER:  Your Honor, you are spot-on with all your

12   intuitions.  Let me start by saying I think that in today's

13   conference we are making good progress.  I, too, am grateful to

14   Mr. Rosenberg for the candor with which he has approached his

15   representations today.

16        As I understand it, what we now have from Dresser-Rand

17   is an admission that any request about an indemnification of a

18   final judgment up in the northern area of Canada, Saskatchewan,

19   is premature.  We absolutely agree with that.  The reason why

20   is that one cannot know if Dresser-Rand is going to be found

21   liable in Saskatchewan, if Ingersoll-Rand is going to be found

22   liable in Saskatchewan, if both are, if there is going to be an

23   apportionment of fault, or whether there is going to be a

24   defense verdict.  So, literally as to any final judgment, there

25   is no determination as to the basis for that loss being imposed

1     at this point in time.

2          Now what I think we need to tackle is the question of

3     this defense.  First let me say this.  There is a very

4     important philosophical and legal distinction between a

5     contractual duty to indemnify and an insurance policy.  I do a

6     lot of insurance coverage work.  I am absolutely certain that

7     New York law has decided no more than 300 times that a duty to

8     defend is broader for an insurance policy than a duty to

9     indemnify.

10         In New York they call it either the four corners rule

11    or the eight corners rule.  You would take, as the judge, the

12    four corners of the underlying complaint, here the six-page

13    Yara Belle claims, complaint, put it side by side with the four

14    corners of that policy, and you would search for, as the fact

15    determiner, is there any possible claim for coverage within

16    this Yara Belle complaint that would fit within the corners of

17    the policy, and if so, the insurer has a duty to defend.

18         Why?  Because it's liability insurance.  Part of those

19    premiums were for the protection that when an insurer receives

20    the third-party claims, they will have the peace of mind that

21    the insurer is going to step forward and pay their defense

22    costs.

23         Let's contrast that with the contractual obligation to

24    indemnify, which is what we have here.  The context is that

25    this was a purchase agreement between a private equity group,

First Reserve, and Ingersoll-Rand, a diversified strategic
company engaged in heavy industrial machinery manufacturing and
distribution.

        As part of the normal merger and acquisition
representations and covenants, you have section 8 indemni-
fication obligations.  This is not an insurance policy.  In
fact, it is quite clear, and you have already picked up on
this, that the defense discussion is about an opportunity to
defend a products liability loss.  It is not an obligation.
And Mr. Rosenberg characterized this correctly.

        In this situation where Dresser-Rand is making the
request for a indemnity to Ingersoll-Rand, Ingersoll-Rand, if
it believes that it is responsible for this alleged loss, can,
at its election, you said the right of first refusal, come
forward, say I'm going to assert a defense, I'm going to
appoint Canadian counsel of my selection, I'm going to control
the strategic decision-making, where we are going to fight
this, whether we are going to settle it.  Why?  Because
Ingersoll-Rand has a determination up front that it is going to
be liable for any loss in the end, so it might as well control
the picture as it gets down the Canadian litigation track.

        However, in this particular situation we do not have a
determination by Ingersoll-Rand that is in fact on the hook for
the indemnity.  Why is that?  Because when you look at this
Yara Belle complaint, there are three causes of action.  Two of

the three, your Honor, are solely against Dresser-Rand, one for

negligence on Dresser-Rand Canada's part and the second for

breach of contract by Dresser-Rand Canada.  Why is that?

Because Dresser-Rand Canada was the sole entity that was

servicing this expander from 2004 to the time of its failure in

August of 2012.

          The third claim in the complaint is asserted against

both Ingersoll-Rand and the Dresser-Rand entities, and that is

essentially a duty to warn.  You could read this to say that

Ingersoll-Rand is being sued solely for Ingersoll-Rand's

actions and alleged duty to warn about the expander's

components, and Dresser-Rand is being sued for Dresser-Rand's

actions and alleged duty to warn about the components in this

expander.

          So, in some ways, because the complaint is six pages

and is fairly ambiguous, you could say that both entities are

being sued for their own individual acts, not Dresser-Rand

being sued for Ingersoll-Rand and vice versa.  It is simply too

early to tell the true theories of the liability there.

          But when you go into the EPA, this merger document

that was put together ten years ago by my firm and Skadden, you

see that the products liability loss has a very important

distinction.  It says that for a products liability loss, there

is an exception in the definition -- your Honor, I'm at

9.10(g) -- an exception for acts or omissions following the

1   closing.  This means that Ingersoll-Rand was saying that

2   following the closing, if there were acts or omissions by

3   Dresser-Rand with respect to the machinery, Ingersoll-Rand was

4   not making that an indemnified claim.  It literally was

5   excluded in the definition.

6           THE COURT:  Your argument is not that Ingersoll-Rand

7   no longer had a duty to warn after the closing.  You're saying

8   that it had its duty to warn and Dresser-Rand had its duty to

9   warn, but Dresser-Rand was not able post-closing to receive

10  indemnity for any violations of the duty to warn?  That's the

11  argument your now making to me?

12          MS. NEUNER:  Yes, your Honor.

13          THE COURT:  OK.

14          MS. NEUNER:  And to the extent Dresser-Rand misper-

15  formed, didn't do a good job in its eight years of servicing of

16  its expander, and if that is the reason for the failure and the

17  fire, that's Dresser-Rand's post-closing acts or omissions for

18  which it is responsible.  It is not even within the definition

19  of an indemnifiable claim.

20          Let me point out to you one other provision, if I

21  could, in the EPA that shores up this thinking.  I wouldn't

22  want there to be any misconception that Ingersoll-Rand's

23  indemnity is so broad that it actually would capture post-

24  closing negligence by Dresser-Rand.  The point I would bring

25  you to, your Honor, is 8.1 subpart (b).  This is the reciprocal

1   indemnification.

2          Ingersoll-Rand, when it was selling off Dresser-Rand,

3   said we are going to give you, First Reserve, a duty to

4   indemnify for things preclosing, but when there are things

5   post-closing, if Ingersoll-Rand gets named in that lawsuit,

6   Ingersoll-Rand wants protection.

7          The buyers, First Reserve, gave an indemnity back to

8   Ingersoll-Rand.  Here it specifically says that the indemnity

9   for Ingersoll-Rand, our clients, includes any losses as a

10  result of the conduct of business of any member of the

11  Dresser-Rand group after the closing date.  That is Roman (ii)

12  under 8.1.

13         THE COURT:  If you had really good distance vision,

14  you would see that I underlined it in mine.  I guess the

15  question is, why is Ingersoll-Rand not seeking indemnification?

16  Or are they?

17         MS. NEUNER:  Your Honor, great question.  The

18  indemnity here that you see is from the seller.  The seller is

19  First Reserve.  First Reserve acquired Dresser-Rand in 2004 and

20  then spun off Dresser-Rand in 2007 in an IPO.  We actually have

21  been trying to track down whether this ongoing indemnification

22  obligation in this EPA was transferred from First Reserve to

23  Dresser-Rand at the time of the spin-off.  We have asked Mr.

24  Rosenberg for that information, and it has not yet been

25  forthcoming.

1          It is very, very, very obvious that what you will have

2     here at the end of the day are cross-claims for indemni-

3     fication.  In fact, in Canada, Canadian counsel for Ingersoll-

4     Rand will be putting in its notice of defense and its statement

5     of cross-claim against Dresser-Rand in the Saskatchewan action

6     in the next week.  So, the Canadian action will in fact have

7     Ingersoll-Rand's cross-claims against Dresser-Rand before Madam

8     Justice Pritchard, who is the ultimate decision make there.

9          I think you have rightly determined the risk of

10    proceeding forward with this case, which is stepping on the

11    toes of Madam Justice Pritchard and coming to an inconsistent

12    determination.  It could very well be that the ultimate loss,

13    if any, that is borne by Dresser-Rand will be as a result of

14    its own acts and omissions after the closing of this merger, in

15    which case Ingersoll-Rand never, never, never had an indemnity

16    obligation.

17         The key to this, and I think the barest point of

18    dispute between the parties, is that our contractual

19    indemnification obligation is the same whether the loss that is

20    being sought is defense invoices or resulting judgment.  There

21    is no separate duty to defend that is broader than the duty to

22    indemnify.

23         When you said, if I decided a defense obligation,

24    wouldn't I in fact be deciding an indemnity obligation, you are

25    absolutely right.  It's a section 8, which is about

1    indemnities.  Yes, there is this provision which Mr. Rosenberg

2    and I have talked about, which is 8.1(f), which talks about

3    real-time reimbursement of defense fees as they are incurred.

4    But, your Honor, I will point you to the language at the very

5    start that says, "This applies where an indemnified party shall

6    be entitled to indemnification."

7           That is our central dispute.  We do not believe at

8    this point that Dresser-Rand is entitled to indemnification.

9           THE COURT:  Let me ask you this, Ms. Neuner, at the

10   risk of seeming like I'm beating a dead horse or at the risk of

11   seeming that I simply don't understand what is going on here.

12   Are you contemplating a motion in which you ask me to stand

13   down and do nothing until the Canadian courts make some

14   determination here, or are you asking me to make a

15   determination on the four corners or the eight corners, however

16   you would like to look at it, that there can be no

17   indemnifiable event in light of the pleadings?

18          Both you and Mr. Rosenberg are telling me I can look

19   at the pleadings.  I think that's what you are saying.  He is

20   saying I look at them and I must find a duty to defend.  You

21   are saying I look at them and I can only come to the conclusion

22   that it is a nonindemnifiable event.

23          MS. NEUNER:  Your Honor, I would pull back from there.

24   I'm not going to ask you to actually make a declaratory

25   judgment in our favor.  What I would say is this.  I think it

1   is appropriate to dismiss the case at this point because it is

2   nonjusticiable because there are simply not enough facts

3   developed in the Canadian action to determine the basis upon

4   which loss, which is a capitalized term in the EPA, is being

5   incurred.  I could ask you to stay it, but I don't think that

6   is wise in terms of your own docket, because the Canadian

7   action could go on for years.

8           THE COURT:  I'll say this.  If that is the only thing

9   you are concerned about, I have the ability to basically just

10  add a number to the docket and it goes into a suspense docket.

11  Don't worry about me.  That should not be the issue.

12          MS. NEUNER:  OK.

13          THE COURT:  And I am genuinely interested in the

14  issues involved in this case.  So don't worry that I would be

15  happy to get it off my docket, no.

16          I want to be sure that if I have enough information in

17  front of me and should be deciding the issue, that I do, and I

18  can do that in a way that does not offend or friends to the

19  north.  Similarly, if I should not be because of the position

20  of that, that's what I would like to know.

21          We are here today on a pre-motion conference, which to

22  me suggests that a motion is forthcoming.  I think it is coming

23  from you.

24          MS. NEUNER:  Yes.

25          THE COURT:  I would like to know what it is.  Let's go

 1   that far.

 2            MS. NEUNER:  Your Honor, ours is a motion to dismiss

 3   for a lack of a justiciable case or controversy.

 4            THE COURT:  All right.

 5            MS. NEUNER:  I have said this to Mr. Rosenberg.  If at

 6   the end of the Canadian action liability is imposed on Dresser-

 7   Rand for the full amount sought of $32 million and Madam

 8   Justice Pritchard makes a finding that it is 100 percent the

 9   fault of Ingersoll-Rand, at that point we would have a basis to

10   say this fits within an indemnifiable loss.  Then, honestly,

11   you wouldn't be seeing us, because the parties would be able to

12   work that out.

13            You could put it on the suspense calendar for five

14   years, but it may be that at the end of the Canadian action

15   there is again not a justiciable controversy, because the

16   parties have come to their own conclusion.

17            Suppose the converse were true.  Suppose Madam Justice

18   Pritchard said the judgment is imposed a hundred percent on

19   Ingersoll-Rand but the fault happened July 2012, a month before

20   the fire, because Dresser-Rand somehow made a mistake in the

21   final servicing.

22            Then we would have justiciable claim for indemnity and

23   it may turn out that it is Dresser-Rand who owes that.  If they

24   wouldn't agree to pay, then yes, we do agree that New York is

25   the right forum under the EPA, because we have a concrete

1   dispute at that point for an entitled indemnifiable loss.

2          THE COURT:  Let me ask this.  I want to make sure I'm

3   not getting this wrong.  I am looking at the plaintiff's

4   response, and it is on the third page.  There is some

5   discussion about the benefits of having both parties in the

6   Canadian case.  I think it has been clarified for me today that

7   regardless of how this particular dispute is resolved,

8   Ingersoll-Rand is in that Canadian action any way you look at

9   it.  Correct?

10          MS. NEUNER:  Absolutely, your Honor, and the cross-

11   claim will be in that Canadian action.

12          THE COURT:  To the extent the concern would be that

13   both parties need to be up in Canada to figure out how to

14   resolve this perhaps in a way short of five years of

15   litigation, you are talking about you're both in anyway.

16          MS. NEUNER:  Yes, your Honor.

17          THE COURT:  I understand that.  Is there anything

18   else?  Then I would like to hear back from Mr. Rosenberg.

19          MS. NEUNER:  Your Honor, the only other point that we

20   have that went unaddressed in the opposition letter was the

21   very real argument that we would put into our motion to dismiss

22   that of the amount of loss that Yara Belle seeks, 13 million of

23   it is for property damage for the facility, 19 million, which

24   is roughly two-thirds, is for business interruption losses.

25          You will note in the EPA at 8.1(g) that the parties

1   specifically contracted that the indemnity would not apply to

2   special damages.  New York law is very clear that business

3   interruption losses are special damages or consequential

4   damages or lost profits.  Canadian law literally defines

5   business interruption losses as lost profits.

6           We have a dispute about 19 million that isn't even

7   within definition of an indemnifiable loss.  I say that to you

8   because it is part of our motion to dismiss, and I want to give

9   Mr. Rosenberg a fair chance to respond.

10          THE COURT:  I appreciate that.

11          MS. NEUNER:  Thank you.

12          THE COURT:  Mr. Rosenberg, anything you would like to

13   respond to Ms. Neuner?

14          MR. ROSENBERG:  Yes, your Honor.  I'll take them kind

15   of in reverse order.

16          Starting with the business interruption loss, that is

17   a prime example of something that is decided in the New York

18   court, not the Canadian court, as far as the indemnity

19   obligations of each other.  That is something that whether or

20   not New York law applies, the court and the parties determined

21   we are going to let New York law apply, we are going to let

22   that dispute be decided here.  It gives a basis for why we have

23   this case here today.

24          The resolution issue.  The Court brought up

25   resolution.  I actually think there is nothing we can do about

1    it, but the issue of resolution up in Canada is going to be

2    extremely difficult under the circumstances, because I think

3    both parties believe they are the smaller payor and the other

4    party is the primary payor.  That is going to make that very

5    difficult when we are talking about so much money.

6         THE COURT:  Your argument is not really an argument

7    that I can use, but what you are saying is that as a practical

8    matter, if you were both aligned inasmuch as one of you is

9    covering the costs of the other, you would have perhaps more of

10   an interest to work with each other to see how it can be

11   resolved.

12        MR. ROSENBERG:  Exactly.  This is going to be very

13   difficult.  I can imagine the two the gentlemen getting in a

14   room saying I'm the minor party, you're the minor party, etc.

15   It's difficult.

16        Also, why is there a justiciable controversy here?  We

17   all can surmise or speculate as to what the Canadian court can

18   do.  But the Canadian court can also in its determinations

19   leave us in a position of having immense interpretation by this

20   Court to determine the indemnity obligation.

21        Yes, they may say Ingersoll-Rand is entirely at fault,

22   they may say Dresser-Rand is entirely at fault, but they could

23   do a host of other things.  That is why it is this Court that

24   interprets that decision to determine the indemnity obligations

25   and makes this a justiciable controversy.

1          THE COURT:  I understand.  But I think Ms. Neuner's

2     point, and I am neither agreeing nor disagreeing with it, is

3     yes, someday we will have to do that if we can't come to an

4     agreement, but for now it is too soon, is what she is saying.

5          MR. ROSENBERG:  On the indemnity issue, even though in

6     our letter we have cited numerous cases, including the

7     Associated Indemnity case and the Rosen v. Mega Bloks case,

8     which indicates that contractual indemnity obligations is

9     really not a major distinction from the insurance indemnity

10    obligations, what we are saying is yes, separate the indemnity

11    from the defense.

12         The indemnity this case needs to maintain jurisdiction

13    over and interpret what happens up there whenever it happens.

14    The defense obligation is distinguishable.  The defense

15    obligation is in fact a justiciable matter that needs to be

16    determined now based on, as that case law indicates, the

17    allegations in the complaint right now.  It could not be in,

18    our opinion, clearer.

19         Ms. Neuner indicated the various causes of action.

20    Yes, the Yara Belle complaint is very succinct in that regard.

21    There are three causes of action.  The second and third cause

22    of action are clearly claims limited to the conduct of Dresser-

23    Rand.  We don't believe those claims have merit.

24         But also that is going to get us into an interpret-

25    ation of the arising out of language in that product liability

1    definition that is set forth in the EPA.  It is our contention

2    that that still arises out of Ingersoll-Rand's efforts of

3    putting it into the stream of commerce.

4            THE COURT:  I'm just asking you to slow down a little

5    bit, sir, for the reporter.

6            MR. ROSENBERG:  I am a New Yorker by heart.

7            Those second and third causes of action do arise out

8    of Ingersoll-Rand's efforts of putting them in the stream of

9    the commerce.  We have a disagreement over the merits of those

10   claims, and I understand that's going to be decided elsewhere.

11           8.1(b), the indemnity due from Dresser-Rand to

12   Ingersoll-Rand, Ms. Neuner and I will have discussions about

13   the notice issue.  That is not before this Court.  That will

14   get resolved.  That is not a problem.  But I don't think that

15   is pertinent to what this Court needs to decide.

16           This Court needs to look at the other provisions of

17   8.1 that create the indemnity obligation.  I believe what this

18   Court needs to do is maintain jurisdiction over that, to

19   determine what happens in Canada.  The defense obligation is

20   ripe, and this Court needs to determine the defense obligation

21   based on the allegations in the complaint at this time.

22           THE COURT:  Thank you.

23           Ms. Neuner, one quick follow-up question based on what

24   Mr. Rosenberg was saying.  If this were not the actual

25   situation where there is a contract between the parties, if

1    this were an insurer-insured situation, would you agree that

2    the duty to defend could be determined simply based on the

3    pleadings in the Canadian court?

4             MS. NEUNER:  Yes, your Honor, because that is New York

5    law, yes.

6             THE COURT:  It seems to me that one difference between

7    the parties is that you see Associated Indemnity Corporation

8    and things of that type and understand it and limit it to the

9    insurance context and not to this contractual context.

10            MS. NEUNER:  Absolutely, your Honor, because that is

11   the law.

12            THE COURT:  You both have told me what you believe the

13   law is.  I understand.  As much as I thought that we could

14   possibly resolve this short of a motion, I really didn't think

15   that was going to happen.  It doesn't seem that that is the

16   case.  While I appreciate very much the nuances that Mr.

17   Rosenberg has announced today, there are still some things that

18   do need to get resolved.  So, a motion is in the offing.

19            Let me look at the calendar.  I am ware that there are

20   holidays coming up.  My hope is to try and wreck as few of them

21   as possible for people.  Ms. Neuner, would you be able to

22   submit something on the 1st of December?

23            MS. NEUNER:  Yes, your Honor.

24            THE COURT:  Mr. Rosenberg, would you be able to submit

25   a response on the 5th of January or the 7th of January?

1          MR. ROSENBERG:  That's fine, your Honor.

2          THE COURT:  7th of January, all right.  Then, Ms.

3   Neuner, that would make your response due the 21st of January,

4   your reply.

5          MS. NEUNER:  Very good, your Honor.

6          THE COURT:  I will ask the parties a couple of things.

7   Number one, please get a copy of today's transcript.  I don't

8   need it tomorrow, but I would like to see it in advance of the

9   parties' briefing.  There were a lot of very interesting points

10  made today, and I wish to study up on them before I actually

11  get the papers.

12         Secondly, I don't think on these facts that we need

13  extensions of the page limits.  I think you can get your

14  arguments in as need be.

15         Number three, and this is just perhaps too much to

16  ask, but I'm going to anyway.  If there is out there a more

17  legible copy of the purchase agreement, I would love to see it.

18  I have been able to get things downloaded from ECF, but at this

19  point it's been scanned and it is just not as good.  If it

20  exists, I would like to have it, but it is not urgent.

21         MS. NEUNER:  OK.  We can work together.

22         MR. ROSENBERG:  We can stipulate to the key language

23  of 8, 9.

24         MS. NEUNER:  We will work together to make sure you

25  get one delivered directly to chambers that is a good and

1    legible copy.

2           THE COURT:  Thank you.  I appreciate that indulgence.

3           I believe that is all of the issues on my list.  Hold

4    on one second, please.

5           I will tell you, although this is a little bit of a

6    formality, I believe our calendar lists an initial pretrial

7    conference for the 19th of November.  We will adjourn that.

8    What I will do is issue a scheduling order in the next day or

9    so that has the dates we have just been talking about and also

10   adjourns the pretrial conference for the 19th.  Obviously, it

11   is less important now that we have had this conference.

12          Mr. Rosenberg, is there anything else that you want to

13   call to my attention?

14          MR. ROSENBERG:  No, your Honor.  Thank you.

15          THE COURT:  Ms. Cmielewski, you are allowed to speak

16   as well.

17          MS. CMIELEWSKI:  I have nothing to add.  Mr. Rosenberg

18   here did a wonderful job.

19          THE COURT:  Ms. Neuner, same thing, anything else?

20          MS. NEUNER:  No, your Honor.  Thank you for your time.

21          THE COURT:  Mr. Leibowitz, anything from you, sir?

22          MR. LEIBOWITZ:  Nothing, thank you.

23          THE COURT:  I feel if people are going to sit at

24   counsel table, they ought to have an opportunity to speak.  Mr.

25   Grenell?

1          MR. GRENELL:  Nothing.  Thank you, your Honor.

2          THE COURT:  Thank you all for bringing these issues to

3    light today and thank you for the attention that you have been

4    paying to the documents and the law in this case.  I'm serious

5    when I say these are very interesting issues.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25