**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DRESSER-RAND COMPANY, DRESSER-
RAND CANADA, INC., and DRESSER-RAND
GROUP, INC.,

                    Plaintiffs,

       v.

INGERSOLL RAND COMPANY and
INGERSOLL RAND COMPANY LIMITED,

                  Defendants.

No. 14-CIV-7222 (KPF)

 

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone:   (212) 455-2000
Facsimile:   (212) 455-2502

*Attorneys for Ingersoll Rand Company and*
*Ingersoll Rand Company Limited*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 4

    A.    The Parties ...................................................................................................... 4

    B.    The Equity Purchase Agreement .................................................................. 5

    C.    The *Yara Belle* Lawsuit ................................................................................ 8

    D.    Procedural History ......................................................................................... 9

ARGUMENT ............................................................................................................... 10

    I.    THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(b)(1) BECAUSE UNTIL THE *YARA BELLE* LAWSUIT IS RESOLVED THIS COURT LACKS JURISDICTION TO DETERMINE INGERSOLL RAND'S ALLEGED DEFENSE OBLIGATION UNDER THE EPA ........... 10

    A.    The EPA Is A Contract And Its Indemnification And Defense Provisions Must Be Interpreted Strictly ........................................................................ 11

    B.    Plaintiffs Have Failed To Adequately Allege Any Present Defense Obligation Under The EPA With Respect To The *Yara Belle* Lawsuit ....................................... 14

        1.    The EPA Provides Ingersoll Rand With The Opportunity, Not The Obligation, To Take Over A Defense ................................................. 14

        2.    The EPA Requires Real-Time Defense-Cost Reimbursement Only If Dresser-Rand Is "Entitled" To Indemnification .................................. 15

    II.    ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE JURISDICTION OVER DRESSER-RAND'S CLAIM FOR DECLARATORY JUDGMENT AND DISMISS IT UNDER RULE 12(b)(1) ............. 19

    A.    This Court Has Discretion To Decline Jurisdiction .................................... 19

    B.    Discretionary Factors Strongly Weigh In Favor Of This Court Declining To Exercise Jurisdiction Over This Action ................................................. 19

    III.    ALTERNATIVELY, DRESSER-RAND'S CLAIMS FOR BREACH OF CONTRACT AND ANTICIPATORY BREACH OF CONTRACT SHOULD BE DISMISSED UNDER RULE 12(b)(6) ...................................................... 22

    A.    Dresser-Rand Has Failed Adequately To Allege A Breach Of The EPA With Respect To Ingersoll Rand's Alleged Defense Obligation .............................. 23

    B.    Dresser-Rand Has Likewise Failed To Allege Adequately Anticipatory Breach Of The EPA With Respect To Ingersoll Rand's Alleged Defense Obligation ................................................................................ 24

CONCLUSION ............................................................................................................. 25

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Abbott Labs v. Gardner*, 387 U.S. 136 (1967) ............................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 22

*ATSI Commc'ns, Inc. v. Shaar Fund*, 493 F.3d 87 (2d Cir. 2007) ............................. 4, 25

*Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131 (N.Y. 2006) ................................ 13

*Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416 (S.D.N.Y. 1991) .................. 12

*Bank of New York Trust Co., N .A. v. Franklin Advisers, Inc.*, 726 F.3d 269
    (2d Cir. 2013) .......................................................................................... 12

*Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238
    (E.D.N.Y. May 11, 2012) ........................................................................ 13, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 22

*Bellefleur v. Newark Beth Israel Med. Ctr.*, 888 N.Y.S.2d 81 (N.Y. App. Div. 2009) ............... 12

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187 (N.Y. 2008) ............. 18

*CGI Solutions LLC v. Sailtime Licensing Grp., LLC*, No. 05 CIV. 4120,
    2005 WL 3097533 (S.D.N.Y. Nov. 17, 2005 ............................................... 19

*Daebo Int'l Shipping Co. v. Ams. Bulk Transp. Ltd.*, No. 12 CIV. 7960 PAE,
    2013 WL 2149595 (S.D.N.Y. May 17, 2013) ............................................. 22

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) ................................ 19

*Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002) ............... 20, 21

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136 (2d Cir. 2014) ............... 13

*First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998) ............... 23

*Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793 (2d Cir. 2011) ................... 23

*Highbridge Dev. BR, LLC v. Diamond Dev., LLC*, 888 N.Y.S.2d 654
    (N.Y. App. Div. 2009) ............................................................................ 24

*Inner City Redevel. Corp. v. Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29
    (N.Y. App. Div. 2010) ............................................................................ 12

*Joseph P. Carrara & Sons, Inc. v. A.R. Mack Const. Co., Inc.*, 931 N.Y.S.2d 813
(N.Y. App. Div. 2011)......................................................................... 24

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................... 10

*Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469 (2d Cir. 1999) ........................ 11, 15

*Merrill Lynch/WFC/L, Inc. v. Cont'l Cas. Co.*, 950 N.Y.S.2d 492 (N.Y. Sup. Ct. 2012) ...... 13, 16

*New York v. U.S. Dep't of Health & Human Servs.*, No. 07 CIV. 8621,
2008 WL 5211000 (S.D.N.Y. Dec. 15, 2008) ................................................... 11

*Niagara Mohawk Power Corp. v. Hudson River-Black River Reg'ng Dist.*,
673 F.3d 84 (2d Cir. 2012) .................................................................... 19

*Prestige Brands Inc. v. Guardian Drug Co.*, 951 F. Supp. 2d 441 (S.D.N.Y. 2013) .................. 22

*Regina Sticks Ltd. v. Saskatchewan Gvn't Ins.* (1993), 18 C.C.L.I. (2d) 58 (Sask. C.A.)............ 18

*Rosen v. Mega Bloks Inc.*, No. 06 CIV 3474, 2009 WL 929474
(S.D.N.Y. Apr. 7, 2009) ...................................................................... 13

*Simmonds v. INS*, 326 F.3d 351 (2d Cir. 2003) ....................................... 10, 11

*St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12 CIV. 6322 JFK,
2014 WL 1468452 (S.D.N.Y. Apr. 11, 2014) ................................................... 11

*Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216 (S.D.N.Y. 1978)........................ 15

*Tokyo Tanker Co. v. Etra Shipping Corp.*, 536 N.Y.S.2d 75 (N.Y. App. Div. 1989) .................. 12

*World-Link, Inc. v. Citizens Telecom. Co.*, No. 99CIV3054, 2000 WL 1877065
(S.D.N.Y. Dec. 26, 2000)...................................................................... 18

*Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276 (S.D.N.Y. 1991) .................... 23

**Statutes**

28 U.S.C. § 2201(a) ......................................................................... 19

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................... 1, 11, 19, 23

Federal Rule of Civil Procedure 12(b)(6) ...................................... 1, 23

Defendants Ingersoll Rand Company and Ingersoll Rand Company Limited ("Defendants" or "Ingersoll Rand") respectfully submit this memorandum of law, together with the Declaration of Noah M. Leibowitz, Esq. and annexed exhibits, in support of their motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint is premature.  There is no ripe, justiciable case or controversy for this Court to decide.  By their Complaint, Plaintiffs Dresser-Rand Company, Dresser-Rand Canada, Inc. and Dresser-Rand Group Inc. (collectively, "Plaintiffs" or "Dresser-Rand") ask this Court to declare that the Equity Purchase Agreement (the "EPA")—a 2004 agreement pursuant to which Ingersoll Rand sold its interest in Dresser-Rand to a private equity company—obligates Ingersoll Rand to indemnify *and* defend Dresser-Rand with respect to a separate Canadian lawsuit that is premised largely on conduct by Plaintiff Dresser-Rand Canada, Inc.  At the conference held in anticipation of the instant motion, counsel for Dresser-Rand agreed that until liability is determined in the underlying Canadian lawsuit, the Complaint is premature with respect to Plaintiffs' central claim for indemnification under the EPA.  Ex. 12 (Pre-Motion Conf. Tr., dated Oct. 28, 2014) at 8:14–25 ("The indemnity issue clearly is premature . . . .  We are in agreement that it is premature to decide the duty to indemnify now.").[1]

The narrow issue presented by the instant motion, then, is Plaintiffs' attempt to draw a distinction between their concededly premature claim that Ingersoll Rand may, someday, have a "duty to indemnify," and their professedly justiciable claim that Ingersoll Rand has a present "duty to defend."  As explained below, no such distinction is tenable; under the language

---

[1] All references to "Ex. __" refer to exhibits annexed to the Declaration of Noah M. Leibowitz, Esq., filed herewith.

1

of the EPA, the absence of any existing entitlement to indemnification renders Plaintiffs' claim for immediate reimbursement of defense costs equally premature.

The decade-old EPA contains no "duty" to defend. Under the EPA, rather, Ingersoll Rand has the "opportunity" to assume Dresser-Rand's defense in a third-party lawsuit that Dresser-Rand asserts may result in indemnifiable Products Liability Losses. Ex. 1 (EPA) § 8.1(e) (section titled "Notice and Opportunity to Defend"). If Ingersoll Rand declines this opportunity, Dresser-Rand is responsible for its own defense and defense costs. Again, Plaintiffs' counsel conceded this at the pre-motion conference. Ex. 12(Pre-Motion Conf. Tr.) at 4:3–6 ("[O]n the defense obligation, section 8.1(e) of the equity purchase agreement provides the notice and opportunity to defend. It says opportunity, it doesn't say duty."). Further, under the EPA, the indemnifying party is obligated to reimburse defense costs and expenses periodically as incurred *only* where the indemnitee is "entitled" to such indemnification or reimbursement. Ex. 1 (EPA) § 8.1(f) ("On each occasion that any Indemnified Party shall be entitled to indemnification or reimbursement . . . ."). And thus is revealed the crux of Plaintiffs' difficulty. Plaintiffs' concession that their claim for indemnification is premature fatally conflicts with their position that they are presently "entitled" to indemnification for purposes of periodic reimbursement under the EPA.

Even without Plaintiffs' concession, however, the EPA's indemnification provisions would preclude an immediate claim for periodic reimbursement of defense fees in the underlying case. The EPA's definition of "Products Liability" specifically excludes indemnification by Ingersoll Rand "to the extent based on acts or omissions . . . following the Closing." Ex. 1 (EPA) § 9.10(g). Indeed, the EPA provides that *Ingersoll Rand* must be indemnified for "the conduct of business of any member of the Dresser-Rand Group after the

2

Closing Date." EPA § 8.1(b). The third-party *Yara Belle* suit at issue here focuses on Dresser-Rand's conduct with respect to servicing a nitric acid expander at a Canadian plant *for nearly ten years following the EPA's Closing*. In fact, two of the three claims asserted in the *Yara Belle* lawsuit are asserted solely against Dresser-Rand. Given the allegations in the *Yara Belle* lawsuit, Dresser-Rand cannot plead facts or circumstances showing that it is presently "entitled" to indemnification; its claim for immediate reimbursement of defense costs is therefore premature.

Not only does this Court lack jurisdiction to decide Dresser-Rand's request for immediate defense fees, but it would be highly problematic for this Court to adjudicate issues of fact regarding the fire at the Yara Belle plant and accusations of fault while the underlying Canadian case is pending, which entertaining Plaintiffs' Complaint now would necessitate. As Plaintiffs' counsel again conceded, the determination of liability (if any) to Yara Belle *and* any issues of liability as between Ingersoll Rand and Dresser-Rand is precisely what the Canadian court will adjudicate. Ex. 12 (Pre-Motion Conf. Tr.) at 6:17–23 ("What happens in the Canadian court is the Canadian court is going to determine basically who is liable for the fire and resulting damages that occurred at the Yara Belle plant, be it Ingersoll-Rand or Dresser-Rand, and they are also going to determine what we would call cross-claim issues. They call it a little different up in the Canadian system. But they would determine cross-claim issues."). Under principles of international comity, this Court should not step on the toes of its Canadian sister by adjudicating the issue of whether Dresser-Rand is "entitled" to indemnification before the issues of liability to Yara Belle and the cross-claims between Dresser-Rand and Ingersoll Rand are determined in the underlying action.

Because there is no presently justiciable dispute between the parties, Plaintiffs lack standing and this Court lacks jurisdiction. Moreover, Plaintiffs' claims on their face fail to

state a valid cause of action.  The Court should dismiss the Complaint.[2]

## BACKGROUND

### A.  The Parties

Ingersoll Rand is a diversified, global company that manufactures, distributes and services industrial and climate-control products and equipment ranging from air conditioners to furnaces to industrial filters, power tools, pumps and air compressors, for use in homes and other buildings.  Ex. 6 (IR 2013 Form 10-K, dated Feb. 14, 2014) at 3–4.[3]  Its well-recognized brands include Trane, Thermo King, Club Car and American Standard.  *Id.*  In 2013, Ingersoll Rand's global net revenues exceeded $12.3 billion.  *Id.* at 20.

Dresser-Rand is also a global company.  It manufactures and supplies oil, gas, petrochemical and other industrial equipment.  Ex. 11 (DRC Press Release, dated Sept. 21, 2014).  That "Rand" appears in both companies' names is not coincidence.  Dresser-Rand Company was originally formed in 1986 as a partnership between Dresser Industries, Inc. and Ingersoll-Rand.  Ex. 2 (DRC Form S-1, dated May 16, 2005) at 7.  In 2013, Dresser-Rand's global revenues exceeded $3 billion.  Ex. 7 (DRC 2013 Form 10-K, dated Mar. 14, 2014) at 34.  Recently, Dresser-Rand announced that it has definitively agreed to sell itself for $7.6 billion in cash to Siemens AG; the sale is expected to close in summer 2015.  Ex. 11 (DRC Press Release, dated Sept. 21, 2014).

---

[2] At the Pre-Motion Conference this Court alluded to the possibility of retaining jurisdiction and placing this case on a suspense calendar.  Ingersoll Rand, however, seeks a complete dismissal.  In addition to the issue of jurisdiction, the underlying Canadian case could take several years to be fully adjudicated.  When it does end, it is very likely the parties will have the facts and decision they need to resolve the indemnification issues on their own.  Keeping this case pending in suspense in the meantime will create bureaucratic issues for the Court and reporting and disclosure issues for the parties, which we submit would be better to avoid.

[3] Defendants Ingersoll Rand Company and Ingersoll Rand Company Limited are subsidiaries of Ingersoll Rand plc, a publicly traded company.  Ex. 6 (IR 2013 Form 10-K, dated Feb. 14, 2014) at 46, F-48.  On a motion to dismiss, a court may consider "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007).

### B.  The Equity Purchase Agreement

On August 25, 2004, FRC Acquisitions LLC on behalf of itself and other named Buyers ("FRC" or "Buyers") and Ingersoll-Rand Company Limited on behalf of itself and other named Sellers (the "Sellers") entered into the Equity Purchase Agreement (the "EPA").  Ex. 1 (EPA).  Pursuant to the EPA, the Sellers sold their ownership interest in Dresser-Rand to FRC, which was affiliated with First Reserve, a private equity firm, for approximately $1.13 billion. *Id.*; Ex. 2 (DRC Form S-1, dated May 16, 2005) at 7.  The transaction closed on October 29, 2004 (the "Closing Date").  *Id.*

Section 8 of the EPA contains indemnification provisions running to and from both the Sellers and the Buyers with respect to events and the parties' conduct before and after the Closing Date.  *See* Ex. 1 (EPA) § 8(a), (b).  Section 8 also includes a provision that obligates the Sellers to provide a defense for a limited category of defined "liabilities" (specifically, "Asbestos Liabilities") but provides an "opportunity" to defend as to all other categories (including "Products Liabilities").  *Id.* § 8(e).  This Section also requires real-time reimbursement for defense costs, but only where the party seeking reimbursement is "entitled" to indemnification.  *Id.* § 8(f).

Specifically, Section 8.1(a) provides for indemnification by the Sellers:

(a) Indemnification by the Sellers. ***Subject to the limits set forth in this Section 8.1***, the Sellers agree, jointly and severally, to indemnify, defend and hold the Buyers and their Affiliates (including, after the Closing Date, the Dresser-Rand Group)[4] . . . harmless from and in respect of any and all losses, claims, liabilities, damages, fines, penalties, costs (in each case including reasonable out-of-pocket expenses (including, without limitation, reasonable fees and expenses of counsel)[)] (collectively, "Losses"), that they may incur arising out of, relating to,

---

[4] "Dresser-Rand Group" is defined in the EPA to include Dresser-Rand Company, Dresser-Rand Canada, Inc. and  the subsidiaries of Dresser-Rand Company. Ex. 1 (EPA) § 2.2.  Dresser-Rand Group, Inc. was incorporated in Delaware in October 2004 and commenced operations the day after the Closing Date. Ex. 2 (DRC Form S-1, dated May 16, 2005) at 7, F-9.  Dresser-Rand Group, Inc. was formed from "Dresser-Rand Company and its direct and indirect subsidiaries, Dresser-Rand Canada, Inc. and Dresser-Rand GmbH." *Id.* at 1.

or due to any . . . (iv) Products Liabilities Losses.  Ex. 1 (EPA) § 8.1(a) (emphasis added).

"Products Liabilities" is defined in Section 9 of the EPA as liabilities related to Products (*i.e.*, "products shipped by any member of the Dresser-Rand Group or any predecessor thereof," *id.* § 2.20(a)) shipped prior to the Closing Date unless such liabilities are "based on acts or omissions" following the Closing Date:

> (g) "Products Liability" (and collectively "Products Liabilities") means, to the extent related to Products shipped prior to the Closing Date and ***except to the extent based on acts or omissions*** (excluding omissions in respect of an alleged failure to warn based solely on events, activities or occurrences prior to the Closing) ***following the Closing***, any claim or Proceeding of a third party against Dresser-Rand Group . . . to the extent such claim or Proceeding alleges personal injury or property damage . . . . Ex. 1 (EPA) § 9.10(g) (emphasis added).

Further, Section 8.1(b) obligates the *Buyers* to indemnify the *Sellers* (*i.e.*, Ingersoll Rand) for Losses due to Dresser-Rand's post-Closing "conduct of business":

> (b) Indemnification by the Buyers. Subject to the limits set forth in this Section 8.1, the Buyers jointly and severally agree to indemnify, defend and hold the Sellers harmless from and in respect of any and all Losses that they may incur arising . . . (ii) as a result of the ***conduct of business of any member of the Dresser-Rand Group after the Closing Date***.  Ex. 1 (EPA) § 8.1(a) (emphasis added).

Section 8.1(e) obligates the Sellers to assume the defense of all "Asbestos Liabilities" but in all other circumstances provides the party from whom indemnification is sought an opportunity to choose to assume the defense:

> (e) Notice and Opportunity to Defend. If there occurs an event which a party asserts is an indemnifiable event pursuant to Sections 8.1(a) . . . the party or parties seeking indemnification (the "Indemnified Party") shall notify the other party or parties obligated to provide indemnification (the "Indemnifying Party") promptly. . . . In case any such action shall be brought against any party seeking indemnification and it shall notify the Indemnifying Party of the commencement thereof, the Indemnifying Party ***shall be entitled to participate therein and to***

6

***assume the defense thereof*** with counsel selected by the Indemnifying Party and, after notice from the Indemnifying Party to such party or parties seeking indemnification of ***such election so to assume the defense thereof***, the Indemnifying Party shall not be liable to the party or parties seeking indemnification hereunder for any legal expenses of other counsel or any other expenses subsequently incurred by such party or parties in connection with the defense thereof; ***provided, however, that Sellers shall assume the defense of all Asbestos Liabilities***. . . .  ***If*** the Indemnifying Party fails to assume the defense of a third party claim, the Indemnified Party may assume the defense of any such claim with counsel selected by the Indemnified Party.  Ex. 1 (EPA) § 8.1(e) (emphasis added).

Significantly, only when a party "shall be entitled to indemnification" must the

indemnifying party reimburse defense costs in real time:

(f) <u>Payment</u>. . . .  ***If*** any Indemnified Party ***shall be entitled to indemnification*** under this Article VIII . . . the Indemnifying party shall pay the Indemnified Party's costs and expenses arising as a result of a proceeding ***directly relating to an indemnifiable Loss*** (including, without limitation, any reasonable fees paid to witnesses), periodically incurred.  Ex. 1 (EPA) § 8.1(f) (emphasis added).

The amount of indemnifiable Losses is limited to exclude all lost profits, consequential, and

other special damages:

(g) <u>Special Damages</u>. No Indemnified Party will be entitled to indemnification pursuant to this Agreement for punitive damages or for lost profits, diminution in value, consequential, exemplary or special damages.  Ex 1 (EPA) § 8.1(g).

Following the Closing Date, Dresser-Rand Group Inc. commenced

operations as a Delaware corporation, and on August 4, 2005, went public through an

Initial Public Offering (the "IPO").  Ex. 2 (DRC Form S-1, dated May 16, 2005) at 7,

F-9; Ex. 3 (DRC Press Release, dated Aug. 4, 2005).[5]

---

[5] As noted in the Pre-Motion Conference held before this Court on October 28, 2014, Ingersoll Rand has been unable to determine which entity or entities, following the IPO, currently hold the indemnification obligations owed to Ingersoll Rand undertaken by FRC as Buyers under the EPA.  Ex. 12 (Pre-Motion Conf. Tr.) at 17:17–25. Counsel for Dresser-Rand stated that Dresser-Rand will respond to Ingersoll Rand's request for indemnification (originally sent to FRC on August 12, 2014, *see* Ex. 9), but no response has yet been received.

### C. The *Yara Belle* Lawsuit

In August 2013, Yara Belle Plaine Inc., the owner-operator of a nitrogen fertilizer plant in Saskatchewan, Canada, filed a lawsuit before the Court of Queen's Bench for Saskatchewan. That lawsuit, styled *Yara Belle Plaine Inc. v. Ingersoll-Rand Company, Dresser-Rand Company, Dresser Rand Group, Inc. and Dresser-Rand Canada, Inc.* ("*Yara Belle*"), asserts claims against both Dresser-Rand and Ingersoll Rand. Ex. 4 (*Yara Belle* Statement of Claim). The six-page *Yara Belle* statement of claim (*i.e.*, complaint) alleges that a nitric acid expander (the "Expander"), manufactured by *either* Ingersoll Rand or Dresser-Rand in approximately 1971, purchased by Yara Belle in 2002, and maintained and serviced by Dresser-Rand Canada, Inc. between at least February or March 2004 and the end of July 2012, "experienced a catastrophic failure" that resulted in a fire and damage to Yara Belle's facility on August 21, 2012 (the "Expander incident"). *Id.* ¶¶ 8, 14, 16.[6]

After purchasing the Expander, Yara Belle retained Dresser-Rand Canada to "disassemble, overhaul and reassemble the Expander as well as its rotor and spare rotor assembly." *Id.* ¶ 9. Yara Belle alleges that in 2009, a particular rotor (referred to as "Rotor A" in the statement of claim) was removed and "inspected and repaired" by Dresser-Rand Canada. *Id.* ¶ 10. The spare rotor ("Rotor B") was put into service from 2009 until July 2012, while Rotor A was stored as a spare after Dresser-Rand Canada inspected it and reported that the first- and second-stage disc assemblies in Rotor A were "okay to reuse." *Id.* ¶¶ 10–13. Rotor A was reinstalled in the Expander in July 2012 and the Expander went back into service "at the end of July 2012." *Id.* ¶ 13. Yara Belle alleges that on August 21, 2012, the Expander experienced a "catastrophic failure" leading to a fire at the plant. *Id.* ¶¶ 14–17.

---

[6] The Dresser-Rand Complaint here notably omits the significant portions of the *Yara Belle* statement of claim that allege Dresser-Rand's fault. *E.g.*, Compl. ¶ 18, 27.

The *Yara Belle* statement of claim alleges $32 million (CAD) in damages—$13 million for alleged "property damage" and $19 million for alleged "business interruption damages" related to the Expander incident. *Id.* ¶¶ 27–28. Yara Belle asserts three claims. Two are asserted solely against Dresser-Rand—specifically, for negligence and breach of contract related to Dresser-Rand Canada's servicing of the Expander. The other claim is asserted against both Ingersoll Rand and Dresser-Rand for breach of the duty to warn with respect to stress relaxation cracking in the rotor disc's steel alloy. *Id.* ¶¶ 18–19, 29–30, 33. The *Yara Belle* lawsuit is proceeding in the Saskatchewan court before Madam Justice J.L. Pritchard. Ingersoll Rand will soon file its statement of defence and its statement of cross claims against the named Dresser entities; Dresser-Rand stated that its cross claims against Ingersoll Rand will also be at issue in the Canadian proceeding. Ex. 12 (Pre-Motion Conf. Tr.) at 10:10–21.

### D. Procedural History

Yara Belle served its complaint on Ingersoll Rand on February 6, 2014. Ex. 5 (CT Corp. Service). On February 10, 2014, Ingersoll Rand received a letter from Dresser-Rand purporting to notify Ingersoll Rand of its indemnification obligations with respect to the *Yara Belle* suit. Compl. Ex. C. Between February and early September 2014, Ingersoll Rand and Dresser-Rand engaged in discussions by letter, email and telephone during which Ingersoll Rand consistently explained that prior to resolution of the *Yara Belle* lawsuit, it has no indemnification or defense obligation to Dresser-Rand under the EPA. *E.g.*, Exs. 8, 10 (IR Correspondence).

The Complaint in this case was served on Ingersoll Rand on September 12, 2014.[7] The Complaint asserts three claims against Ingersoll Rand: (1) breach of contract as to indemnification and defense under the EPA; (2) anticipatory breach of contract as to

---

[7] Interestingly, it was less than two weeks later that Dresser-Rand publicly announced its sale to Siemens. Ex. 11 (DRC Press Release, dated Sept. 21, 2014).

indemnification and defense under the EPA; and (3) declaratory judgment as to indemnification and defense under the EPA.  Compl. ¶ 43–55.  This Court granted Ingersoll Rand's request for a pre-motion conference with respect to its proposed motion to dismiss the Complaint (the "Pre-Motion Conference").  At the Pre-Motion Conference, counsel for Dresser-Rand explained that its position with respect to Ingersoll Rand's alleged indemnification obligations had materially changed: "The indemnity issue clearly is premature. . . . [T]his is a little different from what we pled in the complaint. . . . We are in agreement that it is premature to decide the duty to indemnify now."  Ex. 12 (Pre-Motion Conf. Tr.) at 4:21–23; 6:17–8:25.  Ingersoll Rand now brings the instant motion to dismiss the Complaint as narrowed at the Pre-Motion Conference.[8]

## ARGUMENT

## I.   THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(b)(1) BECAUSE UNTIL THE *YARA BELLE* LAWSUIT IS RESOLVED THIS COURT LACKS JURISDICTION TO DETERMINE INGERSOLL RAND'S ALLEGED DEFENSE OBLIGATION UNDER THE EPA

Dresser-Rand bears the burden of proving that this Court has subject matter jurisdiction.  *E.g.*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  It cannot meet this burden.  This Court lacks jurisdiction over the remaining issue in this case—*i.e.*, whether Ingersoll Rand has any defense obligation under the EPA to Dresser-Rand with respect to the *Yara Belle* lawsuit—because it is premature and not ripe for review.  *See, e.g.*, *Simmonds v. INS*, 326 F.3d 351, 357–58 (2d Cir. 2003).  Specifically, the issue is both constitutionally and prudentially unripe, either of which warrants dismissal of the Complaint.  *See id.*  Constitutional ripeness "refers to the basic requirement under the Case or Controversy Clause of Article III that the question at issue emanate from an actual dispute."  *Id.* at 358; *New York v. U.S. Dep't of*

---

[8] Ingersoll Rand is not moving to dismiss the pleaded indemnity claims in the Complaint as Ingersoll Rand understands Dresser-Rand to have withdrawn those claims at the Pre-Motion Conference.  In any event, these claims would fail on the same grounds of prematurity, as Dresser-Rand's counsel concedes.

*Health & Human Servs.*, No. 07 CIV. 8621, 2008 WL 5211000, at *10 (S.D.N.Y. Dec. 15,

2008).  An "actual dispute" exists where "'the facts alleged, under all the circumstances, show

that there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality' to justify judicial resolution."  *Marchi v. Bd. of Coop. Educ.

Servs.*, 173 F.3d 469, 478 (2d Cir. 1999) (citation omitted)).  Prudential ripeness is "a tool that

courts may use to enhance the accuracy of their decisions," because when a case is not

prudentially ripe "it means that the case will be *better* decided later" even if the case is

constitutionally ripe.  *Simmonds*, 326 F.3d at 357 (emphasis in original) ("And so we ask: (1)

whether an issue is fit for judicial decision and (2) whether and to what extent the parties will

endure hardship if decision is withheld." (citing *Abbott Labs v. Gardner*, 387 U.S. 136, 148–49

(1967))).  These ripeness requirements apply equally to claims for declaratory judgment as to

other claims, such as for breach of contract.  *See, e.g.*, *Simmonds*, 326 F.3d at 357–59.

   Here, Dresser-Rand cannot meet its burden.  Under the plain language of the

EPA, whether Ingersoll Rand has any obligation to Dresser-Rand to assume its defense or to

reimburse it in real-time for attorneys' fees with respect to the *Yara Belle* lawsuit is neither

constitutionally nor prudentially ripe.  The Complaint must be dismissed.

### A.  The EPA Is A Contract And Its Indemnification And Defense Provisions Must Be Interpreted Strictly

   The EPA is a contract and as such, its indemnification and defense provisions

must be interpreted strictly.  *St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12 CIV. 6322

JFK, 2014 WL 1468452, at *4 (S.D.N.Y. Apr. 11, 2014) ("Indemnification clauses should be

read to implement the parties' intentions, and must be strictly construed to avoid inferring duties

that they did not intend to create." (applying New York contract law) (citing *Bank of New York

Trust Co., N.A. v. Franklin Advisers, Inc.*, 726 F.3d 269, 283–84 (2d Cir. 2013))).  The specific

language of these provisions governs the contracting parties' obligations.  *See, e.g.*, *Tokyo Tanker Co. v. Etra Shipping Corp.*, 536 N.Y.S.2d 75, 78 (N.Y. App. Div. 1989) (indemnification provision "may not reasonably be read to place upon [defendant] a burden which [it] did not expressly assume and which it is inconceivable [it] would have accepted").  There is no common law "duty to defend"; accordingly, a contractual indemnitor has no duty to defend an indemnitee unless the parties' contract explicitly obligates such a defense.  *See Inner City Redevel. Corp. v. Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29, 30 (N.Y. App. Div. 2010).  Unless the parties' contract explicitly provides otherwise, therefore, New York courts apply the presumption that if a putative contractual indemnitee is "not entitled to indemnification at this juncture, [it is] also not entitled to a defense."  *Bellefleur v. Newark Beth Israel Med. Ctr.*, 888 N.Y.S.2d 81, 84 (N.Y. App. Div. 2009).

      This presumption and the strict interpretation of contractual defense obligations is in contrast to the much broader interpretation New York courts apply to defense provisions in liability insurance policies.  *Id.*  Generally, New York courts presume that an insurer *must* provide a defense to its insured with respect to a third-party lawsuit against the insured if a comparison of the policy and the third-party complaint reveals that liability for *any* of the claims in the complaint *may* be covered by the insurance policy.  *E.g.*, *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1423–24 (S.D.N.Y. 1991) ("Under . . . New York . . . law, a liability insurer's duty to supply a defense to its insured in an underlying action is generally defined solely by a comparison of the allegations of the underlying complaint to the provisions of the insurance policy (the 'four corners of the complaint' rule)."), *jmt. entered*, No. 86 CIV. 9626, 1993 WL 427035 (S.D.N.Y. Oct. 15, 1993); *see also Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014), *reh'g denied* (July 28, 2014) ("In New York, an

insurer's duty to defend is 'exceedingly broad' . . . .").  Only if an insurer can prove that that *none* of the claims in the third-party complaint *could possibly* result in liability under the insurance policy will the insurer be relieved of its duty to defend its insured.  *See Avondale*, 774 F. Supp. at 1424; *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (N.Y. 2006).[9]

Outside of the insurance context, however, contracts that contain indemnification and defense provisions—like the EPA—generally do not obligate an indemnifying party to act like an insurer.  Instead, such contracts obligate parties to indemnify or defend only in accordance with the contract's specific terms, and a party's defense obligations (if any) are presumed to be *no broader* than that party's indemnification obligations (again, if any).  *See, e.g.*, *Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238, at *5 (E.D.N.Y. May 11, 2012) (applying New York law) ("Where, as here, the contractual indemnitor is not an insurer, the indemnitor's duty to defend is substantially narrower."); *Merrill Lynch/WFC/L, Inc. v. Cont'l Cas. Co.*, 950 N.Y.S.2d 492, *5 (N.Y. Sup. Ct. 2012) ("Because [defendant] is not an insurer, 'its duty to defend its contractual indemnitee is no broader than its duty to indemnify'." (citation omitted)).[10]

---

[9] In essence, then, such a liability policy includes "litigation insurance."  *Avondale*, 774 F. Supp. at 1424. Accordingly, the Second Circuit has noted, as did this Court at the Pre-Motion Conference, that in the insurance context, insurance coverage related to a third-party suit may be declared while the third-party suit is ongoing.  *See Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992).  Similarly, contractual indemnification obligations may be declared while an underlying suit is ongoing where the contract so provides.  Plaintiffs here, however, have conceded that a declaration regarding indemnification is premature under the EPA prior to resolution of the *Yara Belle* lawsuit.  Ex. 12 (Pre-Motion Conf. Tr.) at 6:17–8:25.

[10] Certain cases addressing the justiciability of a declaratory judgment action have not found the distinction between a contractual indemnity and an insurance policy to make a difference as to whether a claim for declaratory judgment on an *indemnification obligation* is justiciable.  *See Rosen v. Mega Bloks Inc.*, No. 06 CIV 3474, 2009 WL 929474, at *4 (S.D.N.Y. Apr. 7, 2009) ("Nor does the Court view the fact that this is a contractual indemnity obligation—rather than an insurance policy—to be a distinction that affects the 'case or controversy' analysis."), *report and recommendation adopted*, No. 06 CIV. 3474 LTS/GWG, 2009 WL 1392538 (S.D.N.Y. May 19, 2009). Dresser-Rand relied on *Mega Bloks* at the Pre-Motion Conference, but that case is different from ours.  There, the court determined that the request for declaratory judgment as to Mega Bloks' defense obligations with respect to pending litigations was justiciable where (i) the court had to decide the indemnification question with respect to *completed* litigations regardless, (ii) the ultimate issues relevant to indemnification would *not* be decided in the underlying lending litigations, and (iii) the court would have to "decide issues underpinning the indemnification

### B.  Plaintiffs Have Failed To Adequately Allege Any Present Defense Obligation Under The EPA With Respect To The *Yara Belle* Lawsuit

#### 1.    The EPA Provides Ingersoll Rand With The Opportunity, Not The Obligation, To Take Over A Defense

The EPA does not obligate Ingersoll Rand to assume the defense of Dresser-Rand with respect to the *Yara Belle* lawsuit.  Instead, the EPA contemplates only an "opportunity" to assume the defense of third-party suits.  Ex. 1 (EPA) § 8.1(e).  Counsel for Dresser-Rand acknowledged this at the Pre-Motion Conference: "Briefly on the defense obligation, section 8.1(e) of the equity purchase agreement provides the notice and opportunity to defend.  It says opportunity, it doesn't say duty."  Ex. 12 (Pre-Motion Conf. Tr.) at 4:3–6.

Under Section 8.1(a) of the EPA, the Sellers (*i.e.*, Ingersoll Rand) agreed "to indemnify, defend and hold the Buyers harmless . . . [s]ubject to the limits set forth in this Section 8.1."  Ex. 1 (EPA) § 8.1(a).  The "limits" on Ingersoll Rand's agreement to defend the Buyers are contained in Section 8.1(e), titled "Notice and Opportunity to Defend."  There, the EPA permissively provides that Ingersoll Rand "shall be entitled to participate . . . and to assume the defense" of an action brought against Dresser-Rand for an event that Dresser-Rand "asserts is an indemnifiable event."  *Id.* § 8.1(e).  The Section explains the consequences "if" the indemnifying party assumes the defense, as well as "if" the indemnifying party does not assume the defense—each a distinct possibility.  *Id.*  By contrast, the same subsection of the EPA provides that in the specific case of Asbestos Liabilities, Ingersoll Rand "*shall* assume the defense." *Id.* (emphasis added).  The only consequence, moreover, if Ingersoll Rand does not

---

claims as part of the adjudication of even the non-indemnification claims in this case, such as the fraud claim." *Id.* None of this applies here. Moreover, unlike in *Mega Bloks*, Plaintiffs here have acknowledged that the indemnification claim itself is premature. Ex. 12 (Pre-Motion Conf. Tr.) at 6:17–8:25.

Crucially, this and similar cases do not vitiate the contract/policy distinction that pertains to a *defense obligation*. Rather, courts applying New York law have repeatedly and consistently emphasized that a contractual indemnitor's defense obligation is determined solely by the terms of the contract and unless otherwise specified, where the indemnitor "is not an insurer, his duty to defend is coextensive with his duty to indemnify." *Barbagallo*, 2012 WL 1664238, at *5.

assume the defense of a third party claim is that Dresser-Rand "may assume the defense of any such claim with counsel selected" by Dresser-Rand.  *Id.*  Under the plain language of the EPA, and as counsel for Dresser-Rand has properly conceded, Ingersoll Rand does not have and could never have an *obligation* to assume the defense of Dresser-Rand with respect to the *Yara Belle* lawsuit.  Thus, Ingersoll Rand could not have breached or anticipatorily breached this nonexistent duty to defend.  *See Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978) ("Clearly a breach can only occur when one is under an obligation to perform in the first instance.").  There is thus nothing for this Court to declare regarding an affirmative duty for Ingersoll Rand to take over Dresser-Rand's defense in the *Yara Belle* lawsuit.  *See Marchi*, 173 F.3d at 478 (a "hypothetical or abstract dispute" cannot be a ripe Article III "case or controversy'").  Dresser-Rand's Complaint, which is now out-of-date in light of counsel's concessions at the Pre-Motion Conference, seeks a ruling that Ingersoll Rand has a "duty to defend" Plaintiffs.  Compl. ¶ 54.  This claim should be dismissed.

2. The EPA Requires Real-Time Defense-Cost Reimbursement Only If Dresser-Rand Is "Entitled" To Indemnification

The EPA obligates an indemnifying party to reimburse an "indemnified party['s]" defense costs in real-time *only* if that indemnified party "shall be entitled" to indemnification.  Ex. 1 (EPA) § 8.1(f).[11]  Specifically, "[i]f any Indemnified Party *shall be entitled to indemnification* under this Article VIII, . . . the Indemnifying Party shall pay the Indemnified Party's costs and expenses arising as a result of a proceeding directly relating to an indemnifiable Loss . . . periodically as incurred."  *Id.* (emphasis added).  In other words, even where defense costs and expenses may eventually be reimbursed as part of indemnification for an established

---

[11] Counsel for Dresser-Rand impliedly conceded this as well, acknowledging that "if they [Ingersoll Rand] don't pick up the defense *and there is an indemnity obligation*, they owe the defense legal fees."  Ex. 12 (Pre-Motion Conf. Tr.) at 4:6–10 (emphasis added).

"Loss," there is no preceding obligation to pay those amounts in real-time unless the party seeking payment "shall be entitled" to indemnification.

Dresser-Rand cannot plead that it is currently "entitled" to indemnification with respect to the *Yara Belle* lawsuit.  Most tellingly, counsel for Dresser-Rand has conceded that any determination as to indemnification is premature: "We are in agreement that it is premature to decide the duty to indemnify now."  Ex. 12 (Pre-Motion Conf. Tr.) at 6:17–8:25.  Instead, counsel for Dresser-Rand explained, whether Dresser-Rand is "entitled" to indemnification with respect to the *Yara Belle* lawsuit can only be determined once the *Yara Belle* lawsuit is resolved: "What happens in the Canadian court is the Canadian court is going to determine basically who is liable for the fire and resulting damages that occurred at the Yara Belle plant . . . .  Once that determination is made on the indemnity, then, unless one party voluntarily acknowledges the obligation and compensates the other, it comes back to this Court for this Court to say, based on what happened in Canada, if you two can't agree on indemnity, it's this Court's role to determine whether there is an indemnity obligation."  *Id.* at 6:17–7:4.

The inquiry need go no further than Dresser-Rand's concessions.  By admitting that *indemnity* cannot be decided now, Dresser-Rand effectively conceded that *defense payments* cannot be decided now.  Under New York law and the EPA, the two duties are *co-extensive*. *See, e.g.*, *Merrill Lynch*, 950 N.Y.S.2d at *5; *Barbagallo*, 2012 WL 1664238, at *5 (where the indemnitor "is not an insurer, his duty to defend is coextensive with his duty to indemnify"). There is no broader defense obligation that can be decided ahead of the indemnity obligation in this case.  Put another way, as this Court rightly recognized at the Pre-Motion Conference, if the Court decided now that Ingersoll Rand has a defense payment obligation, it would effectively be

deciding the ultimate indemnity issue—and Dresser-Rand has already conceded that a ruling on the indemnity issue is not proper now.  *See* Ex. 12 (Pre-Motion Conf. Tr.) at 8:14–25.

Moreover, Dresser-Rand is not presently entitled to indemnification (and may *never* be entitled to indemnification) with respect to the *Yara Belle* lawsuit for several additional reasons.  Ingersoll Rand's indemnification obligation under Section 8 of the EPA is limited to "Losses," and as relevant to the instant action, "Products Liabilities" Losses.  Ex. 1 (EPA) § 8.1(a); Compl. ¶ 32.  "Products Liabilities" Losses excludes Losses based on "acts or omissions . . . following the Closing."  Ex. 1 (EPA) §§ 8.1(a); 9.10(g).  In its underlying statement of claim, Yara Belle asserts three claims, two of which are asserted solely against Dresser-Rand for negligence and breach of contract related to Dresser-Rand Canada's post-Closing servicing of the Expander.  The *Yara Belle* statement of claim alleges that it was Dresser-Rand Canada that serviced the Expander for eight years prior to the alleged Expander incident, and it was Rotor A—which Dresser-Rand Canada had inspected, repaired, and reported was "okay to reuse"—that Yara Belle alleges caused the Expander incident just a few weeks after Dresser-Rand Canada reinstalled it in the Expander.  Ex. 4 (*Yara Belle* Statement of Claim) ¶¶ 9–15.  In other words, the facts alleged in the *Yara Belle* statement of claim indicate that Dresser-Rand's own post-Closing "acts or omissions" caused the Expander incident.  To the extent that this is the determination of the Saskatchewan court (which of course cannot be known until the *Yara Belle* lawsuit is resolved), Dresser-Rand would not be entitled to indemnification.  Accordingly, Dresser-Rand is incapable of pleading now that it is "entitled" to indemnification.[12]

---

[12] Further underscoring that Dresser-Rand may never be "entitled" to indemnification, it may turn out that Ingersoll Rand is the party that deserves to have its defense costs reimbursed.  Section 8.1(b) of the EPA provides that Ingersoll Rand is entitled to indemnification for "any and all Losses that . . . aris[e] . . . (ii) as a result of the conduct of business of any member of the Dresser-Rand Group after the Closing Date."  Ex. 1 (EPA) § 8.1(b).

Additionally, more than half of the damages Yara Belle seeks in the *Yara Belle* lawsuit are indisputably *not* indemnifiable under the EPA under *any* circumstances.  Specifically, $19 million of the alleged $32 million in damages Yara Belle allegedly suffered from the Expander incident are "business interruption losses."  Ex. 4 (*Yara Belle* Statement of Claim) ¶ 28.  Section 8.1(g) of the EPA, however, explicitly *excludes* from indemnification "lost profits, diminution in value, consequential, exemplary or special damages"  Ex. 1 (EPA) § 8.1(g).  Under both Saskatchewan and New York law, "business interruption" damages fall into this exclusion as "lost profits" or "consequential damages."  *See, e.g.*, *Regina Sticks Ltd. v. Saskatchewan Gvn't Ins.* (1993), 18 C.C.L.I. (2d) 58 (Sask. C.A.) ("business interruption" is a loss or impairment in day-to-day profitability); *World-Link, Inc. v. Citizens Telecom. Co.*, No. 99CIV3054, 2000 WL 1877065, at *5 (S.D.N.Y. Dec. 26, 2000) (business interruption damages are "consequential" rather than "general"); *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 192 (N.Y. 2008).  If Yara Belle is awarded only business interruption damages in Canada, Dresser-Rand is not entitled to any indemnification.

Under the plain language of the EPA, because Dresser-Rand has not pled—and in fact has conceded—that it is not presently "entitled" to indemnification, Ingersoll Rand has no present obligation to pay Dresser-Rand's defense costs with respect to the *Yara Belle* lawsuit. Thus, Ingersoll Rand could not have breached or anticipatorily breached this nonexistent duty. There is no actual dispute—there is only the *possibility* of an actual dispute at some point in the future if either Ingersoll Rand or Dresser-Rand contests whether Madam Justice Pritchard's resolution of the *Yara Belle* lawsuit wholly settles the indemnification and defense-cost obligations under the EPA.  *E.g.*, Ex. 12 (Pre-Motion Conf. Tr.) at 6:17–7:4.  Thus, if after the *Yara Belle* lawsuit is resolved, the parties dispute the nature or amount of any "entitlement"

Dresser-Rand may have to indemnification (and thus to defense costs) under the EPA, this Court will then—and only then—be in an appropriate position to adjudicate what is presently a premature, constitutionally and prudentially unripe, unjusticiable claim.

## II. ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE JURISDICTION OVER DRESSER-RAND'S CLAIM FOR DECLARATORY JUDGMENT AND DISMISS IT UNDER RULE 12(b)(1)

### A. This Court Has Discretion To Decline Jurisdiction

Even where there is an "actual dispute," a court's exercise of jurisdiction over an action for declaratory judgment is wholly discretionary. *E.g.*, *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) ("The Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." (citing 28 U.S.C. § 2201(a))). Even were it otherwise empowered to hear it, this Court should exercise its discretion and decline to exercise jurisdiction over Plaintiffs' request for declaratory judgment. *See* Compl. ¶¶ 50–55 (Third Claim).

### B. Discretionary Factors Strongly Weigh In Favor Of This Court Declining To Exercise Jurisdiction Over This Action

In exercising its discretion over declaratory judgment actions, a court must look to "the litigation situation as a whole." *CGI Solutions LLC v. Sailtime Licensing Grp., LLC*, No. 05 CIV. 4120, 2005 WL 3097533, at *7 (S.D.N.Y. Nov. 17, 2005). To guide this exercise, the Second Circuit has instructed district courts to ask "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and "(2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Niagara Mohawk Power Corp. v. Hudson River-Black River Reg'ng Dist.*, 673 F.3d 84, 105 (2d Cir. 2012) (quoting *Dow Jones*, 346 F.3d at 359)). Additional factors include (3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'"; (4) "whether the use of a declaratory

19

judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (5) "whether there is a better or more effective remedy." *Id.* Here, these factors weigh decidedly against exercising jurisdiction.

   *Factors 1 and 2.* A declaration that Ingersoll Rand has a "duty to defend" Dresser-Rand in the *Yara Belle* lawsuit will not serve a useful purpose in settling the legal issues between Ingersoll Rand and Dresser-Rand, nor will it finalize the controversy or offer the parties relief from uncertainty. Instead, a declaration at this time that Ingersoll Rand has an affirmative duty to defend or to pay Dresser-Rand's defense costs will only *prolong* litigation between the parties. The practical likelihood is that if Ingersoll Rand were to pay Dresser-Rand's defense costs in real-time, it would need to seek a refund of at least *some* of those costs in the future in *any* circumstance except one in which the Canadian court finds Ingersoll Rand wholly at fault and attributes all damages to Ingersoll Rand. As discussed above, on the face of the *Yara Belle* statement of claim, such a result has no guarantee of occurring and seems highly unlikely given the *Yara Belle* allegations. Ex. 4 (*Yara Belle* Statement of Claim) ¶¶ 18–19, 29, 33. Furthermore, at least $19 million of the $32 million in damages claimed in the *Yara Belle* lawsuit are "business interruption" damages that are explicitly *not* indemnifiable under the EPA. *Id.* § 8.1(g); Ex. 4 (*Yara Belle* Statement of Claim) ¶¶ 27–28. Given this uncertainty and the practical likelihood that Dresser-Rand may ultimately not be "entitled" to *any* indemnification with respect to the *Yara Belle* lawsuit, a declaration as to whether Ingersoll-Rand is obligated to pay Dresser-Rand's defense costs in real-time would do nothing to settle matters between the parties. *See, e.g.*, *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 438–39 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) (finding factors 1 and 2 weighed against jurisdiction because "[r]ather than settling the relations between the parties, this outcome may . . . serve only a

counterproductive end of engendering more litigation" including "further challenges in this Court and later on appeal").[13]

      *Factors 3 and 4.*  A declaration that Ingersoll Rand has a "duty to defend" Dresser-Rand in the *Yara Belle* lawsuit will violate principles of international comity and permit what is, at root, forum-shopping by Dresser-Rand.  Specifically, although both parties agree that New York is the proper forum for disputes between Dresser-Rand and Ingersoll Rand regarding the EPA's indemnification provisions, Dresser-Rand's request that this Court declare that Ingersoll Rand owes Dresser-Rand present defense obligations actually seeks to have this Court decide substantive issues of liability *not only* as between Ingersoll Rand and Dresser-Rand, *but also* as between Yara Belle on the one hand and Ingersoll Rand and Dresser-Rand on the other. As was this Court's instinct (as discussed in the Pre-Motion Conference), a decision obligating Ingersoll Rand to assume the defense of Dresser-Rand in the *Yara Belle* action requires a decision on the merits of the indemnification obligation, which in turn requires an inquiry into what and who caused the fire at the Yara Belle plant.  Adjudicating the indemnification issue would require this Court to delve into the myriad issues surrounding the Expander incident—all issues that Dresser-Rand has already conceded are premature and that will be adjudicated in Canada.  Ex. 12 (Pre-Motion Conf. Tr.) at 6:17–8:25; *see also Dow Jones*, 237 F. Supp. 2d at 442 (finding factor 4 weighs against jurisdiction where a declaratory judgment would "hamper the[ foreign court's] opportunity to adjudicate disputes in accordance with their jurisdiction and legal principles").  Judging the same issues in two jurisdictions at the same time raises the very real possibility of inconsistencies between the decision in the instant case and the one in Canada

---

[13] Moreover, if this Court were to find that Ingersoll-Rand owes defense payments now, then the same reasoning would have to apply to find that the "Buyers" under the EPA owe defense payments *to* Ingersoll Rand. The Buyers' obligation to indemnify under the EPA may well be owed currently by Dresser-Rand.  We would thus end up in the bureaucratically inefficient world of each side paying the other's legal fees in the Canadian action, at which point each should just pay for itself and resolve any final tally at the end of the *Yara Belle* lawsuit.

and thus, would improperly infringe on the work of Madam Justice Pritchard in the

Saskatchewan court.

       *Factor 5*.  There is a better remedy for all parties than making a determination on

the duty to defend at present.  The better remedy is for the Court to exercise its discretion to

decline to issue declaratory relief at present, without prejudice to Dresser-Rand's right to seek

such relief *if and when* the parties have an actual dispute after the Canadian action finishes.  *E.g.*,

*Daebo Int'l Shipping Co. v. Ams. Bulk Transp. Ltd.*, No. 12 CIV. 7960, 2013 WL 2149595, at *3

(S.D.N.Y. May 17, 2013) ("[T]here is a better—or at least no worse, as far as [plaintiff] is

concerned—remedy here.  The Court can decline to issue a declaratory judgment at this time,

without prejudice to [plaintiff's] right to seek such relief if and when it confirms that it has the

right to enforce the Award against [defendant].").

       Accordingly, even if the Complaint's claim for declaratory judgment, as narrowed

at the Pre-Motion Conference, revealed an "actual dispute" between the parties, this Court

should exercise its discretion to decline jurisdiction and dismiss it under Rule 12(b)(1).

## III.    ALTERNATIVELY, DRESSER-RAND'S CLAIMS FOR BREACH OF CONTRACT AND ANTICIPATORY BREACH OF CONTRACT SHOULD BE DISMISSED UNDER RULE 12(b)(6)

       To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint

must be plausible.  *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 564 (2007); *Prestige Brands Inc. v. Guardian Drug Co.*, 951 F. Supp. 2d 441, 446

(S.D.N.Y. 2013).  Plausibility requires "more than a sheer possibility that a defendant has acted

unlawfully," *Iqbal*, 556 U.S. at 678, and "threadbare recitals of a cause of action's elements,

supported by mere conclusory statements" simply "will not do."  *Id.*; *Twombly*, 550 U.S. at 555.

Here, Dresser-Rand has failed to plausibly allege either that Ingersoll Rand has breached or has anticipatorily breached the EPA.[14]

### A. Dresser-Rand Has Failed Adequately To Allege A Breach Of The EPA With Respect To Ingersoll Rand's Alleged Defense Obligation

Under New York law, a plaintiff asserting a breach of contract claim must adequately plead: "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Failure to plead these elements adequately warrants dismissal of the claim. *E.g.*, *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998); *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991) (dismissing claims for breach of contract where plaintiffs failed to allege the "particular provision" of the relevant agreement and "failed to plead that they themselves have complied with any contracts at issue and that they have performed their obligations under such contracts").

Here, Dresser-Rand has failed to allege adequately *any* of the elements of a breach of contract claim with respect to Ingersoll Rand's alleged defense obligation under the EPA. Rather, Dresser-Rand conclusorily alleges that Ingersoll Rand "breached the terms of the [EPA] by refusing to defend and indemnify Dresser-Rand" and "further breached the terms of the [EPA] by refusing to reimburse Dresser-Rand for costs and attorneys' fees." Compl. ¶ 44–45. Nowhere in the Complaint, however, does Dresser-Rand cite or set forth *any* specific provision in the EPA relevant to Ingersoll Rand's "opportunity" to defend Dresser-Rand or obligation to pay defense costs if Dresser-Rand is "entitled" to indemnification—*e.g.*, Sections 8.1(e) and (f), discussed *supra* Section I.B. Without even alleging the contractual provision on

---

[14] Dresser-Rand's statements at the Pre-Motion Conference indicate that Dresser-Rand has abandoned its breach of contract and anticipatory breach of contract claims, instead limiting Plaintiffs' request to a declaratory judgment on Ingersoll Rand's alleged defense obligation. Ex. 12 (Pre-Motion Conf. Tr.) at 4:21–23.

which any defense obligation even *could* lie, this claim must be dismissed.  Moreover, Dresser-Rand fails to allege that it has itself performed under the EPA, and offers only conclusory allegations that Ingersoll Rand breached the EPA by "refusing to defend" Dresser-Rand in the *Yara Belle* lawsuit.  As for damages, Dresser-Rand does not allege any amounts incurred as defense fees and, given the state of the *Yara Belle* lawsuit, could not allege that it has incurred any indemnity-style payments (*i.e.*, a judgment or a settlement).  As discussed previously, Dresser-Rand has conceded that Ingersoll Rand has no *obligation* to defend, only an opportunity, and has further conceded that it has no *entitlement* to indemnification, which under the express terms of the EPA means Ingersoll Rand is not obligated to pay its defense costs in real time.  The Complaint's allegations are not even "threadbare recitals" of the elements of a breach of contract cause of action and are simply too conclusory to be plausible.  Accordingly, Dresser-Rand's claim for breach of contract (Claim One)  must be dismissed.

### B. Dresser-Rand Has Likewise Failed To Allege Adequately Anticipatory Breach Of The EPA With Respect To Ingersoll Rand's Alleged Defense Obligation

Under New York law, "[a] claim of anticipatory repudiation must be supported by evidence of an unqualified and clear refusal to perform with respect to the entire contract." *Joseph P. Carrara & Sons, Inc. v. A.R. Mack Const. Co., Inc.*, 931 N.Y.S.2d 813, 815 (N.Y. App. Div. 2011); *see also Highbridge Dev. BR, LLC v. Diamond Dev., LLC*, 888 N.Y.S.2d 654, 656 (N.Y. App. Div. 2009) (reinstating claim for anticipatory breach where defendant had "declared the contract to be void").

Here, Dresser-Rand has failed to allege a claim for anticipatory breach.  It alleges only in vague and general terms that Ingersoll Rand "has repudiated [the EPA] by disavowing its contractual obligations before performance was due" and "particularly" has "repudiated its obligation to defend."  Compl. ¶ 48.  Dresser-Rand does not identify these "contractual

24

obligations," however (which it has now conceded are not *actually* "obligations," *see supra* Section I.B), and does not allege or offer *any* evidence that Ingersoll Rand has refused to perform with respect to *any* obligation under the EPA and certainly not with respect to the *entire* EPA. Nor could Dresser-Rand offer such evidence, as the transaction contemplated by the EPA closed more than a decade ago.

Further, although Dresser-Rand attaches its pre-suit correspondence with Ingersoll Rand to its Complaint, it omits Ingersoll Rand's responsive communications, which evidence that at no point did Ingersoll Rand ever refuse Dresser-Rand anything to which Dresser-Rand is entitled under the EPA.  *See* Exs. 8, 10 (IR Correspondence).[15]  To the contrary, Ingersoll Rand properly responded that indemnification obligations (if any) must be determined at the end of the Canadian case given the allegations in the *Yara Belle* complaint about Dresser-Rand's alleged role in causing the Expander incident.  Far from repudiating the EPA, Ingersoll Rand acknowledged its validity.  Dresser-Rand's inadequately pleaded claim for anticipatory breach (Claim Two) must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

---

[15]  This Court may review Ingersoll Rand's pre-suit communications on this motion to dismiss as they are referenced in the Complaint.  *See* Compl. ¶ 35; *ATSI Commc'ns*, 493 F.3d at 98.

Dated:          December 1, 2014
                New York, New York

                                        SIMPSON THACHER & BARTLETT LLP

                                        By: *Lynn K. Neuner*
                                            Lynn K. Neuner (lneuner@stblaw.com)
                                            Noah M. Leibowitz (nleibowitz@stblaw.com)

                                            425 Lexington Avenue
                                            New York, New York 10017-3954
                                            Telephone:   (212) 455-2000
                                            Facsimile:   (212) 455-2502

                                            *Attorneys for Ingersoll Rand Company
                                            and Ingersoll Rand Company Limited*