UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X
                                                     :
DRESSER-RAND COMPANY, *et al.*,                      :
                                                     :
                                  Plaintiffs,        :
                                                     :
                v.                                   :
                                                     :
INGERSOLL RAND COMPANY, *et al.*,                    :
                                                     :
                                  Defendants.        :
                                                     :
-----------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 14, 2015
```

14 Civ. 7222 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On August 21, 2012, a fire broke out at a nitrogen fertilizer plant located near the town of Belle Plaine, in the province of Saskatchewan, Canada.  The owner of the facility — Yara Belle Plaine Inc. ("Yara Belle") — brought suit in the Court of Queen's Bench for Saskatchewan against Dresser-Rand Company, Dresser-Rand Canada, Inc., and Dresser-Rand Group, Inc. (collectively, "Dresser-Rand"), as well as Ingersoll Rand Company and Ingersoll Rand Company Limited (collectively, "Ingersoll Rand"), to recover damages for property losses and business interruption losses.  Yara Belle grounds its action against Dresser-Rand and Ingersoll Rand (the "Canadian Action") in allegations that these companies either manufactured or serviced the piece of equipment that caused the fire.

On September 8, 2014, with the Canadian Action pending, Dresser-Rand commenced the instant suit against Ingersoll Rand, seeking, *inter alia*, a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that

Ingersoll Rand was required to defend and indemnify Dresser-Rand in the Canadian Action.  Ingersoll Rand has moved to dismiss the instant complaint (the "Complaint") as premature and not ripe for adjudication while issues of liability remain undecided in the Canadian Action.  For the reasons discussed herein, Ingersoll Rand's motion is granted, and Dresser-Rand's Complaint is dismissed without prejudice.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Equity Purchase Agreement

In 1987, Dresser-Rand Company was formed by Ingersoll Rand Corporation and Dresser Industries, Inc., as a New York general partnership. (Compl. ¶ 2).  In 2004, FRC Acquisitions LLC ("FRC" or the "Buyers") purchased Ingersoll Rand's ownership interest in Dresser-Rand Company by entering into an Equity Purchase Agreement (the "EPA").  (*See id*.).  The transaction closed on October 29, 2004 (the "Closing Date").  (*See* Leibowitz Decl., Ex. 2 at 7).  The EPA memorializes the defense and indemnification obligations at issue in this action.  (*See* Compl. ¶¶ 32-34 (citing EPA §§ 8.1(a), 9.10(g))).  It also contains a forum selection clause in which the parties to the EPA consented to the exclusive jurisdiction of the state and federal courts

---

[1]    The facts contained in this Opinion are drawn from Plaintiff's Complaint ("Compl." (Dkt. #1)), and from the Declaration of Noah M. Leibowitz ("Leibowitz Decl.") and the exhibits attached thereto.  Citations to the Equity Purchase Agreement (Compl., Ex. B), are referred to as "EPA § __."  For convenience, Defendants' memorandum in support of their motion to dismiss is referred to as "Def. Br."; Plaintiffs' memorandum in opposition is referred to as "Pl. Opp."; and Defendants' reply memorandum is referred to as "Def. Reply."

located within the Southern District of New York "for all actions or proceedings arising out of or relating to" the EPA.  (EPA § 9.14).

Section 8 of the EPA contains reciprocal indemnification provisions between "the Sellers" (i.e., Ingersoll Rand) and "the Buyers" (i.e., FRC).  (*See* EPA § 8.1(a), (b)).  Section 8.1(a) requires Ingersoll Rand to defend and indemnify Dresser-Rand under certain circumstances:

> Indemnification by the Sellers.  Subject to the limits set forth in this Section 8.1, the Sellers agree, jointly and severally, to indemnify, defend and hold the Buyers and their Affiliates (including, after the Closing Date, ... Dresser-Rand ... ) ... harmless from and in respect of any and all losses, claims, liabilities, damages, fines, penalties, costs (in each case including reasonable out-of-pocket expenses (including, without limitation, reasonable fees and expenses of counsel)[)] (collectively, "Losses"), that they may incur arising out of, relating to, or due to any . . . (iv) Products Liabilities Losses.

(EPA § 8.1(a)).

"Products Liabilities" is defined elsewhere in the EPA, and specifically excludes liability based on acts or omissions following the Closing Date:

> "Products Liability" (and collectively "Products Liabilities") means, to the extent related to Products shipped prior to the Closing Date and except to the extent based on acts or omissions (excluding omissions in respect of an alleged failure to warn based solely on events, activities or occurrences prior to the Closing) following the Closing, any claim or Proceeding of a third party against Dresser-Rand ... to the extent such claim or Proceeding alleges personal injury or property damage[.]

(EPA § 9.10(g)).

As noted, indemnification duties flow both ways under the EPA, depending on the circumstances and the claims at issue.  Section 8.1(b) obligates the "Buyers" (initially, FRC) to indemnify the "Sellers" (i.e., Ingersoll Rand) for losses due to Dresser-Rand's post-Closing "conduct of business":

> Indemnification by the Buyers.  Subject to the limits set forth in this Section 8.1, the Buyers jointly and severally agree to indemnify, defend and hold the Sellers harmless from and in respect of any and all Losses that they may incur arising ... as a result of the conduct of business of ... Dresser-Rand ... after the Closing Date.

(EPA § 8.1(b)).

Sections 8.1(e) and 8.1(f) deal specifically with defense obligations.  To that end, Section 8.1(e) gives Ingersoll Rand the "opportunity" to assume the defense when notified that an indemnifiable event has potentially occurred:

> Notice and Opportunity to Defend.  If there occurs an event which a party asserts is an indemnifiable event pursuant to Sections 8.1(a) ... the party or parties seeking indemnification (the "Indemnified Party") shall notify the other party or parties obligated to provide indemnification (the "Indemnifying Party") promptly. ... In case any such action shall be brought against any party seeking indemnification and it shall notify the Indemnifying Party of the commencement thereof, the Indemnifying Party shall be entitled to participate therein and to assume the defense thereof with counsel selected by the Indemnifying Party and, after notice from the Indemnifying Party to such party or parties seeking indemnification of such election so to assume the defense thereof, the Indemnifying Party shall not be liable to the party or parties seeking indemnification hereunder for any legal expenses of other counsel or any other expenses subsequently incurred by such party or parties in connection with the defense thereof; provided, however, that Sellers [Ingersoll Rand] shall assume the defense of all Asbestos Liabilities. ... If the Indemnifying Party fails to assume the defense of a third party claim,

4

> the Indemnified Party may assume the defense of any such claim with counsel selected by the Indemnified Party.

(EPA § 8.1(e)).  Significantly for purposes of the present motion, Section 8.1(f) provides that only a party "entitled to indemnification" must be reimbursed defense costs in real time, as they accrue:

> <u>Payment</u>. … If any Indemnified Party shall be entitled to indemnification under [Section 8] … the Indemnifying party shall pay the Indemnified Party's costs and expenses arising as a result of a proceeding directly relating to an indemnifiable Loss (including, without limitation, any reasonable fees paid to witnesses), periodically as incurred.

(*Id.* § 8.1(f)).

On August 4, 2005, Dresser-Rand Group Inc. went public through an initial public offering.  (*See* Leibowitz Decl., Ex. 3).  As of the filing of the instant motion, Ingersoll Rand had not been able to ascertain which entity or entities currently hold the indemnification obligations of the "Buyers" (i.e., the obligations originally undertaken by FRC), which are owed to Ingersoll Rand under the EPA.  (Def. Br. 7 n.5).[2]

## 2.   The Canadian Action

In August 2013, Yara Belle filed a "Statement of Claim" in the Canadian Action.  (Compl., Ex. A (the "Statement of Claim")).  That lawsuit, styled *Yara Belle Plaine Inc.* v. *Ingersoll-Rand Company, Dresser-Rand Company, Dresser*

---

[2]   Since filing the motion, however, Ingersoll Rand has asserted a cross-claim for indemnification against Dresser-Rand in the Canadian action. *See* Background Sec. A(2), *infra.*

*Rand Group, Inc. and Dresser-Rand Canada, Inc.*, asserts claims against both Dresser-Rand and Ingersoll Rand.  (*Id.* at ¶¶ 18-35).  The Statement of Claim alleges that a nitric acid expander (the "Expander"), manufactured by either Ingersoll Rand or Dresser-Rand in approximately 1971, purchased by Yara Belle in 2002, and maintained and serviced by Dresser-Rand between at least February or March 2004 and the end of July 2012, "experienced a catastrophic failure" that resulted in a fire and damage to Yara Belle's facility on August 21, 2012 (the "Expander Incident").  (*Id.* at ¶¶ 8, 14, 16).

After purchasing the Expander, Yara Belle retained Dresser-Rand to "disassemble, overhaul and reassemble the Expander as well as its rotor and spare rotor assembly."  (Statement of Claim ¶ 9).  Yara Belle alleges that in 2009, a particular rotor (referred to as "Rotor A" in the Statement of Claim) was removed and "inspected and repaired" by Dresser-Rand.  (*Id.* at ¶ 10).  The spare rotor ("Rotor B") was put into service from 2009 until July 2012, while Rotor A was stored as a spare after Dresser-Rand inspected it and reported that the first- and second-stage disc assemblies in Rotor A were "okay to reuse."  (*Id.* at ¶¶ 10-13).  Rotor A was reinstalled in the Expander in July 2012 and the Expander went back into service "at the end of July 2012."  (*Id.* at ¶ 13).  Yara Belle alleges that on August 21, 2012, the Expander experienced a "catastrophic failure" leading to a fire at the plant.  (*Id.* at ¶¶ 14-17).

The Statement of Claim alleges $32 million (CAD) in damages — $13 million for alleged "property damage" and $19 million for alleged "business interruption damages" — related to the Expander Incident.  (Statement of

Claim ¶¶ 27-28).  Yara Belle asserts three claims.  Two are asserted solely against Dresser-Rand — specifically, for negligence and breach of contract related to Dresser-Rand Canada's servicing of the Expander.  (*Id.* at ¶¶ 29-33). The other claim is asserted against both Ingersoll Rand and Dresser-Rand for breach of the duty to warn with respect to stress relaxation cracking in the rotor disc's steel alloy.  (*Id.* ¶¶ 18-28).

While the instant motion has been pending, Dresser-Rand and Ingersoll Rand have filed cross-claims against each other in the Canadian Action.  (*See* Dkt. #24, 25).  In those cross-claims, Dresser-Rand alleges that Ingersoll Rand must indemnify it for any liability in the Canadian Action (*see* Dkt. #24 at 3-6); Ingersoll Rand alleges that Dresser-Rand must indemnify it for any such liability (*id.* at 24-25).

## B.   Procedural Background

Plaintiffs initiated the instant action on September 8, 2014.  (Dkt. #1). On October 3, 2014, Defendants informed the Court that they intended to move to dismiss the Complaint.  (Dkt. #9).  The Court held a pre-motion conference on October 28, 2014.  (*See* October 28, 2014 Conference Transcript ("Oct. 28 Tr.") (Dkt. #15)).  At the October 28 conference, the parties discussed the two obligations Ingersoll Rand could potentially owe Dresser-Rand under the EPA:  (i) the duty to defend Dresser-Rand (or pay its legal fees) in the Canadian Action; and (ii) the duty to indemnify Dresser-Rand for a judgment imposed in the Canadian Action.  (*See id.* at 3).  In light of the arguments raised in Defendants' pre-motion letter, Plaintiffs conceded at the conference

7

that their claim for indemnification was not ripe for adjudication.  (*See id.* at 8

("The indemnity issue clearly is premature. ... We spent a lot of time with

[Defendants'] arguments. ... We are in agreement that it is premature to decide

the duty to indemnify now.")).  With respect to the defense obligation, however,

Plaintiffs came to the contrary conclusion.  Analogizing Ingersoll Rand's duty

defend in the instant action to that of an insurer, Plaintiffs summarized their

position as follows: "If the allegations give rise to *the possibility* of an indemnity

obligation, then Ingersoll-Rand has to pick up the defense." (*Id.* at 5 (emphasis

added)).  Defendants rejoined that "the barest point of dispute between the

parties, is that our contractual indemnification obligation is the same whether

the loss that is being sought is defense invoices or resulting judgment.  There

is no separate duty to defend that is broader than the duty to indemnify." (*Id.*

at 18).

Pursuant to the briefing schedule set by the Court (Dkt. #13),

Defendants moved to dismiss on December 1, 2014 (Dkt. #17-19).  Plaintiffs

filed their opposition on January 7, 2015 (Dkt. #20), and the motion was fully

briefed as of the filing of Defendants' reply on January 21, 2015 (Dkt. #21).

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions Under Federal Rule of Civil Procedure 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited

jurisdiction and lack the power to disregard such limits as have been imposed

by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson &*

*Cortese-Costa, P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted).  In that regard, "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it."  *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Solowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).  A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison* v. *Nat'l Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted).  Moreover, where subject matter jurisdiction is contested, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.  *See Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here

9

jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

### 2.    Ripeness of a Declaratory Judgment Action

"The federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions of law." *E.I. Dupont de Nemours & Co.* v. *Invista B.V.*, 473 F.3d 44, 46 (2d Cir. 2006).  In accordance with this principle, the Declaratory Judgment Act provides,

> [i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  Courts retain "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton* v. *Seven Falls Co.*, 515 U.S. 277, 286 (1995).  "But that discretion does not extend to the declaration of rights that do not exist under law.... The [Declaratory Judgment Act] is procedural only, and does not create an independent cause of action." *Chevron Corp.* v. *Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (internal quotation marks and citations omitted).

The words "case of actual controversy" incorporate the ripeness requirements of Article III.  *See MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  To be ripe for adjudication, a declaratory judgment action

> must present a real, substantial controversy, not a mere
> hypothetical question. Ripeness is peculiarly a question
> of timing.   A claim is not ripe if it depends upon
> contingent future events that may not occur as
> anticipated, or indeed may not occur at all.   The
> doctrine's major purpose is to prevent the courts,
> through avoidance of premature adjudication, from
> entangling themselves in abstract disagreements.

*Nat'l Org. for Marriage, Inc.* v. *Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal

quotation marks and citations omitted).

That a case presents an active controversy, however, does not require a

court to exercise its jurisdiction under the Declaratory Judgment Act.  Rather,

as the Second Circuit has instructed, when assessing the appropriateness of

declaratory relief, courts should consider "[i] whether the judgment will serve a

useful purpose in clarifying or settling the legal issues involved; and

[ii] whether a judgment would finalize the controversy and offer relief from

uncertainty." *Dow Jones & Co.* v. *Harrods, Ltd.*, 346 F.3d 357, 359 (2d Cir.

2003).  The Second Circuit has also identified several other relevant factors,

such as "[iii] whether the proposed remedy is being used merely for 'procedural

fencing' or a 'race to res judicata,' [iv] whether the use of a declaratory

judgment would increase friction between sovereign legal systems or

improperly encroach on the domain of a state or foreign court, and [v] whether

there is a better or more effective remedy." *Id.* at 359-60; *accord Niagara*

*Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*, 673 F.3d 84,

105 (2d Cir. 2012).

11

**B.      Analysis**

**1.      The Matter Is Not Ripe for Adjudication**

The parties agree that the issue of indemnification will only be ripe after issues of liability are resolved in the Canadian Action.  (*See* Def. Br. 1-2; Pl. Opp. 1; Def. Reply 1).  If, as Defendants argue, their defense obligations are co-extensive with indemnification obligations under the EPA, then this entire action is premature.[3]  Thus, the issue the Court must decide is whether Ingersoll Rand's defense obligations (arising under New York law or the EPA) are broader than their indemnification obligations under the EPA.

**a.      The "Duty to Defend" Under New York Law**

As an initial matter, the Court notes that the EPA is not an insurance policy, and Ingersoll Rand is not an insurance company.  This point is not merely self-evident, but significant:  Under New York law, which the parties agree governs the EPA, "[i]t is well settled that an insurance company's duty to defend is broader than its duty to indemnify.  Indeed, the duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest ... a reasonable possibility of coverage.'"  *Auto. Ins. Co. of Hartford* v. *Cook*, 7 N.Y.3d 131, 137 (2006) (quoting

---

[3]      Although Plaintiffs' Complaint also includes claims for breach of contract and anticipatory breach of contract, both claims presuppose the existence of an extant defense obligation under the EPA.  (*See* Compl. ¶¶ 43-49).  Accordingly, the issue of whether Ingersoll Rand breached the EPA by refusing or failing to defend Dresser-Rand can only be ripe for adjudication if the Court can exercise subject matter jurisdiction over the declaratory judgment claim and decide whether such a defense obligation exists under the EPA.  If the extent of the defense duty is not presently justiciable, neither is the breach of this duty.

*Cont'l Cas. Co.* v. *Rapid-American Corp.*, 80 N.Y.2d 640, 648 (1993)); *accord Euchner-USA, Inc.* v. *Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) ("In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify." (quoting *Auto. Ins. Co. of Hartford*)).

The question the Court must address is whether this "exceedingly broad" duty exists outside the insurance context.  This question is hardly novel; indeed, contractually indemnified parties frequently invite courts in New York to import a similarly expansive duty to defend into agreements outside the insurance context.  Courts have, with few exceptions, declined this invitation. *See, e.g.*, *Barbagallo* v. *Marcum LLP*, No. 11 Civ. 1358 (JBW), 2012 WL 1664238, at *5 (E.D.N.Y. May 11, 2012) ("Where, as here, the contractual indemnitor is not an insurer, the indemnitor's duty to defend is substantially narrower.  In such cases, the indemnitor's duty to defend its contractual indemnitee is no broader than its duty to indemnify.  Since [defendant] is not an insurer, his duty to defend is coextensive with his duty to indemnify." (internal citations and quotation marks omitted)); *Inner City Redevelopment Corp.* v. *Thyssenkrupp Elevator Corp.*, 8 N.Y.S.3d 314, 315 (1st Dep't 2015) ("No finding has yet been made as to [defendant's] negligence, and thus no determination can yet be made as to its obligation to indemnify.  As an indemnitor, [defendant] is not an insurer, and in that context its duty to defend is no broader than its duty to indemnify."); *Sawicki* v. *GameStop Corp.*, 966 N.Y.S.2d 447, 450 (2d Dep't 2013) ("[S]ince the ... defendants are not insurers, their duty to defend was no broader than their duty to indemnify."); *DiBuono* v.

13

*Abbey, LLC*, 944 N.Y.S.2d 280, 285 (2d Dep't 2012) (same); *Steuhl* v. *Home Therapy Equip., Inc.*, 857 N.Y.S.2d 335, 339-40 (3d Dep't 2008) (finding that the lower court "properly denied [defendant's] motion for summary judgment on its cross claim seeking indemnification and defense" where, because plaintiff was "not an insurer, its duty to defend [wa]s no broader than its duty to indemnify").[4]

Outside the context of insurance policies, contractual defense obligations are generally treated like any other contractual provision. That is to say, such provisions "must be strictly construed to avoid inferring duties that the parties did not intend to create." *Bank of N.Y. Tr. Co.* v. *Franklin Advisers, Inc.*, 726 F.3d 269, 283-84 (2d Cir. 2013); *see also Viacom Inc.* v. *Philips Elecs. N. Am. Corp.,* 791 N.Y.S.2d 104, 104 (1st Dep't 2005) (noting that a "contract of indemnity … [is] strictly construed"); *cf. Fieldston Prop. Owners Ass'n, Inc.* v. *Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011) ("An insurer's duty to defend is *liberally construed* and is broader than the duty to indemnify, in order to

---

[4]     Plaintiffs cite only two New York cases arising outside the insurance context to support the application of a broad duty to defend here. (Pl. Opp. 6-7). *Convergent Wealth Advisors, LLC* v. *Lydian Holding Co.*, is inapposite, as the district court applied Delaware law. No. 12 Civ. 1199 (SAS), 2012 WL 2148221, at *6 (S.D.N.Y. June 23, 2012). In *Travelers Prop. Cas. Corp.* v. *Winterthur Int'l*, which is discussed *infra* n.5, the district court found a broad duty to defend where the indemnitor's "promise … to defend and indemnify … contain[ed] language most often used in insurance contracts." No. 02 Civ. 2406 (SAS), 2002 WL 1391920, at *5 n.6 (S.D.N.Y. June 25, 2002). Thus the district court did not find that New York law imposed a broad duty to defend; rather, it found that cases discussing insurance policies were analogous because of similarities in the breadth of the defense obligation. *See id.* ("[T]he Court looks to insurance cases to aid in construing the clause."). This Court believes that the more recent non-insurance cases decided by the Appellate Division (cited herein) provide a more useful reference point, and that the EPA's language is not so broad as to necessitate reference to the body of case law dealing with insurance contracts.

ensure an adequate defense of the insured without regard to the insured's ultimate likelihood of prevailing on the merits of a claim." (emphasis added, internal quotation marks and citations omitted)).  Thus the breadth of a non-insurer's contractual defense obligations is defined solely by the terms of the contract, strictly construed.

That is not to say a contractual defense obligation cannot be broad.  If a contractual defense obligation is, by its own terms, exceedingly broad, a court will not artificially circumscribe it simply because the indemnitor is not an insurer.  *See, e.g.*, *McCleary* v. *City of Glens Falls*, 819 N.Y.S.2d 607, 611 (3d Dep't 2006) (finding that, where "[n]othing in the broad language of the [indemnification provision] conditions the [indemnitor's] duty to defend … on a predicate finding of fault," the indemnitee was "due the full benefit of the bargain it reached with the [indemnitor] under the clear and unambiguous terms of the [contract]").  Additionally, where an indemnitor has expressly assumed the obligation to insure, it has also assumed the concomitant duty to defend.  *See Thyssenkrupp*, 8 N.Y.S.3d at 315 ("[W]here … a party gives a promise to procure insurance to protect from a certain amount of liability, … the promising party must pay any costs, including defense costs…. In that context, [the indemnitor] is acting like an insurer, and has a broad duty to defend, as an insurer would."); *see also Travelers Prop. Cas. Corp.* v. *Winterthur Int'l* ("*Winterthur I*"), No. 02 Civ. 2406 (SAS), 2002 WL 1391920, at *5 n.6 (S.D.N.Y. June 25, 2002) (finding a defense obligation where indemnitor's "promise … to defend and indemnify … contain[ed] language most often used in

15

insurance contracts"), *reconsideration denied*, *Travelers Prop. Cas. Corp.* v.

*Winterthur Int'l* ("*Winterthur II*"), No. 02 Civ. 2406 (GWG), 2002 WL 31889569,

at *4 (S.D.N.Y. Dec. 27, 2002) (noting as an alternative grounds for imposing a

duty to defend that the indemnitor "was required under the [contract] to obtain

insurance").[5]

---

[5]    Plaintiffs rely heavily on *Winterthur I* in their opposition.  (*See* Pl. Opp. 6-7).  Further discussion of *Winterthur I* is therefore warranted.  *Winterthur I* can be read as collapsing the distinction in defense obligations of insurers and indemnitors under New York law.  However, a fairer reading of *Winterthur I* reveals that the district court was well aware of the traditional distinction, but decided that the particular language of the indemnity provision at issue was effectively broad enough to replicate an insurer's promise to defend.  *Winterthur I*, 2002 WL 1391920, at *5 n.6 ("Although UBS is not Park-Lane's insurer, its promise in the Lease Provision to defend and indemnify Park-Lane contains language most often used in insurance contracts; therefore, the Court looks to insurance cases to aid in construing the clause.").  As the holdings of the more recent cases from the Appellate Division suggest, the difference between insurance policies and other contracts is significant under New York law.  And using insurance coverage cases to interpret defense obligations outside the insurance context has not gained traction over the years.  Regardless, the EPA, which, unlike an insurance policy, creates contingent indemnification and defense obligations running in both directions, does not fit the *Winterthur I* mold or resemble an insurance policy.

*Winterthur II*, which Defendants cite (Def. Reply 5 n.2), is also worth addressing.  The procedural posture of *Winterthur II* is somewhat unusual.  After the decision in *Winterthur I*, the indemnitor filed a motion for reconsideration — but only after the parties had consented to proceed before a magistrate judge for all purposes.  Accordingly, the magistrate judge considered the motion for reconsideration of the district court's opinion.  *Winterthur II*, in that it denies reconsideration, could also be read as endorsing a collapse of the distinction between defense obligations of insurers and indemnitors under New York law.  The Court notes that the magistrate judge in *Winterthur II* relied on a then-recent Second Department decision in *Brasch* v. *Yonkers Construction Co.*, for the proposition that "a third-party defendant, which [i]s not an insurance company but a construction contractor, owe[s] a duty to defend a third-party plaintiff based on a contractual indemnification clause."  *Winterthur II*, 2002 WL 31889569, at *3 (S.D.N.Y. Dec. 27, 2002) (citing *Brasch* v. *Yonkers Const. Co.* ("*Brasch I*"), 751 N.Y.S.2d 200, 202 (2d Dep't 2002)).  As it happened, the Second Department's decision in *Brasch I* was subsequently recalled, vacated, and superseded on reargument by the Second Department.  *Brasch* v. *Yonkers Const. Co.* ("*Brasch II*"), 762 N.Y.S.2d 626, 629 (2d Dep't 2003) ("[I]t was inappropriate to require the third-party defendant to provide a defense to the defendant third-party plaintiff in the main action since the obligation of the third-party defendant to indemnify the defendant third-party plaintiff has yet to be determined.").

16

The foregoing compels the following conclusion:  Under New York law, the "duty to defend" is presumed only in insurance policies; the common law imposes no such duty on contractual indemnitors more generally.  Accordingly, an indemnitor's obligation to defend must emanate (if at all) from the language of the contract.

> ### b.    A Declaratory Judgment on the Defense Obligation Is Premature

Having reviewed the EPA and the parties' submissions, the Court concludes that the issue of whether Ingersoll-Rand is required to defend Dresser-Rand in the Canadian Action "depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Nat'l Org. for Marriage*, 714 F.3d at 687.  The declaratory judgment action is not ripe for adjudication.

Particularly relevant to the instant action, Ingersoll Rand has agreed to "indemnify [and] defend … Dresser-Rand ... from ... any and all … claims … relating to … Products Liabilities Losses."  (EPA § 8.1(a)).  Standing alone, this promise could be broad enough to trigger a defense obligation in the Canadian Action.  *See McCleary*, 819 N.Y.S.2d at 611.  However, as Defendants point out, this provision does not stand alone.  (Def. Br. 14-18).  It is "subject to" other limiting provisions within the EPA.

To that end, Ingersoll Rand has no obligation to defend or indemnify Dresser-Rand if the underlying claims are based on "acts or omissions … [of Dresser-Rand] following the Closing" (EPA § 9.10(g)); rather, the EPA provides

17

that "the Buyers" will "indemnify [and] defend … [Ingersoll Rand] from … any and all Losses that they may incur arising … as a result of the conduct of business of any member of … Dresser-Rand … after the Closing Date" (*id.* § 8.1(b)).  These provisions of the EPA place the indemnification and defense obligations of the parties on equal footing, and there is no suggestion that the obligation to defend is any broader than the obligation to indemnify.  Because the determination of the scope of both obligations is contingent upon the determination of whether Dresser-Rand's post-Closing acts or omissions are responsible for Yara Belle's losses, Ingersoll Rand's indemnification and defense obligations are equally unripe.[6]

---

[6]     The Court is skeptical of Defendants' contention that a similar significance inheres in Section 8.1(g), which they argue excludes indemnification of damages in the form of business interruption losses.  (*See* Def. Br. 18).  Defendants argue that "more than half of the damages Yara Belle seeks [i.e., the business interruption losses] … are indisputably *not* indemnifiable under the EPA under *any* circumstances." (*Id.* (emphases in original)).  While such a limitation would certainly reduce Ingersoll Rand's exposure to a judgment in the Canadian Action, it is difficult to image a scenario in which this limitation would prove dispositive of Ingersoll Rand's defense obligation.  It would be a bizarre occurrence if "Yara Belle [were] awarded only business interruption damages in Canada" and awarded none of the $19 million in alleged property damages, yet that is the only scenario under which Section 8.1(g) could impact Ingersoll Rand's defense obligation.  One would expect that the type of fire that could interrupt business would damage some property along its way.

Along the same lines, Defendants make much of the EPA's provision of a putative indemnitor's "*Opportunity* to Defend," and the procedures by which the putative indemnitor may "*elect*[] … to assume the defense." (EPA § 8.1(e) (emphases added)).  The Court is not convinced that Section 8.1(e) modifies the indemnitor's obligation (if any) to pay defense costs that may exist under Sections 8.1(a) and 8.1(b); instead Section 8.1(e) appears to implicate the indemnitor's option under the EPA to take control of litigation strategy and select counsel.  Put simply, even if an indemnitor declines this "opportunity" to defend under Section 8.1(e), Sections 8.1(a) and Section 8.1(b) may still require the indemnitor to foot the bill for a defense.

Additionally, bearing in mind that "[r]ipeness is peculiarly a question of timing," *Nat'l Org. for Marriage*, 714 F.3d at 687, the EPA's specific provisions governing the circumstances under which defense payments may be recovered "periodically as incurred" are also worth noting.  (*See* EPA § 8.1(f)).  Plaintiffs allege that Defendants have breached the EPA by, *inter alia*, "refusing to reimburse Dresser-Rand for costs and attorneys' fees that it has [incurred] … in defending the Canadian [Action.]"  (Compl. ¶ 45).  But even if, at some later date, Ingersoll Rand is required to reimburse Dresser-Rand's defense costs associated with the Canadian Action, the EPA does not necessarily provide for reimbursement *now*, in real time as the Canadian Action proceeds.  Instead, reimbursement for defense costs are provided "periodically as incurred" under the EPA only where a party "shall be entitled to indemnification."  (*Id.*).  Dresser-Rand's entitlement to indemnification is not evident, and the issue of whether Ingersoll Rand must provide real-time defense reimbursements, as Plaintiffs contend they must, is equally entangled in the unripe issue of indemnification.

In sum, adjudication of Ingersoll Rand's defense obligation, which under New York law and the terms of the EPA is co-extensive with its indemnification obligation, would be premature.  *Inner City Redevelopment Corp.* v. *Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29, 30 (1st Dep't 2010) ("Because there has been no showing that defendant was negligent, any order requiring defendant to defend or indemnify is premature."); *Bellefleur* v. *Newark Beth Israel Med. Ctr.*, 888 N.Y.S.2d 81, 84 (2d Dep't 2009) (summary judgment on

defense obligation "was premature" where "triable issues of fact as to whose negligence, if any, caused the plaintiff's accident"); *Bryde* v. *CVS Pharmacy*, 878 N.Y.S.2d 152, 154 (2d Dep't 2009) ("It would also have been premature for the court to have granted ... summary judgment on so much of the contractual indemnification claim as sought the provision of a defense."); *Steuhl*, 857 N.Y.S.2d at 339-40 ("[S]ummary judgment on [the] cross claim seeking indemnification and defense" was "premature ... because there ha[d] not been any finding of negligence.").[7]  This action is not ripe, and it must be dismissed without prejudice.  *See Novie* v. *Vill. of Montebello*, No. 10 Civ. 9436 (CS), 2012 WL 3542222, at *16 n.32 (S.D.N.Y. Aug. 16, 2012) ("If the case is not ripe, there is no subject matter jurisdiction, and thus no basis to issue a stay. Dismissal without prejudice is therefore the proper disposition in the ripeness context."); *Country View Estates @ Ridge LLC* v. *Town of Brookhaven*, 452 F. Supp. 2d 142, 144 (E.D.N.Y. 2006) ("[B]ecause Plaintiffs' ... claims are not ripe, I lack subject matter jurisdiction over these claims and therefore also lack grounds on which to enter a stay[.]").[8]

---

[7]   Plaintiffs cite *Convergent Wealth* for the proposition that defense obligations — unlike indemnification obligations — remain ripe for adjudication while a third-party action is still pending.  (Pl. Opp. 7-8 (citing *Convergent Wealth*, 2012 WL 2148221, at *6)). Significantly, the district court in *Convergent Wealth* applied Delaware law to reach the conclusion that the "duty to defend and duty to indemnify obligations must be examined separately."  2012 WL 2148221, at *6 (citing *LaPoint* v. *AmerisourceBergen Corp.*, 970 A.2d 185, 197 (Del. 2009).  This is not so under New York law.  *See* Analysis Sec. B(1)(a), *supra*.  Accordingly, the reasoning that led the district court in *Convergent Wealth* to dismiss the indemnification claims applies here to foreclose as unripe the defense obligation claims.

[8]   Even were the Court permitted to exercise subject matter jurisdiction over this matter, it would be reluctant to do so.  The Second Circuit has previously recognized the concept of "prudential ripeness," pursuant to which a court should consider "[i] whether an issue is fit for judicial decision and [ii] whether and to what extent the parties will

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's Complaint is dismissed without prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

---

endure hardship if decision is withheld."  *Simmonds* v. *I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003) (citing *Abbott Labs.* v. *Gardner*, 387 U.S. 136, 148-49 (1967)).  The doctrine functions "to enhance the accuracy of the[] decision[] and to avoid becoming embroiled in [an] adjudication[] that may later turn out to be unnecessary or may require premature examination of … issues that time may make easier or less controversial."  *Id.* at 357; *see generally In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013).  The Supreme Court recently noted that prudential justiciability doctrines of this type, however, are "in some tension with … the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging."  *Susan B. Anthony List* v. *Driehaus*, 134 S. Ct. 2334, 2346-47 (2014) (citing *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014)).  The Supreme Court declined to "resolve the continuing vitality of the prudential ripeness doctrine in this case because the 'fitness' and 'hardship' factors are easily satisfied here," *id.*, and the Second Circuit has not spoken further on the issue.  Given this uncertainty, the Court has focused on the constitutional ripeness analysis.

In any event, declining declaratory relief at this stage is appropriate in light of the factors set forth in *Dow Jones*.  With respect to the first two factors, the Court is not convinced at this stage that a declaration regarding defense obligations in the Canadian Action would serve a useful purpose in settling the legal issues between the parties, finalize the controversy between the parties, or offer relief from uncertainty.  *Dow Jones*, 346 F.3d at 359.  Because the indemnification and defense obligations are co-extensive, the Court would simply be making a best guess as to whether Ingersoll Rand will eventually need to reimburse Dresser-Rand for defense costs.  A later finding as to liability in the Canadian Action could be in tension with the declaration by this Court, and engender further disputes.  Consideration of the third and fifth *Dow Jones* factors (whether the proposed remedy is being used merely for "procedural fencing," or whether there is a better or more effective remedy), fails to tilt the scales in either direction.  The parties agree that, under the forum selection clause, a court located within the Southern District of New York will eventually decide issues relating to defense and indemnification obligations under the EPA.  (*See* Pl. Opp. 10; Def. Reply 9; *see generally* EPA § 9.14).  In other words, the request for declaratory relief — although ill-timed — is not improper.  Finally, the Court notes that the fourth *Dow Jones* factor weighs against the entertainment of a declaratory judgment suit at this juncture.  To the extent the instant action were to proceed to discovery, the very issues the Court would need to decide to determine Ingersoll Rand's defense obligation would be the same issues regarding fault that are under consideration in the Canadian Action and are (as far as the Court can tell) governed by Saskatchewan law.  There is, therefore, a risk that this Court's resolution of the defense obligation issue would create friction between sovereign legal systems and improperly encroach on the domain of a foreign court.

SO ORDERED.

Dated:      July 14, 2015
            New York, New York

                                        _____
                                             KATHERINE POLK FAILLA
                                            United States District Judge